```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3

 4
       UNITED STATES OF AMERICA,        )    Docket No. 24 CR 503-2
 5                                       )
                           Plaintiff,    )
 6                                       )
                    vs.                  )
 7                                       )
       RAMONE BRADLEY,                   )    Chicago, Illinois,
 8                                       )    November 19, 2024
                           Defendant.    )    1:30 o'clock p.m.
 9
                       TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE MATTHEW F. KENNELLY

11

       APPEARANCES:
12

13     For the Plaintiff:     HON. MORRIS PASQUAL
                              United States Attorney
14                            BY:  MS. MARGARET ANNE STEINDORF
                              219 S. Dearborn St., Suite 500
15                            Chicago, Illinois  60604

16


17
       For the Defendant:     GREENBERG TRIAL LAWYERS
18                            BY:  MR. STEVEN GREENBERG
                              53 West Jackson, Suite 315
19                            Chicago, IL 60604-6060
                              (312) 879-9500
20

21     Also Present:          MS. JUDITH LESCH, PRETRIAL SERVICES

22


23
       Court Reporter:        MS. CAROLYN R. COX, RPR, F/CRR
24                            Official Court Reporter
                              219 S. Dearborn Street, Suite 2102
25                            Chicago, Illinois  60604
                              (312) 435-5639
```

1    (The following proceedings were had in open court:)

2              THE CLERK:  Case 24 CR 503-2, USA v. Bradley.

3              THE COURT:  Can I get counsel's appearances for the

4    record.

5              MS. STEINDORF:  Maggie Steindorf on behalf of the

6    United States.

7              MR. GREENBERG:  Good morning, your Honor.  Steve

8    Greenberg on behalf of Mr. Bradley.

9              THE COURT:  Okay.  So it's a detention hearing.  I'm

10   assuming you want to go first.

11             MS. STEINDORF:  Your Honor, I did --

12             THE COURT:  I'm sorry.  I forgot.  Sorry.

13             MS. LESCH:  Good afternoon, your Honor.  Judith Lesch

14   with Pretrial Services.

15             THE COURT:  You can just have a seat wherever you

16   want.

17             MS. LESCH:  Thank you.

18             MR. GREENBERG:  Your Honor, in speaking to

19   Mr. Bradley, which is what I wanted to ask him, based on the

20   pretrial report, they've made a recommendation with

21   third-party custodians.  His mother is at work and apparently

22   was unable to get off work to be here today as was his

23   girlfriend who said he could live with her.

24             THE COURT:  Okay.

25             MR. GREENBERG:  So neither one of them are going to

1    be here today.  And I just learned that fact when I spoke to

2    him.  He was at the county jail and then they brought him over

3    today as you can tell.

4          So I'm certainly in a position to go forward with

5    sort of the factors and all of that, but if your Honor wants

6    to address a third-party custodian, I won't have anyone here

7    to address --

8          THE COURT:  Yes.  So my inclination is let's go ahead

9    and do what we can do and kind of see where we are.  The

10   reason being that if I don't do -- what we're going to do

11   first I'm assuming is kind of a longer part, and if I don't do

12   it today, it's going to be like three weeks, maybe four.

13         MR. GREENBERG:  That's fine.

14         THE COURT:  Let's just go ahead that way.

15         So you're proposing to go first I would assume.

16         MS. STEINDORF:  Yes, your Honor.  I have prepared

17   both a factual proffer and an argument.  I can start with the

18   factual proffer, and then I'll leave it to your Honor whether

19   you want defense to then proffer and then argue.

20         THE COURT:  Okay.

21         MS. STEINDORF:  On November 3rd, 2022, at

22   approximately 6:00 p.m., the evidence shows that

23   Ramone Bradley, Marquell Davis, Edmund Singleton, and another

24   individual conspired to carjack Victim A at a gas station at

25   100th Street and South Michigan Avenue.

1          Your Honor, if I could have permission to publish
2   Bradley Exhibit 1.
3          THE COURT:  Is it a video?
4          MS. STEINDORF:  It is a short video.
5          THE COURT:  Give me a second to flip over to you.  So
6   apparently I've been fired or something because it won't let
7   me -- no, finally I've been unfired.  Okay.  Here we go.
8   You're good.
9          MS. STEINDORF:  Thank you, your Honor.  And I'm
10  starting the video at approximately 2 minutes and 10 seconds.
11  I direct the Court's attention to the lower left-hand corner
12  of this screen here.
13         THE COURT:  Okay.
14         MS. STEINDORF:  And I am playing the video.
15    (Video played.)
16         MS. STEINDORF:  I'm going to pause the video at
17  2 minutes and 17 seconds.
18         As your Honor can see from the video, a silver car
19  with damage to the front passenger side pulled up next to the
20  victim's vehicle.  Two individuals got out of that silver car
21  armed with firearms and began to attempt to take the vehicle
22  from the victim.
23         I am playing again.
24    (Video played.)
25         MS. STEINDORF:  And I'm pausing here at about

1    2 minutes and 28 seconds.

2         Again, the individual on the right-hand side who has

3    since been identified by law enforcement as Marquell Davis is

4    continuing to struggle with the victim at the gas pump, but I

5    direct the Court's attention to the left-hand side of this

6    screen, in the silver vehicle, there's an individual wearing a

7    face mask and a black hoodie watching as the car --

8         THE COURT:  The face mask is the small thing that

9    looks white?

10        MS. STEINDORF:  Correct, your Honor.

11            -- (continuing) watching as the carjacking occurs,

12   and the government contends that that is the defendant Ramone

13   Bradley.

14     (Video played.)

15        MS. STEINDORF:  And I've paused it here at 2 minutes

16   and 38 seconds.

17            Davis was able to get presumably the keys from the

18   victim and another individual and Davis drove off with the

19   victim's vehicle with Bradley and Edmund Singleton in the

20   Jeep, the silver car with the damage in the front.

21            Later that same day at approximately 9:30 p.m., this

22   defendant, Bradley and Davis, attempted to carjack Victim B at

23   gunpoint.

24            And I'll show what I've marked as Bradley Exhibit 2.

25            THE COURT:  What's the location of this one?

1    MS. STEINDORF:  I apologize, your Honor.  I believe

2  this is about 30th and Michigan, but I'm going off of memory

3  there.

4    THE COURT:  Okay.

5    MS. STEINDORF:  I'm starting the video here at

6  4 minutes and 35 seconds approximately.

7    (Video played.)

8    MS. STEINDORF:  And I direct your Honor's attention

9  again to the left-hand upper portion of the screen,

10  specifically the black BMW at the gas pump.

11    THE COURT:  Okay.

12    MS. STEINDORF:  I'm playing the video here.

13    A silver vehicle with a dent in the passenger side

14  consistent with the first vehicle involved in the first

15  carjacking pulled up next to the BMW, and I'm just -- it

16  happened so quickly, I'm going to go back and play again from

17  4:36 and try to pause it.

18    An individual later identified as Ramone Bradley gets

19  out of the side of this silver vehicle pointing a firearm at

20  the victim and quickly falls to the ground.

21    The other individual identified as Davis later on

22  based on the clothing he was wearing during both of the

23  carjackings does something out of view with the victim but

24  returns with the keys, so presumably he was obtaining the keys

25  from the victim.

1    And here Bradley and Davis appear to struggle to
2  operate the vehicle.

3    I apologize, your Honor, this video was cut into two
4  clips, so I'm starting Bradley Exhibit 3 which picks off where
5  Bradley Government Exhibit 2 left off.

6   (Video played.)

7    MS. STEINDORF:  I'm going to back up just a second.
8  Starting at 0 seconds, I've paused it here at just about
9  1 second, and I direct the Court's attention to the individual
10  in the black hoodie with white writing on the back coming out
11  of the driver's seat.

12    And then pausing at just about 2 seconds again, that
13  individual is wearing -- later identified as Bradley is
14  wearing a black hoodie, what appear to be tan or gray
15  underwear, gray jeans, and white sneakers.  And Bradley and
16  Davis abandon their attempts to steal the vehicle and drive
17  away in the silver car with the dent in the side.

18    So Victim B reported to law enforcement that he was
19  diagnosed with polio at a young age and his car was outfitted
20  with hand controls which allowed him to drive and a spinner
21  knob to help him steer.  Victim B also uses crutches to walk
22  and has braces on both of his ankles.  Victim B reported that
23  he heard the individual from the driver's side, Bradley, say,
24  "There's all this handicapped shit."

25    Bradley and Davis then, as your Honor saw in the

1  video, got out of the vehicle and fled in the silver Jeep with
2  damage on the side.
3          At approximately 10:27 p.m. Cook County sheriffs saw
4  the gray Jeep with the dent in the passenger door at
5  approximately 87th Street and King Drive.  A police helicopter
6  relocated to the area and began following the Jeep calling out
7  its location to police on the ground via OEMC.  The police
8  helicopter followed the Jeep until it went under a viaduct
9  just south of 94th Street on Woodlawn Avenue.  The police
10  helicopter saw three people running northbound from under the
11  viaduct and called out their location for responding units on
12  the ground.
13          Singleton and Bradley were arrested in the backyard
14  of approximately 9343 South University Avenue.  A key fob to
15  the Jeep with the damage to the front was recovered from the
16  ground in that backyard.
17          Davis was also arrested, but he hopped a fence and
18  was arrested near 9331 South University Avenue.
19          And then the gray Jeep with damage to the side was
20  recovered under the viaduct and a VIN check revealed it was
21  stolen out of Bedford Park, Illinois, approximately two weeks
22  before on October 19th, 2022.
23          Officers canvassed the area of the arrests and found
24  a black Glock handgun in a garage at 9343 South University
25  Avenue -- again, that was the approximate location of where

1    Bradley was taken into custody -- and a tan and snakeskin

2    semiautomatic gun with an extended magazine in a trash can in

3    the backyard of 9341 South University.

4          After reviewing helicopter video, officers also saw

5    one of the offenders throw a third handgun into the backyard

6    at 9343 South Woodlawn Avenue.  And that was recovered and

7    equipped with an extended magazine and a switch to make the

8    firearm fully automatic.

9          That third firearm that was recovered was

10   fingerprinted by the Illinois State Police lab, and latent

11   prints suitable for identification were lifted from the

12   magazine from under some tape.  And from tape that was wrapped

13   around the magazine, both prints were identified as Bradley's.

14         I would note for the Court that this gun did not

15   match the description of the gun used by Bradley during the

16   carjacking but was a third gun that was recovered after the

17   arrests of Singleton, Davis, and Bradley.

18         And then Bradley Exhibit 7, which I'm pulling up on

19   the screen, is a photo of Bradley's clothing when he was

20   arrested which is consistent with the carjacker of the second

21   carjacking, a black hoodie with white writing on the back, tan

22   or gray underpants, gray jeans.  When Bradley was arrested, he

23   was not wearing shoes, but officers did recover white shoes in

24   the area of the arrests.

25         So that concludes the factual proffer I have, your

1    Honor.

2             I just have argument.

3             THE COURT:  You can go ahead with that.

4             MS. STEINDORF:  Okay.  Going through the 3142 factors

5    here, (g)(1) asks the Court to consider the nature and

6    circumstances of this offense.  These are very serious

7    offenses.  Each carjacking involved two people overtaking a

8    victim at a gas station at gunpoint to steal and, in the

9    second carjacking, to try to steal their car.

10            The second carjacking, during which Bradley pointed a

11   gun at a vulnerable victim whose vulnerability was visible to

12   defendant because the victim uses crutches to walk, was only

13   an attempt because they could not figure out how to drive the

14   car.

15            And while the gun that Bradley's fingerprints were

16   located on did not match the description of the gun that

17   Bradley used in the carjacking, possession of a gun as a felon

18   is a serious offense as well.

19            As to the (g)(2) factor, the strength of the

20   evidence.  Both carjackings were captured on surveillance

21   video, and Bradley was arrested a little over an hour after

22   the second carjacking wearing similar clothing as to what was

23   seen on surveillance video.

24            As to the (g)(3) factor, defendant's history and

25   characteristics.  Defendant is 26 years old.  For the six

1     months prior to his arrest, he reported being transient and

2     not having consistent employment.  He has a prior felony

3     conviction out of Hobart, Indiana, and during the pendency of

4     that case, a notice of non-compliance was filed.  He also has

5     other arrests that while the cases were pending he failed to

6     appear.  One in July 2021 and one in September 2022.  The

7     September 2022 one resulted in a judgment on bond forfeiture.

8              His history here shows a pattern of non-appearance

9     and non-compliance.

10             As to the danger that the defendant poses to any

11    other person in the community, I'd note here that the release

12    plan is not sufficient.  Defendant cannot live with his mother

13    because of restrictions on her housing.  The defendant has

14    proposed his girlfriend to be his third-party custodian.  She

15    has two children living with her, one of which is the

16    defendant's five-month-old.  But the girlfriend works

17    overnight from Thursday to Sunday and would not be able to

18    supervise defendant's whereabouts during those times.  I'd

19    also note that defendant reported they've been in a

20    relationship for five years which covers the time period when

21    Bradley committed these offenses.

22             So for these reasons, the release plan is not

23    sufficient to protect the community from this defendant.  And

24    I'd also argue that without the third-party custodian, without

25    an opportunity to question or admonish the third-party

1   custodian, the government's position is detention, but
2   especially here where the third-party custodian is not in
3   court today.
4          So, your Honor, the government has proved by clear
5   and convincing evidence that defendant is a danger to the
6   community.  And given this defendant's history of
7   non-compliance and failures to appear, the government has also
8   proved by a preponderance of the evidence that the defendant
9   is a risk of non-appearance and asks this Court to detain the
10  defendant pending trial.
11         THE COURT:  Thanks.
12         Mr. Greenberg.
13         MR. GREENBERG:  Judge, before I begin, I would
14  indicate the young lady who is now in the courtroom is
15  Mr. Bradley's sister who has entered the courtroom.
16         THE COURT:  Thank you.
17         MR. GREENBERG:  I don't need to get into the factual
18  proffer.  That's a matter for down the road, what the facts of
19  the case are.
20         My understanding is that the government has to show
21  by clear and convincing evidence that there's no conditions of
22  release that will reasonably assure the safety of the
23  community, and I don't think they've shown that here.  I
24  certainly don't think they've shown at all that he's a flight
25  risk.

1       I don't dispute that these are serious offenses.  But
2  as far as these kinds of offenses go, they certainly are not
3  on the more egregious end of them.  In the first one that
4  they've shown, Mr. Bradley never leaves the vehicle.  He has
5  essentially no involvement of any kind whatsoever in the
6  offense other than he is sitting in a seat.

7       In the second offense, Judge, I don't think you can
8  assume that he knew that this gentleman was disabled at all.
9  There's nothing to indicate that.  You can't see anything from
10  the video that indicates that.  And the offense was never
11  completed of any kind whatsoever.

12       He didn't have a firearm.  He didn't display a
13  firearm.  He didn't strike anyone with the firearm or anything
14  like that.

15       As far as the non-appearance, Judge, I took a look at
16  that.  And the best I could determine was -- well, let me
17  first address where they said a petition to revoke was filed
18  on this Indiana case.  It's a suspended sentence.  It
19  indicates a felony here.  I tried to look it up.  I couldn't
20  determine if it was a felony or a misdemeanor.  In my
21  experience, many times when they've got these situations in
22  Indiana cases, they have pled them down to misdemeanors.  I
23  know it indicates here it's a felony.  I couldn't make heads
24  or tails of it when I looked at the records.  But I will
25  accept the representation that it was a felony.

1       They did file a petition to revoke when he was

2    brought before the judge there.  The judge released him on a

3    recognizance bond.  The PTR was withdrawn some eight months

4    later which to me indicates that he was compliant with all of

5    the conditions of probation, and then approximately nine

6    months after that, his probation was discharged.  He never had

7    to serve any of the time from the suspended sentence or

8    anything like that which, to me, means that he was, but for

9    maybe a hiccup, compliant with the probation and showed that

10   he could follow the rules of the Court and what the Court

11   directed that he should do.

12       As far as the 2021, the June 2021 charge where it

13   says that there was a failure to appear, I pulled the half

14   sheet from that day, Judge.  And I'm happy to show it if

15   anyone wants to see it.  I brought it with me.

16       On July 14th of 2021, the half sheet does reflect

17   that there's a failure to appear, but it also reflects that

18   there is a by agreement next court date which is completely

19   inconsistent with the failure to appear.  And on the next

20   court date, it doesn't indicate that there's any vacating of

21   any warrant or anything like that.

22       The appearance on July 14th of 2021 was a Zoom court

23   appearance.  And I don't know -- you know, when they were

24   still doing things by COVID, I know they weren't issuing

25   warrants.  I can't -- I don't think we can put too much weight

1    in a failure to appear notation then when people weren't
2    required to come to court anyway, Judge.  What I do know is
3    that that case was then dismissed.
4            And the traffic case was also a Zoom situation.
5    Again, I know from my own practice at least that when you get
6    these tickets, you're not given a court date on the ticket.
7    You're then supposedly notified of a court date.  When I
8    looked this up in the clerk's system when I got this report,
9    it again said it was a Zoom court date in the CL-05 which is
10   one of the courtrooms in the basement of the Daley Center.  It
11   wasn't a personal appearance situation.  So I don't know how
12   much weight you can put in failing to appear on a Zoom court
13   date.
14           The fact is that we've got a gentleman here who when
15   he was on a court probation situation was compliant with it.
16   He was working before he was arrested on these cases in state
17   court.  He was -- these are his only offenses that are here.
18   The government has made no showing that he would be a further
19   danger to the community if he were released.  There's no
20   reason to believe that there are not conditions that could be
21   set forth to ensure the safety of the public or that he would
22   be a danger to the public.
23           Certainly in today's day and age where there's plenty
24   of situations where people can be monitored with electronic
25   monitoring and home detention and home incarceration and all

1   of these various things, I know that the prosecutor said

2   something about the young lady that's offered to be a

3   third-party custodian would be at work at Amazon overnight,

4   but certainly it could still be monitored that Mr. Bradley

5   were remaining in the residence through electronic monitoring

6   which is a GPS system that they use.  So they would know his

7   whereabouts at any and all times.

8         I know she made reference to the fact that this was

9   his girlfriend and he knew the third-party custodian at the

10  time that he allegedly committed these offenses, and if I came

11  in here and I offered a third-party custodian that he didn't

12  know, then they would be saying, well, he had no relationship

13  with this person and no history with this person.  So it's

14  sort of a double-edged sword there, Judge.

15        The fact is that there are conditions that this Court

16  can set forth that would reasonably assure that he would

17  appear for trial and that he would not be a danger to the

18  community and we would ask that you release him.

19        THE COURT:  Anything you want to respond,

20  Ms. Steindorf?

21        MS. STEINDORF:  Your Honor, defense counsel said

22  there was no allegation that this defendant used a firearm

23  during the carjacking.  I know we've closed the screen here,

24  but --

25        THE COURT:  I understood that to be true on the first

1  one but not the second one.

2        MS. STEINDORF:  That's correct.  I just wanted to

3  clear up the record on that.  A firearm is visible on

4  surveillance video in the second carjacking.

5        THE COURT:  Okay.  I need to ask a question.  I know

6  this was discussed I think at the arraignment or initial

7  appearance.

8        So I'm looking at the supplemental report from

9  pretrial which is I think just a more comprehensive version of

10  the earlier one, and there's two -- so if you look -- do you

11  have that?  Does everybody have that?

12        MS. STEINDORF:  Yes.

13        THE COURT:  If you look on page 4, there is an arrest

14  for November 3rd of 2022 for armed robbery, vehicular

15  carjacking, et cetera.  It says released without charging.

16  There's a little asterisk below that says "This arrest appears

17  to be related to the alleged instant offense."  Is that right?

18        MS. STEINDORF:  That's right.

19        THE COURT:  Is that number one or number two that you

20  showed today?

21        MS. STEINDORF:  He was arrested on I believe both

22  incidents, your Honor.

23        THE COURT:  At the same time?

24        MS. STEINDORF:  He was arrested on the same day as

25  both of the offenses.

1     THE COURT:  Okay.  It doesn't look like that
2  particular -- it's weird because then there's a further arrest
3  for carjacking on September 3rd of 2024 also in the state
4  system.  Is that something different or is that --
5     MS. STEINDORF:  No, your Honor.
6     THE COURT:  That's this?
7     MS. STEINDORF:  It's the same offense.  As best as I
8  can tell from the state discovery, the charges for
9  Mr. Bradley, they were not brought originally but they were
10  brought then later for this incident.
11     THE COURT:  Got it.
12     MS. STEINDORF:  For these incidents, excuse me.
13     THE COURT:  And the two -- not that it matters to
14  this, but just so I make sure I got everything sorted out
15  right, the two people who are charged as co-defendants in this
16  case, are they also co-defendants in the state court case?
17     MS. STEINDORF:  Yes, your Honor.
18     THE COURT:  And they were -- were they charged in
19  2022 or in 2024 or both or do you know?
20     MS. STEINDORF:  I do know, your Honor.  Marquell
21  Davis was charged in November 2022.
22     THE COURT:  Okay.  So at the time of the initial
23  arrest.
24     MS. STEINDORF:  At the time of the initial offense,
25  although I don't know if he was charged with the carjacking.

1    He also had additional methamphetamine on his person so he was

2    charged with that.  Later I believe charged with the two

3    carjackings.  Edmund Singleton was not charged until I want to

4    say April 2023 for the two carjackings when he was also

5    charged with a separate gun offense.

6            THE COURT:  Does that all sound more or less correct

7    to you?

8            MR. GREENBERG:  That sounds more or less correct.  If

9    you want me to look up what he was charged with in 2022,

10   Mr. Davis, I can look it up.

11           THE COURT:  Honestly, no.  What the other people were

12   charged with is not really that significant.

13           MR. GREENBERG:  There's nothing else for my client.

14           THE COURT:  I was just trying to sort it out.

15           So the other thing relates to the one -- the case

16   that was charged against Mr. Bradley in state court, that's

17   the one that's the carryover from pages 4 to 5.  So is that

18   case still pending as of right now?

19           MS. STEINDORF:  It is, your Honor.  I believe it's

20   next set for December 2nd.  As we discussed at the

21   arraignment, I do believe the charges against Mr. Bradley will

22   be dismissed at the state in lieu of federal prosecution, but

23   it just has not happened yet.

24           THE COURT:  Is there a complete overlap between

25   what's charged against Mr. Bradley there and what's charged

1   here?  In other words, is there anything in the state court
2   case that's not charged here?
3           MS. STEINDORF:  I don't believe so, your Honor.
4           THE COURT:  Okay.  One other question for
5   Mr. Greenberg.  So one of the things that Ms. Steindorf
6   mentioned was this firearm that was found more or less in the
7   vicinity of where Mr. Bradley was arrested where there was --
8           MR. GREENBERG:  Judge, in the state court,
9   Mr. Bradley is just charged with the latter case.
10          THE COURT:  With the second one.
11          MR. GREENBERG:  The second one.  He's not charged
12  with the first one.
13          THE COURT:  Fair enough.
14          MR. GREENBERG:  And he's just charged with an attempt
15  in the state case.
16          THE COURT:  Got it.  And in this case, the one that's
17  charged as a carjacking would be the first one you showed, and
18  the other one is part of the conspiracy to commit basically?
19          MS. STEINDORF:  So Mr. Bradley is only charged with
20  the conspiracy to commit both of the offenses and then the
21  second carjacking.  He is not charged with the substantive
22  first carjacking.
23          THE COURT:  Okay.  All right.  So what I was going to
24  ask is that one of the things that Ms. Steindorf mentioned was
25  this firearm that was supposedly found around the area where

1  Mr. Bradley was arrested where there was a fingerprint on the

2  tape or something on the firearm.  Do you want to say anything

3  about that?

4          MR. GREENBERG:  I don't know anything about that,

5  Judge.  Honestly, I don't have anything to say about that.  It

6  wasn't involved in these offenses, I know that.

7          THE COURT:  Well --

8          MR. GREENBERG:  That's why I was -- that's why I was

9  checking.  Obviously, if his Indiana offense was a

10 misdemeanor, then it's qualitatively different because then

11 he's not a felon certainly.

12         THE COURT:  Well, it's qualitatively different in the

13 sense of it might make it not a felon in possession type of

14 offense under federal law, but it's not necessarily

15 qualitatively different in determining somebody's

16 dangerousness if they're driving around carrying a firearm.

17 That's why I'm asking about it.

18         MR. GREENBERG:  I mean, she says they found

19 fingerprints.  I don't have any way to dispute that.

20         THE COURT:  Can you talk to me a little bit more

21 about that, Ms. Steindorf.

22         MR. GREENBERG:  May I ask, which -- when was that

23 found?

24         THE COURT:  Yeah, just give me the details again.

25 When and where.

1          MS. STEINDORF:  Yes, your Honor.  So during this
2     helicopter chase, the three --
3          THE COURT:  So this is still on the evening that the
4     two --
5          MS. STEINDORF:  Exactly, still on the evening of
6     November 3rd, 2022.  All three defendants were arrested.
7     Three firearms were recovered.  The government --
8          THE COURT:  None of them were on the person of
9     anybody.  They had all been --
10         MS. STEINDORF:  They had all been tossed, exactly.
11             There's a tan and snakeskin gun which the government
12    believes the evidence attributes to Davis.  It appears to be
13    the gun that he uses in both of the carjackings.  There's a
14    black Glock which appears to be the firearm that Bradley uses
15    in the second carjacking here.  And then there's this I
16    believe it's also a black Glock but it's equipped with an
17    extended magazine which we don't believe the surveillance
18    video shows that there's an extended magazine on the firearm
19    that Bradley uses during the carjacking.  It has an extended
20    magazine, a camo grip and then tape around the magazine.
21         THE COURT:  And that's where the fingerprint was
22    found?
23         MS. STEINDORF:  The tape -- Bradley's fingerprint was
24    found, yes, on the tape on the magazine and then I believe
25    maybe under the tape on the magazine as well.  I did tender to

1    defense counsel the lab report on that.

2          But I would clarify for your Honor that the third gun

3    that was found, the government believes the evidence will show

4    that that was the gun that Singleton actually possessed that

5    night.  But here, I would argue that we're sharing guns and

6    there's joint possession.

7          THE COURT:  Okay.  Having heard that, what would you

8    like to say about it?

9          MR. GREENBERG:  No, she says they found fingerprints

10   on a magazine.  I saw the report, Judge.  I can't -- it's not

11   on a handle.  It's not on the gun itself.  I don't know.

12         THE COURT:  All right.  So just going through the

13   factors.  The offenses that we're talking about are serious

14   offenses, just if you look at the title of them, but the

15   videos reflect that they were violent crimes that involved the

16   brandishing -- by people involved in the crimes, the

17   brandishing and pointing of firearms at people, and in one

18   instance at least, well, actually two, but one in particular,

19   struggling with the person who owned the car to I guess it

20   looked like try to get the keys away from him.  To be clear,

21   it's not -- Mr. Bradley isn't identified as the person who did

22   that.  I'm just talking about the overall offenses.

23         Mr. Bradley's alleged role in those is in the first

24   one was I guess the driver, and second one, a more direct

25   participant in trying to separate the victim from the car

1    unsuccessfully as it turns out.

2            I know that the strength of the evidence is not

3    considered one of the critical factors because it's something

4    that merges with the ultimate determination of guilt or

5    innocence, but I think it's fair to say that there's video of

6    everything and the evidence is reasonably strong.

7            It's not -- you know, I don't know for sure whether

8    the Indiana offense is a felony.  But a sentence of 18 months

9    jail even if it's suspended, I mean, kind of by definition, a

10   felony is anything over a year.  I'm not sure how you could

11   sentence somebody on a misdemeanor to an 18-month jail

12   sentence even if it's suspended.

13           Going back into my distant memory when I handled

14   cases in Indiana, suspended sentence is not so much of a thing

15   here, they do it there.  It's kind of the way things used to

16   be done in ancient times in federal court where you would

17   suspend a sentence and impose probation.  That's kind of still

18   done in Indiana as I recollect it.  But the idea is if the

19   person violates probation, you got a sentence that's out there

20   which is 18 months which pretty strongly suggests that it's a

21   felony.

22           It looks like there were more serious charges that

23   were not -- there was no adjudication of guilt.  The ultimate

24   offense was a theft.  But there's at least some evidence

25   connecting Mr. Bradley with a firearm in this case after

1  having had that conviction which is in all likelihood a

2  felony, and even if it wasn't, it seems to me to be a

3  significant point that Mr. Bradley is apparently, you know,

4  running around with a firearm, not likely for any viable

5  reason because there's no indication that he had a concealed

6  carry permit or anything like that.

7           I agree with Mr. Greenberg that the failures to

8  appear, it's a little hard to make a whole lot out of those

9  given the circumstances and particularly given the fact that a

10 couple of them or maybe most of them happened during the

11 height of the pandemic when a lot of the court hearings in

12 state court were being done by video as they were here.  It

13 seems to me it's a little different quality or somewhat

14 different quality of a failure to appear than somebody not

15 coming to court.  So I agree there's not a whole lot to infer

16 out of that.

17          I don't think -- and this would obviously be subject

18 to questioning the custodian, but I don't -- I'm not prepared

19 to say that there's clear and convincing evidence at this

20 point of a risk of non-appearance, but I do think there's

21 clear and convincing evidence of dangerousness, and I don't

22 think that conditions would satisfy that.  I mean, Mr. Bradley

23 was either on or immediately off of probation when this

24 offense was allegedly committed and nonetheless apparently it

25 was connected with a firearm, was handling it at some point in

1    time around there, and I mean, I think that's a pretty

2    significant indication of dangerousness plus the evidence

3    relating to the underlying offenses.

4              So I think the government's shown by clear and

5    convincing evidence that there is not a combination of

6    conditions that would reasonably assure the safety of others

7    in the community.  So the defendant's detained pending further

8    order of court.

9              I think we got another status hearing in the case, so

10   I'll see you then.  Thanks.

11             MS. STEINDORF:  Your Honor, if I may, the government

12   would request that defendant is remanded into marshal's

13   custody at this time.

14             THE COURT:  Have I not done that yet?

15             MS. STEINDORF:  He went back to state court to get

16   some of his personal effects.

17             THE COURT:  Yes, the defendant is to be remanded into

18   federal custody at this point.

19     (Which were all the proceedings had in the above-entitled

20   cause on the day and date aforesaid.)

21     I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
22
     /s/ *Carolyn R. Cox, RPR, F/CRR*_____    January 13, 2025
23   Official Court Reporter
     United States District Court
24   Northern District of Illinois
     Eastern Division
25