AO 106 (REV 4/10) Affidavit for Search Warrant

AUSA Margaret A. Steindorf, (312) 353-3540

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**

In the Matter of the Search of:

The information associated with telephone number (773) 600-5709 that is stored at a premises controlled by T-Mobile USA, Inc., further described in Attachment A-1

Case No. 24 M 614

Ref. No. 2023R00370

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Karl Fredriksen, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A-1. The Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).**

located in the District of New Jersey, there is now concealed:

**See Attachment B-1**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2119 and Title 18, United States Code, Section 924(c)(1)(A) | carjacking, in violation of Title 18, United States Code, Section 2119, and brandishing and using a firearm during and in relation to the carjacking, in violation of Title 18, United States Code, Section 924(c)(1)(A) |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

*Karl Fredriksen*

_____
*Applicant's Signature*

KARL FREDRIKSEN, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: August 7, 2024 @5:30pm

_____
*Judge's signature*

City and State: Chicago, Illinois

YOUNG B. KIM, U.S. Chief Magistrate Judge
*Printed name and title*

SENSITIVE
FBIMAIN_001-000168

UNITED STATES DISTRICT COURT    )
    )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, Karl Fredriksen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with the following telephone numbers: (1) (773) 600-5709 ("**SINGLETON PHONE 1**"); (2) (773) 895-7281 ("**SINGLETON PHONE 2** and **3**"); (3) (773) 918-9652 ("**DAVIS PHONE 2**"); (4) (708) 677-2347 ("**THOMAS PHONE 1**"); and (5) ▮▮▮▮-0289 ("**VICTIM B PHONE**"), that is stored at premises controlled by T-Mobile US, Inc. ("PROVIDER"), 4 Sylvan Way, Parsippany, NJ 07054. I further make this affidavit in support of an application for a search warrant for information associated with the following telephone number: (312) 632-3173 ("**BRADLEY PHONE 1**") that is stored at premises controlled by American Messaging Services, LLC ("PROVIDER"), 1720 Lakepointe Drive, Suite 100, Lewisville, TX 75057. I further make this affidavit in support of an application for a search warrant for information associated with the following telephone number: (773) 263-4429 ("**DAVIS PHONE 1**") that is stored at premises controlled by Verizon Wireless ("PROVIDER"), 1095 Avenue of the Americas, New York, NY 10036. Finally, I make this affidavit in support of an application for a search warrant for information associated with the following telephone number: ▮▮▮▮3380 ("**VICTIM A PHONE**") that is stored at premises controlled by AT&T Corporation ("PROVIDER"),

1

SENSITIVE
FBIMAIN_001-000169

208 S. Akard Street, Suite 2954, Dallas, Texas 75202. The information to be searched is described in the following paragraphs and in Attachments A-1 through A-8. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information further described in Section I of the corresponding Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for over one year. I was previously employed as a Police Officer with the Richland Center Police Department for approximately six years, and as part of my duties, I have drafted and served numerous search warrants. My current responsibilities include the investigation of violent crime, narcotics trafficking, and criminal enterprises.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2119 and 924(c)(1)(A) will be found in the information associated with the above-mentioned telephone numbers, collectively, the "**SUBJECT PHONES**." There is also probable cause to

2

SENSITIVE
FBIMAIN_001-000170

search the information described in Attachments A-1 through A-8 for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

### A. Summary

5.     In summary, the FBI is conducting an investigation of one carjacking and one attempted carjacking, both occurring on November 3, 2022 on South Michigan Avenue in Chicago, Illinois. In both the carjacking and attempted carjacking, offenders exited a silver Jeep SUV, pointed firearms at the victims and took the keys to their vehicles. In the first incident, after taking the keys, the individuals took the vehicle. In the second incident, after taking the keys, the individuals entered the vehicle. After not being able to figure out how to drive the vehicle, the individuals exited the vehicle, threw down the keys and left the area in the vehicle in which they arrived. As part of the investigation, the FBI has identified six telephone phone numbers used by the offenders: (773) 600-5709 and (773) 895-7281 belonging to Edmund SINGLETON (**SINGLETON PHONES 1, 2,** and **3**),[1] (773)-263-4429 and 773-918-9652 belonging to Marquel DAVIS (**DAVIS PHONE 1 & 2**), (312) 632-3173 belonging to Ramone BRADLEY (**BRADLEY PHONE 1**) and (708) 677-2347 belonging to Dion THOMAS (**THOMAS PHONE 1**). The FBI has also identified two telephone numbers used by the victims: ███████ 3380 belonging to Victim A (**VICTIM A PHONE**), and ███████ 0289 belonging to Victim B (**VICTIM**

---

[1] SINGLETON PHONES 2 and 3 answer to the same telephone number ending in -7281.

3

**B PHONE**). Therefore, this affidavit seeks historical information, including cell-site location data, from the **SUBJECT PHONES**.

## B. October 26, 2022 - Identification of SINGLETON

6. According to the Chicago Police Department ("CPD") reports, on October 26, 2022, at approximately 5:17 p.m., officers were at the Home Depot located on the 300 block of West 87th Street, Chicago, Illinois, 60620 responding to an unrelated incident. Officers observed a male at the store that they recognized, from prior interactions, as Edmund SINGLETON, noting SINGLETON's distinct "SRT" tattoo above his right eyebrow. The reporting officer later informed detectives that SINGLETON is well known in CPD District 006 and he knew SINGLETON to be a rapper under the name 'Big G Rell.' Officers observed SINGLETON unlock and enter the front driver's side of a silver Jeep SRT bearing Illinois license plate DH61052 with damage to the front passenger door. Officers observed SINGLETON look in their direction and drive quickly through the parking lot. Officers ran the license plate on the Jeep SRT and determined that it was registered to a different model of vehicle. Officers also knew about a silver Jeep SRT bearing Illinois license plate AY40252, which was stolen from the 6500 block of South Laramie Avenue in Bedford Park, IL on October 19, 2022. That vehicle matched the description of the vehicle that SINGLETON was operating.

7. According to CPD reports, officers conducted a search of automated license plate reader (LPR) records for license plate numbers DH61502 and AY40252. License plate AY40252 was last scanned on October 19, 2022 at 9:43 AM affixed to a

4

SENSITIVE
FBIMAIN_001-000172

silver 2019 Jeep SRT with a license plate frame. License plate DH61502 was seen on a silver 2021 Jeep Grand Cherokee Overland on October 25, 2022 at 7:58 PM. Records showed that the next scan of license plate DH61502 was on October 26, 2022 at 11:09 AM and the license plate was affixed to what appeared to be a Jeep SRT, similar in appearance to the vehicle SINGLETON was operating. In addition, the license plate frame on the vehicle SINGLETON was operating appeared the same as the license plate frame originally affixed to license plate AY40252.

8.      On January 4, 2023, CPD conducted a non-recorded photo array with the CPD officer that recognized SINGLETON. The photo array was conducted using a blind administrator and used a standard 6-pack photo array. The officer positively identified SINGLETON in the array as the individual entering the stolen Jeep SRT.

9.      The following is SINGLETON's Illinois Driver's License Photo, issued July 25, 2022, depicting his very distinct 'SRT' tattoo.



5

SENSITIVE
FBIMAIN_001-000173

### C. November 3, 2022 – Carjacking and Robbery of Victim A

10. According to CPD reports, on November 3, 2022, at approximately 7:15 p.m., officers interviewed Victim A after Victim A was carjacked. Victim A told officers that he was pumping gas into his black 2015 Infinity Q50 with Illinois registration BF57200 at a gas station located at on the 10000 block of South Michigan Avenue, in Chicago. According to Victim A, two masked black males approached his car. One of the offenders (Offender 1) came up behind Victim A, put a gun to his back, and said "where are the keys?". Victim A gave Offender 1 the keys and ran into the gas station. After CPD officers arrived, Victim A informed them that his cell phone was still in the car (**VICTIM A PHONE**). Victim A tracked the cell phone using the 'Find My' application on his iPad and found that **VICTIM A PHONE** was located in the 9800 block of South Michigan Avenue. It was recovered, abandoned in that area with a damaged screen at approximately 7:22 PM the same day. When the phone was recovered, Victim A's credit cards were missing from the phone case that Victim A used as a wallet.

11. Gas station security camera footage captured the incident. Based on my review of the security camera footage, the footage corroborates Victim A's statements and description of the offenders. According to the video footage, Victim A was pumping gas into his black Infiniti at the gas station. A silver Jeep SUV drove past the gas station and pulled over on the side of the road. The Jeep performed a U-turn and pulled up next to the Infiniti. There was damage to the front passenger door of

6

the silver Jeep SUV, consistent with the silver Jeep Singleton was driving about a week before. Offender 1 and Offender 2 exited the silver Jeep SUV and approached Victim A. Offender 1 was wearing a black hoodie, black pants, mask, distinctive gray shoes, and was armed with what appeared to be a multi-colored tan/black handgun. Offender 2 was wearing a black hoodie, black vest, white shoes, black pants with a white smiley face logo, and was armed with what appeared to be a black handgun. Another individual was in the front passenger seat of the Jeep with a blue surgical mask. Offender 1 pointed the multi-colored handgun at Victim A and knocked him to the ground. Offender 2 entered the front driver's seat of the Infiniti. Offender 1 went through Victim A's pockets and entered the front passenger seat of the Infinity. The Infiniti and the silver Jeep SUV left the gas station, in tandem, driving northbound on South Michigan Avenue.

**D.      Cook County State's Attorney Interview of Victim A**

12.      On November 4, 2022, at approximately 11:44 p.m., Victim A was interviewed by a Cook County State's Attorney regarding the carjacking on November 3, 2022. In addition to what Victim A told the officers, Victim A also reported that as the offenders fled with Victim A's vehicle, Offender 1 rested the barrel of his firearm on the window, pointing it directly at Victim A.

**E.      November 3, 2022 – Attempted Carjacking and Robbery of Victim B**

13.      According to CPD reports, on November 3, 2022, officers interviewed Victim B regarding an attempted carjacking and robbery that had occurred at approximately 9:30 p.m. Victim B told officers that he was pumping gas into his 2022

7

BMW X6 at a gas station located in the 3100 block of South Michigan Avenue in Chicago. According to Victim B, a gray vehicle parked behind his vehicle and two black males exited the gray vehicle. One of the offenders exited the vehicle and pointed a handgun at him and grabbed his car keys. Victim B fell to the ground and one of the offenders went through his pockets, taking his wallet. Victim B observed the offenders enter his vehicle, but they were not able to operate the controls. Victim B explained to officers that he was diagnosed with Polio as a young child and uses custom hand controls to operate his vehicle. The offenders exited his vehicle, threw his keys to the ground, and fled in the gray vehicle in an unknown direction. Victim B initially believed that his cell phone (**Victim B Phone**) had been stolen by the offender and asked gas station staff to dial 911. Victim B later realized that he still had **Victim B Phone** on his person.

14.     According to CPD reports, Victim B described Offender 1 as a black male wearing a black ski mask, which exposed his mouth.

15.     Gas station security camera footage captured the incident. Based on my review of the security camera footage, the footage corroborates Victim B's statements and description of the offender. According to the video surveillance, Victim B was pumping gas into his black BMW at the gas station. A silver jeep SUV pulled up next to the BMW and two offenders exited the Jeep. Damage to the front passenger's side door was visible. Offender 1 exited the rear driver's side of the Jeep. Offender 1 was wearing a black hoodie, black pants, mask, distinctive gray shoes, and was armed with what appeared to be a multi-colored tan/black handgun, which was similar in

8

appearance to the firearm used by Offender 1 in the first carjacking. The second offender (Offender 3) was wearing a black hoodie with white writing on the front and back, gray jeans, a blue surgical mask, white shoes, and was armed with what appeared to be a black handgun. Offender 3 exited the rear passenger's side of the Jeep and immediately pointed the handgun at the head of Victim B. Offender 3 fell to the ground as Offender 1 approached the victim. Offender 1 knocked Victim B to the ground and the two fell out of view of the camera. Offender 3 entered the front driver's seat of the vehicle before Offender 1 entered the front passenger seat of the BMW. Offender 1 was armed with what appeared to be a firearm in his right hand and keys in his left. The two spent several seconds in the car before they exited and ran back to the silver Jeep. Offender 1 dropped the keys as he exited the BMW. The offenders re-entered the silver Jeep and the silver Jeep fled eastbound on East 31st Street.

## F. November 3, 2022 – Vehicle Pursuit

16. According to CPD reports, at approximately 10:30 p.m., an hour after the attempted carjacking of Victim B, the silver Jeep SUV was observed by law enforcement traveling southbound on South Aberdeen Street near West 83rd Street and tracked by law enforcement helicopter. The helicopter followed the silver Jeep SUV until it stopped under an underpass near 9425 South Woodlawn Avenue.

17. Based on my review of helicopter video, three individuals ran out from under the underpass into a residential area. According to CPD reports, body worn camera footage, and helicopter video, all three individuals were apprehended by law

9

enforcement within approximately three minutes and identified themselves verbally as SINGLETON, DAVIS, and BRADLEY.

18. According to CPD body worn camera footage, DAVIS was apprehended wearing clothing consistent with the clothes worn by Offender 1—a ski mask, with Infiniti key in his front left pocket, and a dark colored backpack. Victim A reported that the key was in fact the key to his vehicle that was carjacked and later recovered. According to CPD reports and body worn camera footage, inside the backpack were IDs belonging to Victim B and 58 multicolored tablets. Those tablets were later tested by the Illinois State Police lab, which determined that of 51 tablets tested, the tablets weighed 15.6 grams and contained methamphetamine. According to the lab, 5.9 grams of tablet fragments and powder were not tested.

19. According to CPD body worn camera footage, BRADLEY was apprehended with clothing consistent with the clothes worn by Offender 3. Officers reviewed recorded helicopter video and observed BRADLEY throw an object. Officers searched the area where helicopter video showed the object thrown and located a black Glock model 30 .45 caliber handgun with 13 live rounds in the magazine and 1 live round in the chamber ("Firearm 1"). Officers also searched the area DAVIS fled through and located a tan and black snakeskin camouflage Glock model 19 9mm

10

SENSITIVE
FBIMAIN_001-000178

handgun with an extended magazine, 34 live rounds in the magazine and 1 live round in the chamber ("Firearm 2"). The following are images of those firearms:





20.     Based on my review of surveillance videos from the carjacking and attempted carjacking, Firearm 1 is similar in appearance to the firearm brandished by Offender 3 and Firearm 2 is consistent in appearance to the firearm brandished by Offender 1.

21.     According to CPD reports, when officers inspected the silver Jeep SUV, they found that Illinois registration plate DH61052 was affixed to the back of the vehicle, which was the same license plate as the silver Jeep SINGLETON was driving on October 26, 2022. Damage to the front driver's side door was consistent with the damage seen to the silver Jeep SUV in the security camera footage. The VIN number matched that of the stolen silver Jeep bearing Illinois registration AY40252. Officers located the keys to the silver Jeep SUV in the area where SINGLETON was

11

apprehended. The following are images of the silver Jeep SUV taken by CPD.

 

### G. Post-*Miranda* Interviews[2]

22. In SINGLETON's initial post-*Miranda* interview, SINGLETON denied taking part in any robberies but admitted that he was on federal supervision. SINGLETON was eventually released.

23. Prior to DAVIS's initial post-*Miranda* interview, officers placed him into a video and audio recorded holding cell. Officers asked DAVIS to take off his hat, which he later admitted was a ski-mask. DAVIS also said that the red iPhone (**Davis Phone 2**) and "big Android" (**Davis Phone 1**) phones were his. DAVIS was then read his *Miranda* rights and claimed not to understand. Detectives did not further question DAVIS. DAVIS was eventually released.

24. In BRADLEY's post-*Miranda* interview, BRADLEY stated that he "just got in the car" and he was in the "wrong place, wrong time." BRADLEY said that he

---

[2] This affidavit contains excerpts and summaries from recorded communications. The language that is quoted from the recorded conversations throughout this affidavit is based upon a preliminary review of the conversations and not on final transcripts of the conversations. Summaries and excerpts do not include all statements or topics covered during the course of the recorded conversations.

12

SENSITIVE
FBIMAIN_001-000180

was in the car and fell asleep. When he woke up, the helicopter was following the car. BRADLEY was eventually released.

**H.      Cook County Cell Phone Search Warrants**

25.     SINGLETON, DAVIS, and BRADLEY were in possession of a combined total of six cell phones (**SINGLETON PHONE 1, SINGLETON PHONE 2, SINGLETON PHONE 3, DAVIS PHONE 1, DAVIS PHONE 2,** and **BRADLEY PHONE 1**) at the time of their arrest on November 3, 2022. All six cell phones were seized by CPD and state search warrants were obtained to search the devices. According to CPD detectives, reports, and body worn camera footage, SINGLETON PHONE 1 was located in the backpack that DAVIS was wearing when apprehended; SINGLETON PHONES 2 & 3 were located on SINGLETON's person; DAVIS PHONES 1 & 2 were located on DAVIS's person, and BRADLEY PHONE 1 was located on BRADLEY's person.

26.     **SINGLETON PHONE 1** is an Apple iPhone 11, International Mobile Equipment Identifier (IMEI)# 353972107431853, Serial# DNPZMPAZN72J. **SINGLETON PHONE 1** contained photographs of SINGLETON's driver's license, social security card, and photographs and videos of SINGLETON armed with handguns.

27.     **SINGLETON PHONE 2** is an Apple iPhone 11, IMEI# 356865117024691, Serial# GXGGD2WWN72N. **SINGLETON PHONE 2** contained photographs of SINGLETON armed with various handguns equipped with extended magazines and what appears to be a fully automatic switch.  **SINGLETON PHONE**

13

SENSITIVE
FBIMAIN_001-000181

**2** contained text message conversations including a group text conversation between **SINGLETON PHONE 2, BRADLEY PHONE 1, DAVIS PHONE 2**, and **THOMAS PHONE 1**. GPS information from **SINGLETON PHONE 2** showed that the cell phone was near the location of the attempted carjacking of Victim B, and followed the route, turn by turn, taken by the silver Jeep SUV as recorded by the CPD helicopter.

28. **SINGLETON PHONE 3** is an Apple iPhone SE, IMEI# 359844403126863, Serial# FFMHH4XSPLJN, with the same telephone number as **SINGLETON PHONE 2**. GPS information from SINGLETON PHONE 3 showed that the cell phone was near the location of the carjacking of Victim A, attempted carjacking of Victim B, and followed a route consistent with the route taken by the silver Jeep SUV as recorded by the CPD helicopter.

29. In **SINGLETON PHONE 3**, there is a video, created October 25, 2022, at approximately 1:28 p.m., showing SINGLETON, DAVIS, and an unknown individual in an SRT SUV. I recognize SINGLETON and DAVIS, based on CPD body worn camera footage and CPD interview room camera footage from November 3, 2022. In the video, SINGLETON is wearing a black hoodie consistent with the hoodie worn by SINGLETON when he was apprehended on November 3, 2022. He was also wearing a green ski-mask, but exposed his face to the camera. In the video, DAVIS is wearing clothing consistent with the outfit worn by Offender 1 on November 3, 2022, and a ski-mask. DAVIS was holding a tan and black snakeskin gun consistent with the tan and black snakeskin gun used in the carjacking, attempted carjacking, and recovered on November 3, 2022. The unknown individual was wearing clothing

14

SENSITIVE
FBIMAIN_001-000182

consistent with Offender 2 during the carjacking of Victim A on November 3, 2022, and displayed what appears to be a handgun to the camera. Tagged in the video are Instagram accounts "smokeytht" and "bossmanbdot_089". Subscriber information provided by Meta showed that the email address registered to 'smokeytht' is marqueldavis5@gmail.com.

30.     **BRADLEY PHONE 1** is an Apple iPhone 7, IMEI# 354910097152625, Serial# DX3CXSMVHG6W. **BRADLEY PHONE 1** contained photographs and/or videos of SINGLETON, DAVIS, and BRADLEY armed with handguns and wearing clothing consistent with the offenders in the incidents with Victim A and B. Additionally, on **BRADLEY PHONE 1**, there are communications with **SINGLETON PHONE 2**, **DAVIS PHONE 2**, and a contact named 'Dion' which has the same phone number as **THOMAS PHONE 1**.

31.     According to subscriber information provided by T-Mobile, **THOMAS PHONE 1** is registered to Dion Thomas.

32.     The following is a group text message conversation, recovered from BRADLEY PHONE 1, between **SINGLETON PHONE 2**, **BRADLEY PHONE 1**, **DAVIS PHONE 2**, and **THOMAS PHONE 1**, occurring on November 3, 2022.

> *9:54 p.m. – **Thomas Phone 1** – "I'm at the crib let me know wen y'all all at the crib"*
>
> *10:12 p.m. – **Bradley Phone 1** – "I'm Mad Asl [emoji] Got me looking like a goofy"*

The carjacking of Victim A occurred at approximately 6:30 p.m. on November 3, 2022

15

SENSITIVE
FBIMAIN_001-000183

and unidentified Offender 2 was not apprehended after driving away in the stolen Infiniti. The attempted carjacking of Victim B occurred at approximately 9:30 p.m. and Offender 3 (believed to be BRADLEY based on similar clothing and build) fell hard to the ground while exiting the Jeep before his unsuccessful attempt to drive Victim B's BMW. In my training and experience, and based on the context of the conversation, I believe BRADLEY was referring to looking "like a goofy" because he fell hard to the ground after unsuccessfully attempting to carjack Victim B's car. I also believe THOMAS is Offender 2 based on his participation in a group chat with SINGLETON, BRADLEY, and DAVIS around the exact time of both incidents. Offender 2 was the driver of the stolen Infiniti, and did not participate in the attempted carjacking of Victim B. THOMAS sent the group message including the other offenders after the carjacking of Victim A, and **BRADLEY PHONE 1** called **THOMAS PHONE 1** almost immediately after receiving the above text message.

33.     Additional evidence of DAVIS's and THOMAS's phone activity around the time of the carjackings was found in the toll records in **BRADLEY PHONE 1** around the time of the carjackings. The following outgoing phone calls were made from **BRADLEY PHONE 1** to **DAVIS PHONE 2** and **THOMAS PHONE 1**:

*6:58 p.m. – DAVIS PHONE 2 – Not answered.*

*9:55 p.m. – THOMAS PHONE 1 – 2 minutes 26 seconds.*

*9:57 p.m. – DAVIS PHONE 2 – 26 seconds.*

34.     In **BRADLEY PHONE 1**, the image below, created November 2, 2022 at 9:43 p.m., shows a masked individual wearing clothing consistent with Offender 1

16

SENSITIVE
FBIMAIN_001-000184

holding the snakeskin handgun. DAVIS was later apprehended wearing clothing similar in appearance.



35.     In **BRADLEY PHONE** 1, the image below, created November 2, 2022, at approximately 9:46 p.m., shows BRADLEY wearing clothing consistent with those worn by Offender 3, in front of a silver Jeep SUV. I have compared the individual in the photograph below to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022 of BRADLEY and recognize the individual in the photograph as BRADLEY.

17

SENSITIVE
FBIMAIN_001-000185



36.    In **BRADLEY PHONE** 1, the images below are still images from a video, created November 2, 2022, at approximately 2:15 p.m., showing DAVIS (left) and SINGLETON (right) in clothing consistent with the clothing they were wearing when apprehended by CPD on November 3, 2022. I have compared the individual in the photograph on the left below to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022 and recognize the individual in the photograph as DAVIS. I have compared the individual in the photograph on the right below to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022, and driver's license photo of SINGLETON from July 5, 2022, and recognize the individual in the photograph as SINGLETON.

18

SENSITIVE

FBIMAIN_001-000186

 

37.　In **BRADLEY PHONE 1**, there is a video, created November 3, 2022, at approximately 12:08 a.m., showing BRADLEY and SINGLETON riding in a car while wearing clothing consistent with the clothing they were wearing when apprehended by CPD later that day on November 3, 2022. BRADLEY and SINGLETON displayed firearms directly into the camera. I have compared the video to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022, and recognize the individuals to be SINGLETON and BRADLEY.

38.　**DAVIS PHONE 1** is a OnePlus Nord N100, IMEI# 990016791554247. The following accounts are associated with **DAVIS PHONE 1:**

19

SENSITIVE
FBIMAIN_001-000187

davismarquel840@gmail.com; Snapchat account 'smokeytht'; Twitter account 'smokeytht'; and Instagram account 'smokeytht'.

39.     **DAVIS PHONE 2** is an Apple iPhone SE, IMEI# 356839112434924, Serial# FFMDRJ16PLJP. Photos saved within the phone showed DAVIS brandishing or possessing various firearms, including a handgun with a snakeskin pattern, consistent with the handgun brandished by Offender 1.

## I. Spotify and YouTube

40.     Spotify account 'Biggrell' posted rap songs believed to be performed by SINGLETON. The account's main cover photo is of SINGLETON standing by a pool and the account featured songs such as "Hot Cars" and "Toma". I recognized SINGLETON based on CPD body worn camera footage and CPD interview room camera footage from November 3, 2022.

41.     "Hot Cars" featured a cover photo of silver Jeep SUV bearing Illinois license plate AY40252. This was the original license plate on the stolen Jeep operated by SINGLETON on October 19, 2022.

42.     A screen shot of the YouTube video of "Big G Rell – Toma," which showed SINGLETON brandishing a firearm out of a silver SUV. I recognized SINGLETON based on CPD body worn camera footage and CPD interview room camera footage from November 3, 2022. A clip of the "Toma" music video was uploaded to a Youtube channel titled "TheGDNetwork". The video title is "Big G Rell – Toma clip #089 #GDN [Trident Emoji][Star of David Emoji][Trident Emoji]" and predominantly features SINGLETON. In the video, a masked individual believed to be DAVIS, identified

20

from photographs in **DAVIS PHONE 2** wearing similar clothing with his face exposed, was seen brandishing a firearm consistent with the snakeskin gun. BRADLEY was also in the video, as identified from CPD body worn camera footage and CPD interview room camera footage from November 3, 2022, was seen wearing clothing consistent with Offender 3 during the carjacking of Victim B.

### J. Davis's Later Arrest and Post-*Miranda* Interview

43.     On April 12, 2023, DAVIS was taken into custody by CPD without incident, based on probable cause for the carjacking of Victim A and attempted carjacking of Victim B. Detectives advised DAVIS of his *Miranda* rights. DAVIS indicated that he understood his rights. DAVIS claimed he did not possess a red phone, which was contrary to his statements to detectives on November 3, 2022. DAVIS also claimed that he did not know SINGLETON. Later, detectives allowed DAVIS to call his sister on speaker phone. DAVIS's sister said she spoke to "Rell," which I believe is a reference to SINGLETON's rapper name, "Big G Rell."

### K.     Interstate Nexus

44.     According to Nissan Group of North America, the vehicle that was taken from Victim A on November 3, 2022, a 2015 Infinity Q50, with VIN# JN1BV7AR7FM401842, was originally manufactured at the Nissan Tochigi Plant in Japan.

45.     According to BMW of North America, the vehicle that Offenders 1 and 3 attempted to steal on November 3, 2022, a 2022 BMW X6 with VIN#

21

5UXCY6C07N9K39955, was originally manufactured at the BMW Manufacturing Plant in South Greer, South Carolina.

## L.    Requested Provider Data

46.    In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which the provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

47.    Based on my training and experience, I know that PROVIDER can collect cell-site data about the **SUBJECT PHONES**. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  I have sent

22

preservation requests to PROVIDER for cell-site information for the **SUBJECT PHONES**.

48.     Based on my training and experience, I know that Verizon Wireless also collects per-call measurement data, which Verizon Wireless also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

49.     Based on my training and experience, I know that wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONES** user or users and may assist in the identification of co-conspirators and/or victims.

23

SENSITIVE

FBIMAIN_001-000191

50. I know that T-Mobile will sometimes provide information in Coordinated Universal Time (UTC) instead of Central Standard Time (CST). CST is 5 to 6 hours behind UTC depending on Daylight Savings Time. Due to the UTC to CST conversion and the carjackings occurring in the later hours of the evening, I am requesting information for the period of November 2, 2022 to November 4, 2022 (one day prior to the carjackings and one day after) for all **SUBJECT PHONES**, in order to account for a possible underproduction of data.

## AUTHORIZATION REQUEST

51. Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24

SENSITIVE
FBIMAIN_001-000192

52.     I further request that the Court direct PROVIDER to disclose to the government any information described in Section I of the corresponding Attachment B that is within its possession, custody, or control.  Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Karl Fredriksen*

Karl Fredriksen
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone on August 7, 2024.

HONORABLE YOUNG B. KIM
UNITED STATES MAGISTRATE JUDGE

25

SENSITIVE
FBIMAIN_001-000193

## ATTACHMENT A-1

This warrant applies to records and information associated with the cellular telephone assigned call number (773) 600-5709 ("**SINGLETON PHONE 1**") that are stored and within the possession of the premises owned, maintained, controlled, or operated by the provider T-Mobile (the "**PROVIDER**"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

SENSITIVE
FBIMAIN_001-000194

## ATTACHMENT B-1

**Particular Things to be Seized**

### I.     Information to be Disclosed by the PROVIDER

To the extent that the information described in Attachment A is within the possession, custody, or control of the **PROVIDER**, including any information that has been deleted but is still available to the **PROVIDER** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **PROVIDER** is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from November 2, 2022, through November 4, 2022:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID");

Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of **18 U.S.C. 2119 and 18 U.S.C. § 924(c)(1)(A)** during the period November 2, 2022, through November 4, 2022, including information identified in Section I(a)(i) through (a)(viii). The information to be seized by the government consists of all information relating to:

a. The identity of the subscriber(s) and user(s) of **SINGLETON PHONE 1**; and

SENSITIVE<br>FBIMAIN_001-000196

b. The location of the **SINGLETON PHONE 1**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

AO 93  (Rev. 11/13) Search and Seizure Warrant                    AUSA Margaret A. Steindorf, (312) 353-3540

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

Case No.  24 M 614

The information associated with telephone number (773) 600-5709 that is stored at a premises controlled by T-Mobile USA, Inc., further described in Attachment A-1

Ref. No. 2023R00370

### SEARCH AND SEIZURE WARRANT

To: Karl Fredriksen and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of New Jersey:

**See Attachment A-1. The Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**See Attachment B-1**

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>August 21, 2024</u> at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>August 7, 2024</u> _(5:32pm_

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

YOUNG B. KIM, U.S. Chief Magistrate Judge
*Printed name and title*

SENSITIVE
FBIMAIN_001-000263

AO 93 (Rev. 11/13)  Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SENSITIVE
FBIMAIN_001-000264

## ATTACHMENT A-1

This warrant applies to records and information associated with the cellular telephone assigned call number (773) 600-5709 ("**SINGLETON PHONE 1**") that are stored and within the possession of the premises owned, maintained, controlled, or operated by the provider T-Mobile (the "**PROVIDER**"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

SENSITIVE
FBIMAIN_001-000265

# ATTACHMENT B-1

**Particular Things to be Seized**

**I.      Information to be Disclosed by the PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the **PROVIDER**, including any information that has been deleted but is still available to the **PROVIDER** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **PROVIDER** is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from November 2, 2022, through November 4, 2022:

   a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID");

SENSITIVE
FBIMAIN_001-000266

Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

II.    **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of **18 U.S.C. 2119 and 18 U.S.C. § 924(c)(1)(A)** during the period November 2, 2022, through November 4, 2022, including information identified in Section I(a)(i) through (a)(viii). The information to be seized by the government consists of all information relating to:

a. The identity of the subscriber(s) and user(s) of **SINGLETON PHONE 1**; and

SENSITIVE
FBIMAIN_001-000267

b. The location of the **SINGLETON PHONE 1**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

SENSITIVE
FBIMAIN_001-000268

AO 106 (REV 4/10) Affidavit for Search Warrant                          AUSA Margaret A. Steindorf, (312) 353-3540

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The information associated with telephone number (773) 895-7281 that is stored at a premises controlled by T-Mobile USA, Inc., further described in Attachment A-2

Case No.  24 M 615

Ref. No. 2023R00370

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Karl Fredriksen, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A-2.  The Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).**

located in the District of New Jersey, there is now concealed:

**See Attachment B-2**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2119 and Title 18, United States Code, Section 924(c)(1)(A) | carjacking, in violation of Title 18, United States Code, Section 2119, and brandishing and using a firearm during and in relation to the carjacking, in violation of Title 18, United States Code, Section 924(c)(1)(A) |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

*Karl Fredriksen*

_____
*Applicant's Signature*

KARL FREDRIKSEN, Special Agent
Federal Bureau of Investigation
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: August 7, 2024 @5:35pm

_____
*Judge's signature*

City and State: Chicago, Illinois

YOUNG B. KIM, U.S. Chief Magistrate Judge
*Printed name and title*

SENSITIVE
FBIMAIN_001-000269

UNITED STATES DISTRICT COURT     )
     )
NORTHERN DISTRICT OF ILLINOIS     )

**AFFIDAVIT**

I, Karl Fredriksen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with the following telephone numbers: (1) (773) 600-5709 ("**SINGLETON PHONE 1**"); (2) (773) 895-7281 ("**SINGLETON PHONE 2** and **3**"); (3) (773) 918-9652 ("**DAVIS PHONE 2**"); (4) (708) 677-2347 ("**THOMAS PHONE 1**"); and (5) ▮▮▮▮-0289 ("**VICTIM B PHONE**"), that is stored at premises controlled by T-Mobile US, Inc. ("PROVIDER"), 4 Sylvan Way, Parsippany, NJ 07054. I further make this affidavit in support of an application for a search warrant for information associated with the following telephone number: (312) 632-3173 ("**BRADLEY PHONE 1**") that is stored at premises controlled by American Messaging Services, LLC ("PROVIDER"), 1720 Lakepointe Drive, Suite 100, Lewisville, TX 75057. I further make this affidavit in support of an application for a search warrant for information associated with the following telephone number: (773) 263-4429 ("**DAVIS PHONE 1**") that is stored at premises controlled by Verizon Wireless ("PROVIDER"), 1095 Avenue of the Americas, New York, NY 10036. Finally, I make this affidavit in support of an application for a search warrant for information associated with the following telephone number: (▮▮▮▮-3380 ("**VICTIM A PHONE**") that is stored at premises controlled by AT&T Corporation ("PROVIDER"),

1

SENSITIVE
FBIMAIN_001-000270

208 S. Akard Street, Suite 2954, Dallas, Texas 75202. The information to be searched is described in the following paragraphs and in Attachments A-1 through A-8. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information further described in Section I of the corresponding Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for over one year. I was previously employed as a Police Officer with the Richland Center Police Department for approximately six years, and as part of my duties, I have drafted and served numerous search warrants. My current responsibilities include the investigation of violent crime, narcotics trafficking, and criminal enterprises.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2119 and 924(c)(1)(A) will be found in the information associated with the above-mentioned telephone numbers, collectively, the "**SUBJECT PHONES**." There is also probable cause to

2

search the information described in Attachments A-1 through A-8 for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

### A. Summary

5.      In summary, the FBI is conducting an investigation of one carjacking and one attempted carjacking, both occurring on November 3, 2022 on South Michigan Avenue in Chicago, Illinois. In both the carjacking and attempted carjacking, offenders exited a silver Jeep SUV, pointed firearms at the victims and took the keys to their vehicles. In the first incident, after taking the keys, the individuals took the vehicle. In the second incident, after taking the keys, the individuals entered the vehicle. After not being able to figure out how to drive the vehicle, the individuals exited the vehicle, threw down the keys and left the area in the vehicle in which they arrived. As part of the investigation, the FBI has identified six telephone phone numbers used by the offenders: (773) 600-5709 and (773) 895-7281 belonging to Edmund SINGLETON (**SINGLETON PHONES 1, 2,** and **3**),[1] (773)-263-4429 and 773-918-9652 belonging to Marquel DAVIS (**DAVIS PHONE 1 & 2**), (312) 632-3173 belonging to Ramone BRADLEY (**BRADLEY PHONE 1**) and (708) 677-2347 belonging to Dion THOMAS (**THOMAS PHONE 1**). The FBI has also identified two telephone numbers used by the victims: ███████-3380 belonging to Victim A (**VICTIM A PHONE**), and ███████-0289 belonging to Victim B (**VICTIM**

---

[1] SINGLETON PHONES 2 and 3 answer to the same telephone number ending in -7281.

3

SENSITIVE
FBIMAIN_001-000272

B PHONE). Therefore, this affidavit seeks historical information, including cell-site location data, from the **SUBJECT PHONES**.

### B. October 26, 2022 - Identification of SINGLETON

6.      According to the Chicago Police Department ("CPD") reports, on October 26, 2022, at approximately 5:17 p.m., officers were at the Home Depot located on the 300 block of West 87th Street, Chicago, Illinois, 60620 responding to an unrelated incident. Officers observed a male at the store that they recognized, from prior interactions, as Edmund SINGLETON, noting SINGLETON's distinct "SRT" tattoo above his right eyebrow.  The reporting officer later informed detectives that SINGLETON is well known in CPD District 006 and he knew SINGLETON to be a rapper under the name 'Big G Rell.' Officers observed SINGLETON unlock and enter the front driver's side of a silver Jeep SRT bearing Illinois license plate DH61052 with damage to the front passenger door. Officers observed SINGLETON look in their direction and drive quickly through the parking lot. Officers ran the license plate on the Jeep SRT and determined that it was registered to a different model of vehicle. Officers also knew about a silver Jeep SRT bearing Illinois license plate AY40252, which was stolen from the 6500 block of South Laramie Avenue in Bedford Park, IL on October 19, 2022. That vehicle matched the description of the vehicle that SINGLETON was operating.

7.      According to CPD reports, officers conducted a search of automated license plate reader (LPR) records for license plate numbers DH61502 and AY40252. License plate AY40252 was last scanned on October 19, 2022 at 9:43 AM affixed to a

4

silver 2019 Jeep SRT with a license plate frame. License plate DH61502 was seen on a silver 2021 Jeep Grand Cherokee Overland on October 25, 2022 at 7:58 PM. Records showed that the next scan of license plate DH61502 was on October 26, 2022 at 11:09 AM and the license plate was affixed to what appeared to be a Jeep SRT, similar in appearance to the vehicle SINGLETON was operating. In addition, the license plate frame on the vehicle SINGLETON was operating appeared the same as the license plate frame originally affixed to license plate AY40252.

8. On January 4, 2023, CPD conducted a non-recorded photo array with the CPD officer that recognized SINGLETON. The photo array was conducted using a blind administrator and used a standard 6-pack photo array. The officer positively identified SINGLETON in the array as the individual entering the stolen Jeep SRT.

9. The following is SINGLETON's Illinois Driver's License Photo, issued July 25, 2022, depicting his very distinct 'SRT' tattoo.



5

## C. November 3, 2022 – Carjacking and Robbery of Victim A

10. According to CPD reports, on November 3, 2022, at approximately 7:15 p.m., officers interviewed Victim A after Victim A was carjacked. Victim A told officers that he was pumping gas into his black 2015 Infinity Q50 with Illinois registration BF57200 at a gas station located at on the 10000 block of South Michigan Avenue, in Chicago. According to Victim A, two masked black males approached his car. One of the offenders (Offender 1) came up behind Victim A, put a gun to his back, and said "where are the keys?". Victim A gave Offender 1 the keys and ran into the gas station. After CPD officers arrived, Victim A informed them that his cell phone was still in the car (**VICTIM A PHONE**). Victim A tracked the cell phone using the 'Find My' application on his iPad and found that **VICTIM A PHONE** was located in the 9800 block of South Michigan Avenue. It was recovered, abandoned in that area with a damaged screen at approximately 7:22 PM the same day. When the phone was recovered, Victim A's credit cards were missing from the phone case that Victim A used as a wallet.

11. Gas station security camera footage captured the incident. Based on my review of the security camera footage, the footage corroborates Victim A's statements and description of the offenders. According to the video footage, Victim A was pumping gas into his black Infiniti at the gas station. A silver Jeep SUV drove past the gas station and pulled over on the side of the road. The Jeep performed a U-turn and pulled up next to the Infiniti. There was damage to the front passenger door of

6

SENSITIVE
FBIMAIN_001-000275

the silver Jeep SUV, consistent with the silver Jeep Singleton was driving about a week before. Offender 1 and Offender 2 exited the silver Jeep SUV and approached Victim A. Offender 1 was wearing a black hoodie, black pants, mask, distinctive gray shoes, and was armed with what appeared to be a multi-colored tan/black handgun. Offender 2 was wearing a black hoodie, black vest, white shoes, black pants with a white smiley face logo, and was armed with what appeared to be a black handgun. Another individual was in the front passenger seat of the Jeep with a blue surgical mask. Offender 1 pointed the multi-colored handgun at Victim A and knocked him to the ground. Offender 2 entered the front driver's seat of the Infiniti. Offender 1 went through Victim A's pockets and entered the front passenger seat of the Infinity. The Infiniti and the silver Jeep SUV left the gas station, in tandem, driving northbound on South Michigan Avenue.

**D.      Cook County State's Attorney Interview of Victim A**

12.      On November 4, 2022, at approximately 11:44 p.m., Victim A was interviewed by a Cook County State's Attorney regarding the carjacking on November 3, 2022. In addition to what Victim A told the officers, Victim A also reported that as the offenders fled with Victim A's vehicle, Offender 1 rested the barrel of his firearm on the window, pointing it directly at Victim A.

**E.      November 3, 2022 – Attempted Carjacking and Robbery of Victim B**

13.      According to CPD reports, on November 3, 2022, officers interviewed Victim B regarding an attempted carjacking and robbery that had occurred at approximately 9:30 p.m. Victim B told officers that he was pumping gas into his 2022

7

BMW X6 at a gas station located in the 3100 block of South Michigan Avenue in Chicago. According to Victim B, a gray vehicle parked behind his vehicle and two black males exited the gray vehicle. One of the offenders exited the vehicle and pointed a handgun at him and grabbed his car keys. Victim B fell to the ground and one of the offenders went through his pockets, taking his wallet. Victim B observed the offenders enter his vehicle, but they were not able to operate the controls. Victim B explained to officers that he was diagnosed with Polio as a young child and uses custom hand controls to operate his vehicle. The offenders exited his vehicle, threw his keys to the ground, and fled in the gray vehicle in an unknown direction. Victim B initially believed that his cell phone (**Victim B Phone**) had been stolen by the offender and asked gas station staff to dial 911. Victim B later realized that he still had **Victim B Phone** on his person.

14. According to CPD reports, Victim B described Offender 1 as a black male wearing a black ski mask, which exposed his mouth.

15. Gas station security camera footage captured the incident. Based on my review of the security camera footage, the footage corroborates Victim B's statements and description of the offender. According to the video surveillance, Victim B was pumping gas into his black BMW at the gas station. A silver jeep SUV pulled up next to the BMW and two offenders exited the Jeep. Damage to the front passenger's side door was visible. Offender 1 exited the rear driver's side of the Jeep. Offender 1 was wearing a black hoodie, black pants, mask, distinctive gray shoes, and was armed with what appeared to be a multi-colored tan/black handgun, which was similar in

8

SENSITIVE
FBIMAIN_001-000277

appearance to the firearm used by Offender 1 in the first carjacking. The second offender (Offender 3) was wearing a black hoodie with white writing on the front and back, gray jeans, a blue surgical mask, white shoes, and was armed with what appeared to be a black handgun. Offender 3 exited the rear passenger's side of the Jeep and immediately pointed the handgun at the head of Victim B. Offender 3 fell to the ground as Offender 1 approached the victim. Offender 1 knocked Victim B to the ground and the two fell out of view of the camera. Offender 3 entered the front driver's seat of the vehicle before Offender 1 entered the front passenger seat of the BMW. Offender 1 was armed with what appeared to be a firearm in his right hand and keys in his left. The two spent several seconds in the car before they exited and ran back to the silver Jeep. Offender 1 dropped the keys as he exited the BMW. The offenders re-entered the silver Jeep and the silver Jeep fled eastbound on East 31st Street.

### F.    November 3, 2022 – Vehicle Pursuit

16.    According to CPD reports, at approximately 10:30 p.m., an hour after the attempted carjacking of Victim B, the silver Jeep SUV was observed by law enforcement traveling southbound on South Aberdeen Street near West 83rd Street and tracked by law enforcement helicopter. The helicopter followed the silver Jeep SUV until it stopped under an underpass near 9425 South Woodlawn Avenue.

17.    Based on my review of helicopter video, three individuals ran out from under the underpass into a residential area. According to CPD reports, body worn camera footage, and helicopter video, all three individuals were apprehended by law

9

SENSITIVE
FBIMAIN_001-000278

enforcement within approximately three minutes and identified themselves verbally as SINGLETON, DAVIS, and BRADLEY.

18.    According to CPD body worn camera footage, DAVIS was apprehended wearing clothing consistent with the clothes worn by Offender 1—a ski mask, with Infiniti key in his front left pocket, and a dark colored backpack. Victim A reported that the key was in fact the key to his vehicle that was carjacked and later recovered. According to CPD reports and body worn camera footage, inside the backpack were IDs belonging to Victim B and 58 multicolored tablets. Those tablets were later tested by the Illinois State Police lab, which determined that of 51 tablets tested, the tablets weighed 15.6 grams and contained methamphetamine. According to the lab, 5.9 grams of tablet fragments and powder were not tested.

19.    According to CPD body worn camera footage, BRADLEY was apprehended with clothing consistent with the clothes worn by Offender 3. Officers reviewed recorded helicopter video and observed BRADLEY throw an object. Officers searched the area where helicopter video showed the object thrown and located a black Glock model 30 .45 caliber handgun with 13 live rounds in the magazine and 1 live round in the chamber ("Firearm 1"). Officers also searched the area DAVIS fled through and located a tan and black snakeskin camouflage Glock model 19 9mm

10

handgun with an extended magazine, 34 live rounds in the magazine and 1 live round in the chamber ("Firearm 2"). The following are images of those firearms:

 

20.     Based on my review of surveillance videos from the carjacking and attempted carjacking, Firearm 1 is similar in appearance to the firearm brandished by Offender 3 and Firearm 2 is consistent in appearance to the firearm brandished by Offender 1.

21.     According to CPD reports, when officers inspected the silver Jeep SUV, they found that Illinois registration plate DH61052 was affixed to the back of the vehicle, which was the same license plate as the silver Jeep SINGLETON was driving on October 26, 2022. Damage to the front driver's side door was consistent with the damage seen to the silver Jeep SUV in the security camera footage. The VIN number matched that of the stolen silver Jeep bearing Illinois registration AY40252. Officers located the keys to the silver Jeep SUV in the area where SINGLETON was

11

apprehended. The following are images of the silver Jeep SUV taken by CPD.

 

### G.   Post-*Miranda* Interviews[2]

22.    In SINGLETON's initial post-*Miranda* interview, SINGLETON denied taking part in any robberies but admitted that he was on federal supervision. SINGLETON was eventually released.

23.    Prior to DAVIS's initial post-*Miranda* interview, officers placed him into a video and audio recorded holding cell. Officers asked DAVIS to take off his hat, which he later admitted was a ski-mask. DAVIS also said that the red iPhone (**Davis Phone 2**) and "big Android" (**Davis Phone 1**) phones were his. DAVIS was then read his *Miranda* rights and claimed not to understand. Detectives did not further question DAVIS. DAVIS was eventually released.

24.    In BRADLEY's post-*Miranda* interview, BRADLEY stated that he "just got in the car" and he was in the "wrong place, wrong time." BRADLEY said that he

---

[2] This affidavit contains excerpts and summaries from recorded communications. The language that is quoted from the recorded conversations throughout this affidavit is based upon a preliminary review of the conversations and not on final transcripts of the conversations. Summaries and excerpts do not include all statements or topics covered during the course of the recorded conversations.

SENSITIVE
FBIMAIN_001-000281

was in the car and fell asleep. When he woke up, the helicopter was following the car. BRADLEY was eventually released.

**H.    Cook County Cell Phone Search Warrants**

25.    SINGLETON, DAVIS, and BRADLEY were in possession of a combined total of six cell phones (**SINGLETON PHONE 1, SINGLETON PHONE 2, SINGLETON PHONE 3, DAVIS PHONE 1, DAVIS PHONE 2,** and **BRADLEY PHONE 1**) at the time of their arrest on November 3, 2022. All six cell phones were seized by CPD and state search warrants were obtained to search the devices. According to CPD detectives, reports, and body worn camera footage, SINGLETON PHONE 1 was located in the backpack that DAVIS was wearing when apprehended; SINGLETON PHONES 2 & 3 were located on SINGLETON's person; DAVIS PHONES 1 & 2 were located on DAVIS's person, and BRADLEY PHONE 1 was located on BRADLEY's person.

26.    **SINGLETON PHONE 1** is an Apple iPhone 11, International Mobile Equipment Identifier (IMEI)# 353972107431853, Serial# DNPZMPAZN72J. **SINGLETON PHONE 1** contained photographs of SINGLETON's driver's license, social security card, and photographs and videos of SINGLETON armed with handguns.

27.    **SINGLETON PHONE 2** is an Apple iPhone 11, IMEI# 356865117024691, Serial# GXGGD2WWN72N. **SINGLETON PHONE 2** contained photographs of SINGLETON armed with various handguns equipped with extended magazines and what appears to be a fully automatic switch. **SINGLETON PHONE**

13

SENSITIVE
FBIMAIN_001-000282

**2** contained text message conversations including a group text conversation between **SINGLETON PHONE 2, BRADLEY PHONE 1, DAVIS PHONE 2**, and **THOMAS PHONE 1**. GPS information from **SINGLETON PHONE 2** showed that the cell phone was near the location of the attempted carjacking of Victim B, and followed the route, turn by turn, taken by the silver Jeep SUV as recorded by the CPD helicopter.

28.     **SINGLETON PHONE 3** is an Apple iPhone SE, IMEI# 359844403126863, Serial# FFMHH4XSPLJN, with the same telephone number as **SINGLETON PHONE 2**.  GPS information from SINGLETON PHONE 3 showed that the cell phone was near the location of the carjacking of Victim A, attempted carjacking of Victim B, and followed a route consistent with the route taken by the silver Jeep SUV as recorded by the CPD helicopter.

29.     In **SINGLETON PHONE 3**, there is a video, created October 25, 2022, at approximately 1:28 p.m., showing SINGLETON, DAVIS, and an unknown individual in an SRT SUV.  I recognize SINGLETON and DAVIS, based on CPD body worn camera footage and CPD interview room camera footage from November 3, 2022. In the video, SINGLETON is wearing a black hoodie consistent with the hoodie worn by SINGLETON when he was apprehended on November 3, 2022. He was also wearing a green ski-mask, but exposed his face to the camera. In the video, DAVIS is wearing clothing consistent with the outfit worn by Offender 1 on November 3, 2022, and a ski-mask. DAVIS was holding a tan and black snakeskin gun consistent with the tan and black snakeskin gun used in the carjacking, attempted carjacking, and recovered on November 3, 2022. The unknown individual was wearing clothing

14

SENSITIVE
FBIMAIN_001-000283

consistent with Offender 2 during the carjacking of Victim A on November 3, 2022, and displayed what appears to be a handgun to the camera. Tagged in the video are Instagram accounts "smokeytht" and "bossmanbdot_089". Subscriber information provided by Meta showed that the email address registered to 'smokeytht' is marqueldavis5@gmail.com.

30.     **BRADLEY PHONE 1** is an Apple iPhone 7, IMEI# 354910097152625, Serial# DX3CXSMVHG6W. **BRADLEY PHONE 1** contained photographs and/or videos of SINGLETON, DAVIS, and BRADLEY armed with handguns and wearing clothing consistent with the offenders in the incidents with Victim A and B. Additionally, on **BRADLEY PHONE 1**, there are communications with **SINGLETON PHONE 2**, **DAVIS PHONE 2**, and a contact named 'Dion' which has the same phone number as **THOMAS PHONE 1**.

31.     According to subscriber information provided by T-Mobile, **THOMAS PHONE 1** is registered to Dion Thomas.

32.     The following is a group text message conversation, recovered from BRADLEY PHONE 1, between **SINGLETON PHONE 2**, **BRADLEY PHONE 1**, **DAVIS PHONE 2**, and **THOMAS PHONE 1**, occurring on November 3, 2022.

> *9:54 p.m. – **Thomas Phone 1** – "I'm at the crib let me know wen y'all all at the crib"*
>
> *10:12 p.m. – **Bradley Phone 1** – "I'm Mad Asl [emoji] Got me looking like a goofy"*

The carjacking of Victim A occurred at approximately 6:30 p.m. on November 3, 2022

15

SENSITIVE
FBIMAIN_001-000284

and unidentified Offender 2 was not apprehended after driving away in the stolen Infiniti. The attempted carjacking of Victim B occurred at approximately 9:30 p.m. and Offender 3 (believed to be BRADLEY based on similar clothing and build) fell hard to the ground while exiting the Jeep before his unsuccessful attempt to drive Victim B's BMW. In my training and experience, and based on the context of the conversation, I believe BRADLEY was referring to looking "like a goofy" because he fell hard to the ground after unsuccessfully attempting to carjack Victim B's car. I also believe THOMAS is Offender 2 based on his participation in a group chat with SINGLETON, BRADLEY, and DAVIS around the exact time of both incidents. Offender 2 was the driver of the stolen Infiniti, and did not participate in the attempted carjacking of Victim B. THOMAS sent the group message including the other offenders after the carjacking of Victim A, and **BRADLEY PHONE 1** called **THOMAS PHONE 1** almost immediately after receiving the above text message.

33. Additional evidence of DAVIS's and THOMAS's phone activity around the time of the carjackings was found in the toll records in **BRADLEY PHONE 1** around the time of the carjackings. The following outgoing phone calls were made from **BRADLEY PHONE 1** to **DAVIS PHONE 2** and **THOMAS PHONE 1**:

*6:58 p.m. – DAVIS PHONE 2 – Not answered.*

*9:55 p.m. – THOMAS PHONE 1 – 2 minutes 26 seconds.*

*9:57 p.m. – DAVIS PHONE 2 – 26 seconds.*

34. In **BRADLEY PHONE 1**, the image below, created November 2, 2022 at 9:43 p.m., shows a masked individual wearing clothing consistent with Offender 1

16

SENSITIVE
FBIMAIN_001-000285

holding the snakeskin handgun. DAVIS was later apprehended wearing clothing similar in appearance.



35.    In **BRADLEY PHONE** 1, the image below, created November 2, 2022, at approximately 9:46 p.m., shows BRADLEY wearing clothing consistent with those worn by Offender 3, in front of a silver Jeep SUV. I have compared the individual in the photograph below to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022 of BRADLEY and recognize the individual in the photograph as BRADLEY.

17



36.    In **BRADLEY PHONE** 1, the images below are still images from a video, created November 2, 2022, at approximately 2:15 p.m., showing DAVIS (left) and SINGLETON (right) in clothing consistent with the clothing they were wearing when apprehended by CPD on November 3, 2022. I have compared the individual in the photograph on the left below to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022 and recognize the individual in the photograph as DAVIS. I have compared the individual in the photograph on the right below to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022, and driver's license photo of SINGLETON from July 5, 2022, and recognize the individual in the photograph as SINGLETON.

18

SENSITIVE

 

37. In **BRADLEY PHONE 1**, there is a video, created November 3, 2022, at approximately 12:08 a.m., showing BRADLEY and SINGLETON riding in a car while wearing clothing consistent with the clothing they were wearing when apprehended by CPD later that day on November 3, 2022. BRADLEY and SINGLETON displayed firearms directly into the camera. I have compared the video to CPD body worn camera footage and CPD interview room camera footage from November 3, 2022, and recognize the individuals to be SINGLETON and BRADLEY.

38. **DAVIS PHONE 1** is a OnePlus Nord N100, IMEI# 990016791554247. The following accounts are associated with **DAVIS PHONE 1**:

19

SENSITIVE
FBIMAIN_001-000288

davismarquel840@gmail.com; Snapchat account 'smokeytht'; Twitter account 'smokeytht'; and Instagram account 'smokeytht'.

39. **DAVIS PHONE 2** is an Apple iPhone SE, IMEI# 356839112434924, Serial# FFMDRJ16PLJP. Photos saved within the phone showed DAVIS brandishing or possessing various firearms, including a handgun with a snakeskin pattern, consistent with the handgun brandished by Offender 1.

## I. Spotify and YouTube

40. Spotify account 'Biggrell' posted rap songs believed to be performed by SINGLETON. The account's main cover photo is of SINGLETON standing by a pool and the account featured songs such as "Hot Cars" and "Toma". I recognized SINGLETON based on CPD body worn camera footage and CPD interview room camera footage from November 3, 2022.

41. "Hot Cars" featured a cover photo of silver Jeep SUV bearing Illinois license plate AY40252. This was the original license plate on the stolen Jeep operated by SINGLETON on October 19, 2022.

42. A screen shot of the YouTube video of "Big G Rell – Toma," which showed SINGLETON brandishing a firearm out of a silver SUV. I recognized SINGLETON based on CPD body worn camera footage and CPD interview room camera footage from November 3, 2022. A clip of the "Toma" music video was uploaded to a Youtube channel titled "TheGDNetwork". The video title is "Big G Rell – Toma clip #089 #GDN [Trident Emoji][Star of David Emoji][Trident Emoji]" and predominantly features SINGLETON. In the video, a masked individual believed to be DAVIS, identified

20

from photographs in **DAVIS PHONE 2** wearing similar clothing with his face exposed, was seen brandishing a firearm consistent with the snakeskin gun. BRADLEY was also in the video, as identified from CPD body worn camera footage and CPD interview room camera footage from November 3, 2022, was seen wearing clothing consistent with Offender 3 during the carjacking of Victim B.

### J. Davis's Later Arrest and Post-*Miranda* Interview

43.    On April 12, 2023, DAVIS was taken into custody by CPD without incident, based on probable cause for the carjacking of Victim A and attempted carjacking of Victim B. Detectives advised DAVIS of his *Miranda* rights. DAVIS indicated that he understood his rights. DAVIS claimed he did not possess a red phone, which was contrary to his statements to detectives on November 3, 2022. DAVIS also claimed that he did not know SINGLETON. Later, detectives allowed DAVIS to call his sister on speaker phone. DAVIS's sister said she spoke to "Rell," which I believe is a reference to SINGLETON's rapper name, "Big G Rell."

### K.    Interstate Nexus

44.    According to Nissan Group of North America, the vehicle that was taken from Victim A on November 3, 2022, a 2015 Infinity Q50, with VIN# JN1BV7AR7FM401842, was originally manufactured at the Nissan Tochigi Plant in Japan.

45.    According to BMW of North America, the vehicle that Offenders 1 and 3 attempted to steal on November 3, 2022, a 2022 BMW X6 with VIN#

21

SENSITIVE
FBIMAIN_001-000290

5UXCY6C07N9K39955, was originally manufactured at the BMW Manufacturing Plant in South Greer, South Carolina.

## L.    Requested Provider Data

46.    In my training and experience, I have learned that PROVIDER is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which the provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

47.    Based on my training and experience, I know that PROVIDER can collect cell-site data about the **SUBJECT PHONES**. I also know that wireless providers such as PROVIDER typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.  I have sent

22

SENSITIVE
FBIMAIN_001-000291

preservation requests to PROVIDER for cell-site information for the **SUBJECT PHONES**.

48.     Based on my training and experience, I know that Verizon Wireless also collects per-call measurement data, which Verizon Wireless also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

49.     Based on my training and experience, I know that wireless providers such as PROVIDER typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as PROVIDER typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONES** user or users and may assist in the identification of co-conspirators and/or victims.

23

SENSITIVE
FBIMAIN_001-000292

50.     I know that T-Mobile will sometimes provide information in Coordinated Universal Time (UTC) instead of Central Standard Time (CST). CST is 5 to 6 hours behind UTC depending on Daylight Savings Time. Due to the UTC to CST conversion and the carjackings occurring in the later hours of the evening, I am requesting information for the period of November 2, 2022 to November 4, 2022 (one day prior to the carjackings and one day after) for all **SUBJECT PHONES**, in order to account for a possible underproduction of data.

## AUTHORIZATION REQUEST

51.     Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

24

SENSITIVE
FBIMAIN_001-000293

52.    I further request that the Court direct PROVIDER to disclose to the government any information described in Section I of the corresponding Attachment B that is within its possession, custody, or control. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Karl Fredriksen*

_____

Karl Fredriksen
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone on August 7, 2024.

_____
HONORABLE YOUNG B. KIM
UNITED STATES MAGISTRATE JUDGE

25

SENSITIVE
FBIMAIN_001-000294

## ATTACHMENT A-2

This warrant applies to records and information associated with the cellular telephone assigned call number (773) 895-7281 ("**SINGLETON PHONE 2** and **3**") that are stored and within the possession of the premises owned, maintained, controlled, or operated by the provider T-Mobile (the "**PROVIDER**"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

SENSITIVE
FBIMAIN_001-000295

## ATTACHMENT B-2

**Particular Things to be Seized**

**I.     Information to be Disclosed by the PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the **PROVIDER**, including any information that has been deleted but is still available to the **PROVIDER** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **PROVIDER** is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from November 2, 2022, through November 4, 2022:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID");

Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of **18 U.S.C. 2119 and 18 U.S.C. § 924(c)(1)(A)** during the period November 2, 2022, through November 4, 2022, including information identified in Section I(a)(i) through (a)(viii). The information to be seized by the government consists of all information relating to:

a. The identity of the subscriber(s) and user(s) of **SINGLETON PHONE 2** and **3**; and

SENSITIVE
FBIMAIN_001-000297

  b. The location of the **SINGLETON PHONE 2** and **3**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

SENSITIVE
FBIMAIN_001-000298

AO 93  (Rev. 11/13) Search and Seizure Warrant

AUSA Margaret A. Steindorf, (312) 353-3540

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**

In the Matter of the Search of:

The information associated with telephone number (773) 895-7281 that is stored at a premises controlled by T-Mobile USA, Inc., further described in Attachment A-2

Case No.  24 M 615

Ref. No. 2023R00370

## SEARCH AND SEIZURE WARRANT

To: Karl Fredriksen and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of New Jersey:

**See Attachment A-2.  The Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**See Attachment B-2**

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>August 21, 2024</u> at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

Date and time issued: <u>August 7, 2024</u> 5:35pm

_____
Judge's signature

City and State: <u>Chicago, Illinois</u>

YOUNG B. KIM, U.S. Chief Magistrate Judge
*Printed name and title*

SENSITIVE
FBIMAIN_001-000216

AO 93 (Rev. 11/13)  Search and Seizure Warrant (Page 2)

## Return

| Case No: | Date and Time Warrant Executed: | Copy of Warrant and Inventory Left With: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SENSITIVE
FBIMAIN_001-000217

## ATTACHMENT A-2

This warrant applies to records and information associated with the cellular telephone assigned call number (773) 895-7281 ("**SINGLETON PHONE 2** and **3**") that are stored and within the possession of the premises owned, maintained, controlled, or operated by the provider T-Mobile (the "**PROVIDER**"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey.

SENSITIVE
FBIMAIN_001-000218

### ATTACHMENT B-2

**Particular Things to be Seized**

**I.     Information to be Disclosed by the PROVIDER**

To the extent that the information described in Attachment A is within the possession, custody, or control of the **PROVIDER**, including any information that has been deleted but is still available to the **PROVIDER** or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the **PROVIDER** is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period from November 2, 2022, through November 4, 2022:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID");

SENSITIVE
FBIMAIN_001-000219

Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of **18 U.S.C. 2119 and 18 U.S.C. § 924(c)(1)(A)** during the period November 2, 2022, through November 4, 2022, including information identified in Section I(a)(i) through (a)(viii). The information to be seized by the government consists of all information relating to:

a. The identity of the subscriber(s) and user(s) of **SINGLETON PHONE 2** and **3**; and

b. The location of the **SINGLETON PHONE 2** and **3**.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.