UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 24-CR-503 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| MARQUELL DAVIS, | ) | |
| RAMONE BRADLEY, and | ) | |
| EDMUND SINGLETON. | ) | |

### DEFENDANT SINGLETON'S REPLY TO
### HIS OMNIBUS PRE-TRIAL MOTION (Dkt. 65)

Now comes Edmund Singleton, by and through counsel, Gabrielle R. Sansonetti,

and in support of his motion to suppress evidence and for a bill of particulars (Dkt. 65),

files this reply to the Government's response (Dkt. 72).

**I.     The 2022 Cell Phones Warrants Were Facially Deficient; Not Subject to the "Good Faith" Exception; and The Evidence Recovered Infected the 2024 Warrants.**

**A. The 2022 Cell Phone Search Warrants Were Facially Deficient Because They Failed to Particularize or Limit Law Enforcement's Search of the Cell Phones.**

The warrants permitting a search of the 2022 cell phones[1] were facially deficient

because they authorized a full search of each cell phone without particularization. The

---

[1] There were three cell phones seized and subject to the search warrants: a purple iPhone, a black iPhone and a white iPhone, which the Government identifies as having belonged to Singleton. Approximately ten documents describe the cell phones by various indicators, such as inventory number, physical description, IMEI number, serial number and Cellebrite search number. The documents and reports include three inventory slips, the state search warrants, photos of the phones, Cellebrite reports, CPD case supplement report explaining the extraction and evidence recovered, FBI 302 chain of custody report, the federal search warrants, execution of the federal search warrants and an FBI 302 disclosing mistakes in

1

justification for a search of the cell phone provided by Detective Siegel was that

"…offenders who separate into different vehicles… use cell phones to communicate

with each other and advance their criminal activities." (Dkt. 65-1 pp. 8, 18, 30) The

underlying probable cause supporting this justification detailed events on November 3,

2022, but did not include any evidence of ongoing criminal activity. Based upon this,

the complaint requested and the warrant permitted the officers to "search for, seize, and

analyze" the following "which have been used in the commission of, which constitutes

evidence of, or which constitutes fruits of the offense of robbery," without any temporal

or data limitation.

1. All records of incoming and outgoing phone calls
2. All memory speed dial and redial features
3. All voice mails
4. All contact and address book information
5. All incoming and outgoing messages and identification information for the senders and recipients including but not limited to text messages SMS messages social-networking messages or alerts
6. All incoming and outgoing e-mails and e-mail addresses
7. Proof of ownership of the cell phone including caller information
8. All documents and files including but not limited to photos video audio TXT PDF DOC HTML files APPS applications
9. All internet history or temporary files
10. All deleted files or data
11. All GPS location information.

---

the warrant. The reports, warrants and other documents, provide inconsistent identifying information. For example, multiple reports describe the black iPhone as belonging to Davis; some reports identify the wrong inventory number associated with a particular cell phone, other reports indicate no evidence was recovered from a phone while the federal search warrant indicates evidence was recovered from a particular phone, the physical description of a phone is associated with an inconsistent extraction identifier. Ultimately, all three phones were searched unlawfully and rectifying these errors is not useful at this stage—unless the court were to parse out its ruling by cell phone. In this event, correctly identifying the evidence obtained from one or another of the cell phones would become relevant.

The Government argues that 1) the warrants only needed to describe the cell phone as the location to be searched and specify the items to be seized (Dkt. 72 at 11) and 2) no further specification was possible (*Id.* at 12).

The Government suggests the warrants were valid because it authorized the place to be search, the cell phone, and eleven particular items to be seized which might relate to robbery. *Id.* at 11. It supports this argument with numerous cases which authorize the search of a home or other physical building. *Id.* at 12-13. Here, the Government suggests the eleven categories particularized the search. Not so. The warrant provided a list of eleven areas of the cell phone to search, seize and analyze, but those eleven areas amounted to the entire cell phone. It is as if the warrant authorized the search of the phone by its outward physical description, i.e. "light purple iPhone," and then again authorized the search of the phone by its inward physical description, i.e. *all* records, *all* memory, *all* voice mails, *all* contacts, *all* incoming and outgoing messages, *all* emails, *all* documents and files including app data, *all* internet history, *all* temporary files, *all* deleted files or data, *all* GPS location. Put another way, the warrant authorized the search of the home and then simply listed each room in the house—without any particularization as to the items to be searched and seized. There is no better example of a generalized warrant. *Andersen v. Maryland,* 427 U.S. 463, 480 (1976) ("The problem [of the general warrant] is not that of intrusion *per se,* but of a general

exploratory rummaging in a person's belongings…[The Fourth Amendment addressed the problem] by requiring a 'particular description' of things to be seized.")

The Government also fails to offer any efforts undertaken by law enforcement to limit the search to its justification. Instead of explaining the means by which law enforcement tailored its search, or how efforts were made *not* to search all areas of the cell phone, the Government simply states that law enforcement was unable to conduct narrower search. *Id.* at 12-13 ("more detailed particularity about evidentiary items on the phones was impossible;" "The police did not know where on the phone the evidence would be located or the form that evidence would take;" "Law enforcement could not limit its search by time because law enforcement did not know how long planning and preparation of the crime took.").

The Government's claim that no further specification was possible should not be given any weight. The Government undersells current technology. Technology today provides numerous techniques which would permit a circumscribed search when extracting and searching an individual's cell phone. *See, Episode 23: I BEG TO DFIR – Data Extractions Explained: FFS, AFU, BFU, Advanced Logical - Digital Forensics Webinar - Cellebrite.* To the extent the court doubts this, Singleton asks for an evidentiary hearing. Law enforcement had every ability to narrow its search to suspects' names, aliases, code names; by phone numbers; by text messages to and from specific people or within a specific time frame, chats in messaging apps within a specific time frame, calls to and

from specific contacts and/or phone numbers; emails between specific individuals; GPS data by time period; and/or an overall search of the phone by keywords. None of these considerations were employed in the search.

Moreover, the Government's caselaw is outdated and inapplicable. All the cases cited by the Government inform that where it is possible to narrow and particularization a search – that should be done. *Id.* at 12-13. Singelton agrees with and relies on this proposition. But how the search is narrowed depends on the place to be search and the justification for the search. The Government's cases involve the search of a home or physical structure and predate *Riley v. California,* 573 U.S. 373 (2014), which made clear that "…a cell phone search would typically expose to the government far more than the most exhaustive search of a house;" suggesting that cell phone searches should undergo a heightened consideration due to the heightened privacy interest at stake. *See, United States v. Somers,* 950 F.2d 1279, 1285 (7th Cir. 1991) (home); *United States v. Reed,* 726 F.2d 339, 342 (7th Cir. 1984) (home); *United States v. Jones,* 54 F.3d 1285, 1290 (7th Cir. 1995) (home); *United States v. Hall,* 142 F.3d 988, 996 (7th Cir. 1998) (computer search authorizing search for child pornography); *United States v. Shoffner,* 826 F.2d 619, 631 (7th Cir. 1987) (warehouse for stolen vehicles); *United States v. Bentley,* 825 F.2d 1104, 1109-10 (7th Cir. 1986) (office); *United States v. Peters,* 791 F.2d 1270, 1278-79 (7th Cir. 1986) (home); *United States v. Vanichromanee,* 742 F.2d 340, 347 (7th Cir. 1984) (attaché case); *United States v. Malik,* 680 F.2d 1162, 1165 (7th Cir. 1982) (apartment); *United States v.*

5

*Strand,* 761 F.2d 449, 452-53 (8th Cir. 1985) (apartment); *United States v. Blum,* 753 F.2d 999, 1000 (11th Cir. 1985) (warehouse); *Untied States v. Gomez-Soto,* 723 F.2d 649, 652-53 (9th Cir. 1984) (home).

The cell phone case relied on by the Government ultimately supports Singleton's position. In *United States v. Bishop,* 910 F.3d 335 (7th Cir. 2018), the court authorized a warrant which sought a search of the defendant's cell phone for evidence of drug dealing. *Id.* at 336. The places to be searched in the phone were "phones, videos, and/or any other digital *files,* including removable memory cards." *Id.* The court found the warrant to be sufficiently particularized. First, even the warrant in *Bishop* was more narrowly tailored than the warrant here. Here, in addition to authorizing a search of *all* files and data, the warrants also authorized a search of all internet history or temporary files, all deleted files and data and all GPS location information, without any temporal limitation. *See,* Dkt. 65-1, p. 2, 13, 24 (item #s 9-11), But, second, *Bishop* was issued in 2018, seven years ago, when technology and the ability to narrow a cell phone search was likely far more limited. And, most importantly, the Seventh Circuit in *Bishop* reiterated the principle under which Singleton's fourth amendment rights were violated in this case: "[a] warrant may be thought 'too general' only if some more-specific alternative would have done better and protecting privacy while still permitting legitimate investigation." *citing United States v. Vitek Supply Corp.,* 144 F.3d 476, 482 (7th Cir. 1998); *United States v. Bentley,* 825 F.2d 1104, 1110 (7th Cir. 1987); *also see, Burns v.*

*United States*, 235 A.3d 758 (DC 2020) (warrant authorizing search of defendant's cell phone for "who possessed or used the device, the subscriber and owners information, the cell phone device phone number, incoming and outgoing calls, contact list, all existing voice mail and text messages, and videos, photographs and tweets" was akin to a search of the entire cell phone and required suppression where warrant could have been tailored to communications between the alleged murderer and the victim); *see also Socha v. City of Joliet, Illinois*, 107 F.4th 700, 709-10 (7th Cir. 2024) ("Given the stakes of cell phone searches… we remind police of their obligation to be specific and explain why there is probable cause to search every part of a cell phone they seek to search"). Here, there is no question a more specific alternative, tailored to the justification supported by probable cause, would have protected the privacy everyone carries in their personal cell phones while still permitting legitimate investigation.

Finally, the Government also pleads with the court that if the warrant is deemed facially deficient then items seized which would have otherwise lawfully been supported by the warrant should survive. *Id.* at 17. The evidence which would have otherwise been supported by the justification provided in the complaint, is any communications between Singelton, Bradley and Davis at or around November 3, 2025. No such evidence was recovered. The 2022 warrants were facially defective; they were overbroad and that resulted in a search which violated Singelton's fourth amendment rights. The evidence should be suppressed.

7

### B. The Good Faith Exception Does Not Apply to Facially Defective Warrants.

The Government asks the Court to apply the good faith exception to save the unlawfully obtained evidence. Dkt. 72 at 18. The Government correctly cites the legal proposition that the good faith exception does not apply if "the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid." *Id. citing United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) ("Rees does not argue that the warrants lacked adequate particularity, rendering them facially deficient"); *see also, United States v. Glover,* 755 F.3d 811, 879 (7th Cir. 2014) ("…when the warrant is facially deficient in that it fails to specify the place to search or the items to seize" it cannot be saved). However, the Government does not provide any reason why this legal principle should not be followed. It seems to suggest it was the state's attorney and/or magistrate's fault for approving the warrants—but that does not separate this facially defective warrant from any other. Dkt. 72 at 20 *citing Illinois v. Krull,* 480 U.S. 340 (1987) (good faith exception applies when officer relies on statutory authority). But law enforcement has been on notice to the special requirements regarding a cell phone search since *Riley v. California* was issued in 2014 (more than ten years ago) and Seventh Circuit precedent has noted that law enforcement should beware that cell phone searches should be treated with great care—or risk suppression. *See, Socha,* 107 F.4th at 709-10 (7th Cir. 2024). Ultimately, the Government simply circles back to its argument

8

that the warrants were sufficiently particularized, because it recognizes that the good faith exception does *not* apply here. Dkt. 72 at 20.

### C. The 2024 Warrants Relied Entirely on the Unlawfully Obtained Evidence.

The 2024 warrants would not have been granted absent the unlawfully obtained evidence. Unlawfully obtained evidence cannot be capitalized on to secure other evidence. *United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). The 2022 search of the cell phones produced telephone numbers and subscriber information related to the telephones. The 2024 federal warrants utilized the telephone numbers and subscriber information to seek cell tower evidence from T-Mobile connected not the physical phone, but to the telephone number. (Dkt. 65-2) Without the telephone numbers, there would have been no warrant issued because there would have been no place to search. The Government argues that pursuant to the independent source doctrine there was sufficient probable cause to support the 2024 warrants, absent the unlawfully obtained evidence. (Dkt. 72 at 21 *citing United States v. Huskisson*, 926 F.3d 369, 374 (7th Cir. 2019)) The Government attempts to explain that it would have obtained Singelton's phone number through the co-defendant's cell phones (whose 2022 warrants mirrored Singelton's and were equally as unlawful). The Government does not claim that Singleton's cell phone number was saved under their contacts by his name, but Bradley and Davis saved a number under "Rell" and "Grell" or "G Rell." (Dkt. 72 at 22-23) The

9

Government speculates that because the white cell phone had a physical card in the name of "Jarell Singelton" on the back and the words, "$GrellDaMan" on the front—it would have connected the phone numbers to Singelton. *Id.* In addition, a You Tube video in which Singleton appeared as well as at least twenty other individuals, named the video "Big G Rell – Toma (Official Music Video)." Under the Government's theory, law enforcement would have recognized "Rell" and "Grell" or "G Rell" in the phones and would suspected that it was connected to Jarrell Singelton, who was actually Edmund Singelton, and would also have searched You Tube for Big G Rell to find a video which included Edmund Singelton and approximately twenty others, and that then would have supplies sufficient probable cause that the telephone numbers saved in Davis and Bradley's phone were involved in the car jackings (despite no communications related to the carjackings) and/or connected to Singelton. The Government suggests a magistrate would have found this sufficient to order a warrant to T-Mobile for the telephone numbers. The Government's theory is just that – a theory. Its explanation involves significant speculation and would not have been sufficient for a magistrate to authorize the search of someone's telephone records and location data based on this theory of identification.

In addition, the affidavit for a warrant included significant additional evidence obtained from the 2022 search of the cell phones. Specifically, the affidavit included an

entire section which detailed the evidence recovered from the 2022 search of the cell phones. Dkt. 65-2, pp. 13-15. Absent this information, the above claim is even weaker.

For the foregoing reasons, the 2022 cell phone searches were facially defective, in that they were overbroad, any evidence seized as a result should be suppressed. The good faith exception cannot save evidence obtained by way of a facially defective warrant. And because the 2024 warrants would not have issued without reliance on the unlawfully seized evidence from the 2022 warrants, evidence obtained from the 2024 warrants should be suppressed as well.

## II.      The Indictment is Insufficient and Should be Dismissed—Absent a Bill of Particular

Singleton and Davis are charged in count three with being in possession of "a firearm" on November 3, 2022 during and in relation to a crime of violence, namely carjacking, in violation of Title 18, United States Code, Section 924(c)(1)(A).  Dkt. 1, p. 6. Davis is alleged to have been involved in both carjackings. The Government confirms that three firearms were recovered during the investigation, none from Singleton's person. (Dkt. 72 at 5) There are two carjackings with two videos and there are firearms depicted in each video. The indictment and the discovery fail to identify which firearm Singleton is accused of having possessed. Instead of agreeing to provide a bill of particulars the Government points to the first carjacking occurring at 7:00 p.m. and provides a picture of two individuals (neither who are Singelton) with what appear to be firearms in their hands. The indictment does not charge multiple firearms and does

11

not identify from the three firearms recovered which Singelton is alleged to have possessed. This information is insufficient to permit Singelton to defend his case or to protect him from double jeopardy. The Government should be required to provide a bill of particulars (or the grand jury transcripts) regarding which firearm the grand jury found he possessed.

The Government relies on *Pinkerton* liability to suggest that it need not identify which of the firearms Singelton is alleged to have possessed in count three in the indictment. (Dkt. 72, p. 25) However, it provides no authority for the proposition that *Pinkerton* liability somehow relieves the Government of its burden to sufficiently plead facts in the indictment for the count at issue, so as to ensure the grand jury's approval of the charges and to protect the defendant against double jeopardy. Indeed, counsel has found none. The Government should be ordered to tell Singelton which firearm the grand jury found he possessed, even by way of *Pinkerton* liability.

WHEREFORE, Defendant Singleton moves for the following:

(1) To Suppress Evidence Derived From a General Search of Singleton's Cell Phones;

(2) For a Bill of Particulars as to Count Three.

*/s/ Gabrielle R. Sansonetti*

12

Gabrielle R. Sansonetti
LEINENWEBER, DAFFADA & SANSONETTI
120 N. LaSalle Street Suite 2000
Chicago, Illinois 60602
(773) 716-6117 (cell)
gabrielle@ilesq.com

*Counsel for Defendant Singleton*