UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

EDMUND SINGLETON,
RAMONE BRADLEY, and
MARQUELL DAVIS

No. 24 CR 503

Judge Matthew F. Kennelly

## GOVERNMENT'S *SANTIAGO* PROFFER SUPPORTING THE ADMISSIBILITY OF COCONSPIRATOR STATEMENTS

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, submits this proffer, pursuant to Federal Rule of Evidence 801(d)(2)(E) and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), of the government's evidence supporting the admission of coconspirator statements at trial, to the extent any are offered on that basis.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:   *s/ Elie Zenner*
ELIE ZENNER
SIMAR KHERA
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
312-353-5300

**TABLE OF CONTENTS**

Table of Authorities ...............................................................................................ii

I.     Introduction.................................................................................................. 1

II.    Governing Law ............................................................................................ 2

    A.    Use of the *Santiago* Proffer ............................................................. 2

    B.    Admissibility of Coconspirator Statements ................................... 3

        1.    Existence of and Membership in the Conspiracy................................... 3

        2.    The "In Furtherance of" Requirement ....................................... 6

    C.    Absence of Confrontation Clause Issues with Coconspirator Statements .. 8

    D.    Alternative Bases for Admissibility .............................................. 9

III.    Evidence Demonstrating the Existence of the Charged Conspiracy and Defendants' Participation in the Conspiracy ...................................... 10

    A.    Victim Testimony and Surveillance Footage.............................. 11

        1.    Carjacking of Victim A ........................................................ 11

        2.    Attempted Carjacking of Victim B ....................................... 13

    B.    Law Enforcement Officer Testimony and Body Worn Camera Footage ... 15

    C.    Cellular Tower and Phone Location Data ................................... 16

    D.    DNA and Fingerprint Evidence .................................................. 17

    E.    Evidence from Defendants' Phones............................................. 18

IV.    Coconspirator Statements ...................................................................... 21

V.    Conclusion ............................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Beeson v. United States* 90 F.2d 720 (7th Cir. 1937) ....................................................... 8

*Bourjaily v. United States* 483 U.S. 171 (1987) ................................................... 3, 4, 10

*Crawford v. Washington* 541 U.S. 36 (2004) ......................................................... 8, 9

*Garlington v. O'Leary* 879 F.2d 277 (7th Cir. 1989) ...................................................... 7

*Salinas v. United States* 522 U.S. 52 (1997) ................................................................. 4

*United States v. Alviar* 573 F.3d 526 (7th Cir. 2009) ........................................... 1, 6, 7

*United States v. Ashman* 979 F.2d 469 (7th Cir. 1992) .................................................. 8

*United States v. Bey* 725 F.3d 643 (7th Cir. 2013) ...................................................... 3

*United States v. Bolivar* 532 F.3d 599 (7th Cir. 2008) .................................................. 5

*United States v. Buishas* 791 F.2d 1310 (7th Cir. 1986) ............................................... 7

*United States v. Coe* 718 F.2d 830 (7th Cir. 1983) ....................................................... 4

*United States v. Cox* 923 F.2d 519 (7th Cir. 1991) .................................................... 2, 6

*United States v. Cozzo* No. 02 CR 400, 2004 WL 1151630 (N.D. Ill. 2004) ................. 6

*United States v. Cruz-Rea* 626 F.3d 929 (7th Cir. 2010) .............................................. 6

*United States v. Curtis* 324 F.3d 501 (7th Cir. 2003) ................................................... 5

*United States v. Gajo* 290 F.3d 922 (7th Cir. 2002) .................................................. 6, 7

*United States v. Gil* 604 F.2d 546 (7th Cir. 1979) ....................................................... 4

*United States v. Ginsburg* 773 F.2d 798 (7th Cir. 1985) .............................................. 9

*United States v. Guyton* 36 F.3d 655 (7th Cir. 1994) ................................................. 10

*United States v. Handlin* 366 F.3d 584 (7th Cir. 2004) ............................................... 5

*United States v. Hargrove* 508 F.3d 445 (7th Cir. 2007) .............................................. 8

*United States v. Harris* 585 F.3d 394 (7th Cir. 2009) .............................................. 1, 3

ii

*United States v. Herrera-Medina* 853 F.2d 564 (7th Cir. 1988) ................................. 10

*United States v. Irorere* 228 F.3d 816 (7th Cir. 2000) ..................................................... 4

*United States v. Johnson* 200 F.3d 529 (7th Cir. 2000) ............................................ 6, 7

*United States v. Johnson* 592 F.3d 749 (7th Cir. 2010) ................................................. 4

*United States v. Johnson* No. 08 CR 466, 2011 WL 809194 (N.D. Ill. 2011) ............. 22

*United States v. Jones* 275 F.3d 648 (7th Cir. 2001) ................................................ 4, 5

*United States v. Kaden* 819 F.2d 813 (7th Cir. 1987) ..................................................... 7

*United States v. Lindemann* 85 F.3d 1232 (7th Cir. 1996) ........................................... 8

*United States v. Longstreet* 567 F.3d 911 (7th Cir. 2009) ........................................ 4, 5

*United States v. Maloney* 71 F.3d 645 (7th Cir. 1995) .............................................. 5, 7

*United States v. McClellan* 165 F.3d 535 (7th Cir. 1999) ........................................... 22

*United States v. Molinaro* 877 F.2d 1341 (7th Cir. 1989) ............................................. 7

*United States v. Molt* 772 F.2d 366 (7th Cir. 1985) ........................................................ 7

*United States v. Monus* 128 F.3d 376 (6th Cir. 1997) ................................................... 6

*United States v. Nicksion* 628 F.3d 368 (7th Cir. 2010) ............................................... 8

*United States v. Noble* 754 F.2d 1324 (7th Cir. 1985) ................................................... 5

*United States v. Pallais* 921 F.2d 684 (7th Cir. 1990) ................................................... 7

*United States v. Potts* 840 F.2d 368 (7th Cir. 1987) ...................................................... 9

*United States v. Prieto* 549 F.3d 513 (7th Cir. 2008) ..................................................... 8

*United States v. Rea* 621 F.3d 595 (7th Cir. 2010) ........................................................ 7

*United States v. Rivera* 136 F. App'x 925 (7th Cir. 2005) ............................................. 8

*United States v. Santiago* 582 F.2d 1128 (7th Cir. 1978) ................................... *passim*

*United States v. Shoffner* 826 F.2d 619 (7th Cir. 1987) ................................................. 7

*United States v. Sophie* 900 F.2d 1064 (7th Cir. 1990) ............................................. 5, 7

iii

*United States v. Tuchow* 768 F.2d 855 (7th Cir. 1985) ........................................... 9, 10

*United States v. Van Daal Wyk* 840 F.2d 494 (7th Cir. 1988)................................ 7, 10

*United States v. Westmoreland* 312 F.3d 302 (7th Cir. 2002) ...................................... 3

*United States v. Volpendesto* 746 F.3d 273 (7th Cir. 2014).......................................... 9

iv

## I. Introduction

Defendants Marquell Davis, Ramone Bradley, and Edmund Singleton are charged with conspiracy to commit carjacking, in violation of Title 18, United States Code, Sections 2119 and 371 (Count One). R. 1. Davis and Singleton are also charged with the carjacking of Victim A, in violation of Title 18, United States Code, Section 2119 (Count Two) and brandishing a firearm in furtherance of that carjacking, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Count Three). All three defendants are charged with the carjacking of Victim B, in violation of Title 18, United States Code, Sections 2119 (Count Four). Finally, Singleton is also charged with being a felon in possession of a firearm, namely a loaded Glock Model 19 9mm pistol bearing serial number BLR277, one of the firearms used in the carjackings, in violation of Title 18, United States Code, Section 922(g)(1) (Count Five). *Id.* Co-defendant Davis pleaded guilty on June 5, 2025, to Counts Two through Four. R. 84. The government will dismiss Count One as to Davis at his sentencing.

In this submission, the government describes the law governing coconspirator statements, outlines some of its evidence establishing the charged conspiracy, and sets forth some of the coconspirator statements for which a pretrial ruling by the Court is requested, in accordance with *United States v. Santiago*, 582 F.2d 1128, 1130-31 (7th Cir. 1978), and established practice in this Circuit. *See United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009); *United States v. Harris,* 585 F.3d 394, 398, 400 (7th Cir. 2009).

This submission does not detail all of the government's evidence that would establish the existence of the conspiracy or all of the coconspirator statements that

were made in furtherance of the charged conspiracy. Rather, this submission highlights for the Court certain of the government's evidence sufficient to establish the existence of the conspiracy described in Count One of the indictment and the participation of the defendant coconspirators. As a result, this submission does not list all of the government's witnesses, nor does it provide all of the evidence that will be presented by identified witnesses. Finally, by presenting statements attributed to particular witnesses, the government is not committing to call each of the witnesses for each of the statements attributed.

## II.    Governing Law

### A.    Use of the *Santiago* Proffer

In *Santiago,* the Seventh Circuit held that, under FRE 104(a), the trial judge is responsible for making the preliminary determination of the admissibility of coconspirator statements and retains flexibility in how that determination is made. 582 F.2d at 1131. The court recognized "that the trial judge retains the option of conditionally admitting the coconspirator declaration evidence before the conspiracy has been independently established, but subject to the subsequent fulfillment of that critical condition." *Id.* The Seventh Circuit later outlined the various options a trial judge has in fulfilling its gatekeeping obligation under Rule 104(a), one of which entails the government providing a pretrial "preview" of the evidence of the conspiracy, *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991), while another would entail the trial court "conditionally admit[ting] the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so proving being a possible mistrial)." *Id.*; s*ee also United States*

2

*v. Bey*, 725 F.3d 643, 647 (7th Cir. 2013) (noting that the purpose of a *Santiago* proffer is to "help[] streamline trials"). Accordingly, while the government submits that its proffer, as set forth below, is more than sufficient to support the conditional admission of any coconspirator statements, the Court retains maximum flexibility to make its admissibility determinations after seeing and hearing all the evidence.

### B.  Admissibility of Coconspirator Statements

Rule 801(d)(2)(E) provides that a "statement" is not hearsay if it "is offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Admission of such coconspirator statements against a defendant is proper where the government establishes by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the person making the cited statements were members of the particular conspiracy; and (3) the statements were made during the course and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Westmoreland,* 312 F.3d 302, 309 (7th Cir. 2002).

### 1.  Existence of and Membership in the Conspiracy

While the court may consider the proffered coconspirator statements themselves as evidence of both the existence of a conspiracy and a defendant's participation in it, *Bourjaily*, 483 U.S. at 178, 180, there must also be some supporting evidence or corroborating facts. *United States v. Harris*, 585 F.3d 394, 398-99 (7th Cir. 2009). The evidence showing the existence of a conspiracy and a defendant's membership in it may be either direct or circumstantial. *See United States v.*

*Johnson,* 592 F.3d 749, 754-55 (7th Cir. 2010); *United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000).[1]

There is no requirement that the government establish all elements of "conspiracy," such as a meeting of the minds and an overt act. *United States v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983); *United States v. Gil*, 604 F.2d 546, 548-50 (7th Cir. 1979). The government need only establish the existence of a joint venture for an illegal purpose (or for a legal purpose using illegal means) and participation in the joint venture by the defendant and the maker of the statement at issue (as well as that the statement was in furtherance of the venture). "[I]t makes no difference whether the declarant or any other 'partner in crime' could actually be tried, convicted and punished for the crime of conspiracy." *Gil*, 604 F.2d at 549-550.

While there is a distinction between conspiracy law and admissibility under Rule 801(d)(2)(E), certain principles of general conspiracy law are relevant to Rule 801(d)(2)(E) inquiries. For instance, "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997); *see also United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009); *United States v. Jones*, 275 F.3d 648, 652 (7th Cir. 2001). The government need not prove that a defendant knew each and every detail

---

[1] The coconspirator statement rule does not apply when a statement is not being offered for the truth of the matter asserted, and thus does not constitute "hearsay" as defined by Rule 801(c). Accordingly, statements by alleged coconspirators may be admitted against a defendant, without establishing the *Bourjaily* factual predicates set forth above, when such statements are offered to show, for instance, the existence, the illegality, or the nature or scope of the charged conspiracy. *See* discussion of alternative bases of admissibility, *infra* Section II.D. at 11-12.

4

of the conspiracy or played more than a minor role in the conspiracy. *United States v. Curtis*, 324 F.3d 501, 506 (7th Cir. 2003). Further, a defendant joins a criminal conspiracy if he agrees with another person to one or more of the common objectives of the conspiracy; it is immaterial whether the defendant knows, has met, or has agreed with every coconspirator or schemer. *Longstreet*, 567 F.3d at 919; *Jones*, 275 F.3d at 652.

A defendant (or other declarant) may be found to have participated in a conspiracy even if he joined or terminated his relationship with other conspirators at different times than another defendant or coconspirator. *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir. 1985); *see United States v. Handlin*, 366 F.3d 584, 590 (7th Cir. 2004) ("[I]t is irrelevant when the defendant joined the conspiracy, so long as he joined it at some point."). A coconspirator's statement is admissible against conspirators who join the conspiracy after the statement is made. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990). A conspirator who has become inactive or less active in the conspiracy nevertheless is liable for his coconspirators' further statements unless he openly disavows the conspiracy or reports it to the police. *See United States v. Maloney*, 71 F.3d 645, 654–55 (7th Cir. 1995).

The government is not required to prove the identity of the declarant of the coconspirator statement; nor must the declarant's identity be confirmed in the statement itself. *See United States v. Bolivar*, 532 F.3d 599, 604 (7th Cir. 2008). Rather, the government need only prove (from the statement, the context and/or other evidence) that the declarant was a coconspirator. *Id.*

### 2. The "In Furtherance of" Requirement

In determining whether a statement was made "in furtherance" of the conspiracy, courts evaluate the statement in the context in which it was made and look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *See United States v. Cruz-Rea,* 626 F.3d 929, 937 (7th Cir. 2010); *United States v. Johnson*, 200 F.3d 529, 533 (7th Cir. 2000). Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be in furtherance of the conspiracy. *Cruz-Rea*, 626 F.3d at 937–38. The "coconspirator's statement need not have been exclusively, or even primarily, made to further the conspiracy" in order to be admissible under the coconspirator exception. *Id.* at 937 (internal quotations and citations omitted).

A wide range of statements satisfy the "in furtherance" requirement. *See United States v. Cozzo*, No. 02 CR 400, 2004 WL 1151630, at *2–3 (N.D. Ill. 2004) (collecting cases). In general, a statement that is "part of the information flow between conspirators intended to help each perform his role satisf[ies] the in furtherance requirement." *Alviar*, 573 F.3d at 545 (internal quotations and citations omitted); *see also United States v. Gajo*, 290 F.3d 922, 929 (7th Cir. 2002). These include statements made:

    a.    to conduct or help to conduct the business of the scheme and accomplish its goals, *Cox*, 923 F.2d at 527; *see also Johnson*, 200 F.3d at 533;

    b.    to prompt the listener to act in a manner that facilitates the carrying out of the conspiracy, *see United States v. Monus*, 128 F.3d 376, 392-93 (6th Cir. 1997);

6

c.    to identify other members of the conspiracy and their roles, *Alviar,* 573 F.3d at 545;

d.    to plan or to review a coconspirator's exploits, *United States v. Molt*, 772 F.2d 366, 369 (7th Cir. 1985);

e.    as an assurance that a coconspirator can be trusted to perform his role, *Sophie*, 900 F.2d at 1073-74; *United States v. Buishas*, 791 F.2d 1310, 1315 (7th Cir. 1986);

f.    to inform and update others about the current status of the conspiracy or a conspiracy's progress (including both failures and successes), *United States v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010); *Alviar*, 573 F.3d at 545; *United States v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990) ("The exchange of information is the lifeblood of a conspiracy . . ." including "commenting on a failed operation" and identification of a coconspirator by nickname.);

g.    to control damage to an ongoing conspiracy, *Johnson,* 200 F.3d at 533; *United States v. Molinaro,* 877 F.2d 1341, 1343-45 (7th Cir. 1989) (admitting statements between conspirators complaining about a third conspirator's handling of delivery and payment for narcotics)*; United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir. 1988);

h.    to conceal a conspiracy where, as here, ongoing concealment is a purpose of the conspiracy, *Gajo*, 290 F.3d at 928-29; *United States v. Kaden*, 819 F.2d 813, 820 (7th Cir. 1987); *see also Maloney*, 71 F.3d at 659-60;

i.    to reassure or calm the listener regarding the progress or stability of the scheme, *Sophie*, 900 F.2d at 1073 (admitting statements describing a defendant's past drug deals); *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989) (admitting the statement to defendant "We're going to take care of him," which arguably encouraged defendant to perform his task);

j.    to recruit potential members of the conspiracy, *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir. 1987);

k.     to report a conspirator's status and receive assurances of assistance from coconspirators, *United States v. Prieto*, 549 F.3d 513, 524 (7th Cir. 2008); and

l.     "describing the purpose, method or criminality of the conspiracy," *United States v. Ashman*, 979 F.2d 469, 489 (7th Cir. 1992).

Finally, any statement made by a conspirator during and in furtherance of a conspiracy is admissible against all coconspirators. *Beeson v. United States*, 90 F.2d 720, 722 (7th Cir. 1937); *United States v. Lindemann*, 85 F.3d 1232, 1238 (7th Cir. 1996); *see also United States v. Rivera,* 136 F. App'x 925, 926 (7th Cir. 2005) ("Whether any other conspirator heard (or, in this instance, saw) that statement is irrelevant; agency, not knowledge, is the theory of admissibility.").

### C.    Absence of Confrontation Clause Issues with Coconspirator Statements

Only "testimonial" statements implicate the Confrontation Clause, *Crawford v. Washington,* 541 U.S. 36 (2004), and a statement made in furtherance of a conspiracy is, by definition, not a testimonial statement. *United States v. Nicksion*, 628 F.3d 368, 374 (7th Cir. 2010) (rejecting confrontation clause claim as to introduction of coconspirator statements because such statements are not testimonial); *United States v. Hargrove*, 508 F.3d 445, 448 (7th Cir. 2007) (coconspirator statements are neither hearsay nor testimonial).

Further, even if a hearsay statement does not qualify for admission under Rule 801(d)(2)(E), or any other hearsay exception, that fact alone would not create a Confrontation Clause issue because, again, only testimonial statements implicate the right to confront a witness. *Crawford,* 541 U.S. at 68 ("Where nontestimonial hearsay

8

is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as . . . would an approach that exempted such statements from Confrontation Clause scrutiny altogether."); *see also Volpendesto*, 746 F.3d at 289 ("[a] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes.").

### D. Alternative Bases for Admissibility

Statements made during the course of a conspiracy may be admissible independent of Rule 801(d)(2)(E), even if they are also admissible under Rule 801(d)(2)(E).

A defendant's own statements are not hearsay by definition and, if otherwise relevant, are admissible pursuant to Rule 801(d)(2)(A). Moreover, such statements are relevant to establishing the factual predicates for the admission of coconspirator statements against him. *See United States v. Potts*, 840 F.2d 368, 371-72 (7th Cir. 1987); *United States v. Ginsburg*, 773 F.2d 798, 802 (7th Cir. 1985). Additionally, of course, a coconspirator statement may also independently be admissible as an exception to hearsay under Rule 803, most notably as a statement of the declarant's plans or intentions or a statement explaining an event immediately after the declarant perceived it. F.R.E. 803(1) and (3).

Moreover, a statement that is not being offered for the truth of the matter asserted, including so-called verbal "acts" or other comments that are not subject to verification, such as directions, orders, suggestions, or questions, do not constitute hearsay. *See United States v. Tuchow*, 768 F.2d 855, 869 n.18 (7th Cir. 1985).

9

Similarly, statements offered to show the existence, the illegality, or the nature or scope of the charged scheme or conspiracy are not offered for their truth and may thus be admitted against a defendant without establishing the *Bourjaily* factual predicates. *See United States v. Guyton*, 36 F.3d 655, 658 (7th Cir. 1994) (statement that defendant was out of cocaine was not hearsay because it was not offered for its truth but as evidence of membership in conspiracy); *United States v. Herrera-Medina*, 853 F.2d 564, 565-66 (7th Cir. 1988) ("war stories" about the drug trade were not offered for the truth); *United States v. Van Daal Wyk*, 840 F.2d 494, 497-98 (7th Cir. 1988) (statements had non-hearsay value in establishing knowledge of and membership in conspiracy); *Tuchow*, 768 F.2d at 867-69 (pre-conspiracy statements admissible to set forth scope of the anticipated conspiratorial scheme).

### III. Evidence Demonstrating the Existence of the Charged Conspiracy and Defendants' Participation in the Conspiracy

At trial, the government's evidence will establish that on or about November 3, 2022, defendants conspired with each other to commit carjackings, namely the carjackings of Victim A and Victim B.

As set forth below, the evidence that proves the existence of this conspiracy is very strong. Specifically, the government's evidence at trial will include, among other things: (1) the testimony of Victim A, (2) the testimony of Victim B; (3) surveillance footage of the carjackings; (4) testimony and body worn camera footage from law enforcement officers, including officers who will testify about arresting the defendants after they fled from the vehicle they used to commit the carjackings and about the recovery of physical evidence at the time of the defendants' arrest; (5)

10

cellular location data and cellular tower information showing that the defendant coconspirators were traveling together at locations relevant to the carjackings before, during, and after the carjackings on November 3, 2022; (6) DNA and fingerprint evidence; and (7) photos, searches, call records, and messages from defendants' phones.

Below, the government summarizes some of the evidence that it will present regarding the existence of the charged conspiracy. Such evidence clearly establishes the threshold requirement for admitting coconspirator statements during the trial in this case.

### A.      Victim Testimony and Surveillance Footage

At trial, the government expects that Jessica Alvarez will testify that her Jeep SRT was stolen from a parking lot around October 19, 2022. Victims A and B will testify regarding the events of November 3, 2022.

### 1.      Carjacking of Victim A

At trial, the government expects that Victim A will testify consistent with the following:

On the evening of November 3, 2022, at about 6:55 p.m., Victim A was driving a black 2015 Infiniti Q50 with Illinois license plate BF57200. Victim A was pumping gas into the Infiniti at a Citgo gas station at 100th and South Michigan Avenue, when Victim A was approached behind by a male carjacker. Victim A turned around and saw that the carjacker was pointing gun directly at Victim A's face. While pointing the gun at Victim A, the carjacker said words to the effect of, "keys, keys, give me the keys." The carjacker came near Victim A with the gun, and Victim A collapsed to the

11

ground. While pointing the gun at Victim A, the carjacker removed Victim A's cell phone and Infiniti key fob from his pocket. While, the first carjacker was taking the gas pump out of the Infiniti, a second carjacker got into the driver's side of the Infiniti. The two carjackers then drove off in Victim A's Infiniti with the first carjacker pointing a gun at Victim A out of the passenger window.

Surveillance cameras captured the carjacking, and the footage will corroborate Victim A's testimony. Surveillance shows a gray Jeep SRT with a damaged front passenger door, driving past the Citgo gas station and then making a U-turn before parking a few feet away from the Infiniti. Two carjackers with guns and masks then get out of the rear passenger door, point guns at Victim A, and get in the Infiniti and drive off following behind the Jeep SRT. In addition to the two carjackers that exited the Jeep SRT and pointed guns at Victim A, surveillance shows another masked man in the front passenger seat in addition to the person driving the Jeep SRT, who is not visible. Below are screenshots of the carjacking:

12

 

### 2.    Attempted Carjacking of Victim B

At trial, the government expects that Victim B will testify consistent with the following:

On November 3, 2022, at about 9:30 p.m., Victim B parked his 2022 BMW X6 at a gas station near 31st Street and South Michigan. Victim B finished pumping gas and started walking toward his driver's side door, when two masked carjackers exited a gray SUV and pointed guns at him. Victim B collapsed to the ground and one of the carjackers took his car keys from his hand. A carjacker took Victim B's wallet from his pocket while pointing a gun at Victim B. The two carjackers got into the BMW, but they could not drive it because it had special handicap driving controls to accommodate Victim B, who had polio as a child and has braces on both his legs.

13

Surveillance cameras captured the carjacking, and the footage will corroborate Victim B's testimony. Surveillance shows a gray Jeep SRT with a damaged front passenger door parking right next to Victim B's BMW. One masked carjacker got out of the rear passenger side door and pointed a gun at Victim B before stumbling. A second masked carjacker got out of the driver-side rear passenger door and pointed a gun at Victim B before taking items from Victim B as Victim B fell to the ground. The surveillance footage then shows the two carjackers enter the BMW and attempt to drive it before exiting and returning to the Jeep SRT. As captured in the screenshots below the Jeep SRT has matching damage to the SRT used in the first carjacking and the carjacker in all black is wearing gray and black Nike shoes that match those worn by the carjacker in the first carjacking.





### B. Law Enforcement Officer Testimony and Body Worn Camera Footage

Several law enforcement officers will testify at trial about the defendants' arrest. In summary, officers will testify that they observed a damaged Jeep SRT that matched the appearance of that used in the carjackings described above, they tracked the Jeep SRT starting at about 10:30 p.m. using a helicopter as the Jeep SRT traveled around the south of side of Chicago between 75th Street and 95th Street, they observed the vehicle stopped near 94th and Woodlawn at about 10:50 p.m. and three individuals fled, and minutes later, at about 10:55 p.m., they arrested the co-conspirator defendants near where the Jeep SRT was abandoned. Officers will testify that they recovered key fobs associated with the Jeep SRT and Infiniti vehicles, as well as multiple phones, from the defendant co-conspirators. Officers will also testify that they recovered Victim B's driver's licenses from Davis's backpack. Officers will also testify that near the location of the defendants' arrest, they recovered three firearms: (1) a camouflage grip Glock Model 19 9mm semiautomatic pistol bearing serial

15

number BLR277; (2) a tan and black snakeskin patterned Lone Wolf R&D handgun bearing serial number AAA 494; and (3) a Glock 30 Gen 4 .45 caliber semiautomatic pistol bearing serial number BPCL054.

The government will also introduce body worn camera footage from the testifying officers that shows defendants' arrest, shows defendant Bradley wearing distinct clothing matching that worn by one of the carjackers of Victim B, and shows the recovery most of the physical evidence described above from the scene of their arrest.

### C. Cellular Tower and Phone Location Data

As discussed above, law enforcement officers recovered multiple cell phones belonging to each of the three defendants at the time of their arrest. Law enforcement recovered three phones belonging to Singleton, two of which had phone numbers ending in 5709 and 7281, two phones belonging to Davis with phone numbers ending in 9652 and 4429, and one phone belonging to Bradley ending in 3173. FBI Special Agent Shanna Fischer will testify that location data and cellular tower data related to the phones belonging to defendants will show the following, among other data:

- On November 3, 2022, location data will show that between approximately 6:30 p.m. to 6:50 p.m., Singleton's 5709 and 7281 phones, and Davis's 9652 phone, traveled from the area of Jackson Park to the area of 100th and Michigan where the first carjacking occurred at about 6:55.

- Location data will show that at approximately 6:54 p.m., Singleton's 5709 and 7281 phones, and Davis's 9652 phone, were near the location of the carjacking of Victim A at that time at 100th and Michigan. After the carjacking, location data shows the phones traveling northbound. Cellular tower data related to the Singleton 5709 and Davis 9652 phones is consistent with those phones' location data during the period from 6:50 to 7:10 p.m. on November 3, 2022.

16

- On November 3, 2022, location data will show that at approximately 9:30 p.m. Singleton's 5709 and 7281 phones, and Davis's 9652 phone, were near 31st and Michigan, at the time and location of the second carjacking.

- Location data will show that between 10:30 and 10:50 p.m., Singleton's 5709 and 7281 phones, and Davis's 9652 phone, traveled on a path consistent with the flight path of the Jeep SRT as it was being tracked by the police helicopter. Cellular tower data from Singleton's 5709 phone is consistent with the phones' location data and shows that the phone was in the area of Singleton's arrest at the time of his arrest.

- Cellular tower data from Bradley's 3173 phone will show that the phone was in the area of the carjacking of Victim A at 100th and Michigan shortly after the carjacking.

- Cellular tower data from Bradley's 3173 phone will show that between 10:30 and 10:50 p.m., the phone traveled on a path consistent with the flight path of the Jeep SRT as it was being tracked by the police helicopter.

Finally, law enforcement witnesses will testify that at approximately 6:58 p.m., 7:05 p.m., and 7:07 p.m., in the minutes after the carjacking of Victim A as the Jeep SRT and stolen Infiniti fled together, Singleton's phone number ending in 5709 made three calls to Davis's phone number ending in 9652. Singleton was driving the Jeep SRT, and Davis was driving the Infiniti. The first call was for approximately 17 seconds, the second for approximately 129 seconds, and the third for approximately 40 seconds.

### D. DNA and Fingerprint Evidence

Forensic scientists will testify regarding DNA and fingerprint testing that was performed on the firearms recovered, the Jeep SRT, and the BMW X6 that was the object of the attempted carjacking. As to DNA evidence, forensic scientist(s) will testify in summary as follows:

17

- There is strong support that defendant Bradley's is a contributor to the DNA profile found on the handgrip of the Glock 30 handgun. Defendants Singleton and Davis were excluded as contributors to the DNA profile found on the handgrip of the Glock 30 handgun.

- There is strong support that defendant Davis's is a contributor to the DNA profile found on the handgrip of the tan and black snakeskin patterned Lone Wolf R&D handgun. There is moderate support that defendant Singleton is excluded as a contributor to the DNA profile found on that gun.

- There is very strong support that Singleton's is a contributor to the DNA profile found on the steering wheel of the Jeep SRT. There is limited support that defendants Davis and Bradley are not contributors to the DNA profile found on the steering wheel.

- There is very strong support that Singleton's is a contributor to the DNA profile found on the driver's side door handle of the Jeep SRT. There is moderate support that defendants Davis and Bradley are not contributors to the DNA profile found on the steering wheel.

As to fingerprint evidence, forensic scientist(s) will testify in summary as follows:

- Defendant Bradley's fingerprints were found on the tape wrapped around the Glock 19 handgun recovered near the location of defendants' flight from the Jeep SRT and arrest.

### E.     Evidence from Defendants' Phones

Special Agent Karl Frederickson will testify about text messages, social media messages, internet searches, and photos on Singleton's phones, including the following:

- A message Singleton sent on November 1, 2022, stating: "My ppl want that q50 in the am." The vehicle carjacked from Victim A was an Infiniti Q50.

- Photographs of Singleton and Davis from November 3, 2022, with the camouflage grip Glock Model 19 9mm semiautomatic pistol bearing serial number BLR277 and the tan and black snakeskin patterned Lone Wolf R&D handgun bearing serial number AAA 494 [both of which were used/recovered in the carjackings.]

18

- Internet searches on Singleton's phone from between October 18 and November 3, 2022, for "window shops," "glass places," "glock 27, "2018 jeep grand Cherokee srt." The Jeep SRT used in the carjackings was stolen on October 19, 2022, and the police report indicates that there was glass on the ground from where it was stolen.

- Photographs of a Jeep SRT.

- Photographs of Singleton, Davis, and Bradley together.

- Song lyrics in the Notes application on Singleton's phone that state: "This a hot car we change the plates and now we sliding. Make sure you keep your mask on you at all times. . .  Bitch I'm Big G Rell I keep that pipe.

- Song lyrics in the Notes application on Singleton's phone that state: "Hot cars that's all we ride in my hood . . . We see them blue lights we hit the gas then we disappear."

- Instagram messages in which Singleton writes to an unknown person on October 22, 2022, "wassup wit dat SRT" and messages where Singleton sends pictures of firearms

- Internet searches and Amazon orders from October 11, 2022, for balaclava face masks, for "Camo Rubber Pistol Grip Sleeves," "glock folding foregrip," "glock 17 gen 3 accessories," "glock 19 accessories."

- An Instagram message on October 23, 2022, in which Singleton writes, "An I sell . . . cars," in response to a question, "What do you do for a living."

- An Instagram message in which Singleton writes on October 29, 2022, "Y'all wanna trade that mf for my Srt."

Agent Frederickson will also testify regarding images from music videos posted to YouTube featuring Singleton, Davis, and Bradley. For example, Agent Frederickson will testify regarding a YouTube video posted November 1, 2022, titled, "Toma," by Big G Rell (Singleton's rap name), that contains images of Singleton, Davis, and Bradley (wearing the clothing Bradley wore during the carjacking), as well as images of at least two of the firearms recovered at the time of defendants' arrest

19

and images of a key to a Jeep SRT as well as the Jeep SRT. Exemplar images from

this video are below:







## IV.     Coconspirator Statements

Based on the foregoing proffer of evidence demonstrating the existence of a conspiracy and defendants' participation in the conspiracy, the government intends to offer statements by co-conspirator Singleton, and a single statement by Davis, in furtherance of the conspiracy, pursuant to FRE 801(d)(2)(E). These statements— which will establish the coconspirators' planning and preparation of the crimes, their motive and intent to commit the crimes, and their execution of the crimes—will be introduced primarily through the testimony of Special Agent Karl Frederickson who will present evidence of those statements as recovered from defendant Singleton's phones and music videos posted to YouTube.

The government does not detail each and every proposed coconspirator statement of each witness here. Nor does *Santiago* or the Seventh Circuit's precedent require the government to set forth every specific, verbatim coconspirator statement. Instead, the Seventh Circuit has specifically stated that categories of statements suffice. *See United States v. McClellan*, 165 F.3d 535, 554 (7th Cir. 1999) (rejecting the argument that the "government is bound to give notice in advance of trial of co-conspirator statements it intends to introduce at trial"); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *8 (N.D. Ill. Mar. 2, 2011) (rejecting defendant's argument that the government failed to "specifically identif[y] the statements it intends to introduce" and rejecting defendant's request "that the Government be required to specifically identify each statement by a co-conspirator it intends to introduce"). To that end, the coconspirator statements offered at trial will concern the subjects listed below, and include, but are not limited to, the coconspirator statements discussed above:

1. Statements regarding other coconspirators, including the following:

   a. Identifying other members of the conspiracy and their roles in carrying out the crimes;

   b. Reviewing a coconspirator's exploits and criminal acts committed in order to, among other things, update a fellow coconspirator on actions taken by the group;

   c. Reporting coconspirators' status and in turn receiving assurances of assistance from coconspirators;

2. Statements to conduct or help conduct the conspiracy's activities, including the following:

   a. The purpose behind criminal acts carried out by the conspiracy;

22

  b. To plan criminal acts by the conspiracy;

  c. To instill and maintain the trust and cohesiveness of the conspiracy;

  d. To advise of the progress and accomplishments of the conspiracy;

  e. Statements to outsiders to enhance the conspiracy's position in the eyes of outsiders and express confidence about the ability of the conspiracy; and

  f. To inform and update others about the current status of the conspiracy's progress (including failures);

3. Statements concerning the means used to conceal the conspiracy's illegal activities; and

4. Statements to others outside the conspiracy to seek their cooperation and to encourage them to not reveal incriminating information.

In addition to proffering categories of coconspirator statements, the government also sets forth a representative set of coconspirator statements in the chart below in order to demonstrate how the communications were in furtherance of the conspiracy. While the below chart includes the vast majority of coconspirator statements that will be presented at trial, the government may present additional coconspirator statements that involve the same coconspirators, are "in furtherance" in the same manner as the examples set forth below, and are encompassed by the proffered categories above.

| Anticipated Witness(es) | Statement | "In Furtherance" Explanation |
|---|---|---|
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton to Unknown on November 1, 2022:* "My ppl want that q50 in the am." | Singleton declaring motive for carjacking Infiniti Q50 and inform others about the conspiracy's progress |

23

| | | |
|---|---|---|
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton Song Lyrics Created on October 11, 2022*: "This a hot car we change the plates and now we sliding. Make sure you keep your mask on you at all times. . . Bitch I'm Big G Rell I keep that pipe." | Singleton declaring intent to work with others to commit a carjacking and planning the tools needed for the carjackings, including masks, guns, and altered license plates |
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton Song Lyrics Created on September 20, 2022*: "Hot cars that's all we ride in my hood . . . We see them blue lights we hit the gas then we disappear" | Singleton declaring intent to work with others to commit a carjacking and describing strategy for evading capture after carjacking |
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton Internet searches and Amazon orders from October 2022*: "balaclava face masks," "Camo Rubber Pistol Grip Sleeves," "glock folding foregrip," "glock 17 gen 3 accessories," "glock 19 accessories." | Singleton obtaining the tools needed for the carjackings, including masks and firearm accessories |
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton Internet Searches from October 2022*: "window shops," "glass places," "glock 27, "2018 jeep grand Cherokee srt." | Singleton searching for tools to use in the carjacking, specifically firearms, the Jeep SRT stolen from a parking lot and used as a getaway car, and window shops to replace the glass on the Jeep SRT |
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Lyrics by Singleton, with Davis and Bradley in the background in the music video, "Toma" from November 1, 2022*: "All we ride is hot cars . . . got ski masks on can't even see our face." | Singleton, with his co-conspirators, announcing the goals of the conspiracy (to obtain stolen cars) and the methods used for concealing their identities (Singleton and his co- |

24

| | | conspirators had masks on during the carjackings and at the time of their arrest) |
|---|---|---|
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton Instagram Messages to Unknown Person on October 23, 2022:* "I sell . . . cars." | Singleton furthering the objective of the conspiracy by seeking to profit from the proceeds of the carjackings |
| Agent Karl Frederickson (testifying re contents of defendant Singleton's phone) | *Singleton Instagram Messages to Unknown Person on October 22, 2022:* "wassup wit dat SRT" | Singleton obtaining the tools needed for the carjackings, specifically the Jeep SRT used as the getaway car |
| Victim A (testifying re what the carjackers' said to him during the carjacking) | *Davis to Victim A on November 3, 2022 During the Carjacking:* "Keys, keys, keys, give me the keys." | Davis executing the goal of the conspiracy by obtaining the keys to complete the carjacking |

## V.    Conclusion

Based on the above proffer of evidence, the government has made a sufficient preliminary showing by a preponderance of the evidence, as contemplated by *Santiago* and its progeny, of the existence of and participants in the conspiracy, so that the Court can rule on the admissibility of statements made in furtherance of the conspiracy under FRE 801(d)(2)(E), to the extent any are offered as such at trial.

ANDREW S. BOUTROS
United States Attorney

By:    s/Elie Zenner
ELIE ZENNER
SIMAR KHERA
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604
312-353-5300

25