UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

    v.

EDMUND SINGLETON and
RAMONE BRADLEY

No. 24 CR 503

Judge Matthew F. Kennelly

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT RAP VIDEOS, LYRICS, AND IMAGES

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:   */s/ Elie Zenner*
      ELIE ZENNER
      SIMAR KHERA
      Assistant U.S. Attorneys
      219 South Dearborn, Room 500
      Chicago, Illinois 60604
      (312) 353-5300

Dated:  July 7, 2025

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................ii

I.    Evidence Sought to Be Admitted ........................................................................ 1

    A.    Defendants' "Toma" Music Video ................................................................ 2

    B.    Lyrics ........................................................................................................... 5

    C.    Singleton's Album Cover for "Hot Cars" ..................................................... 7

    D.    Images and Videos from Defendants' Phones ............................................. 8

II.    Legal Argument ................................................................................................ 14

    A.    The Videos and Images from YouTube and Defendants' Phones Are Admissible as Direct Evidence ................................................................... 14

    B.    Singleton's Lyrics Are Admissible as Direct Evidence of the Charged Offenses ...................................................................................................... 20

    C.    In the Alternative, Singleton's Lyrics Are Admissible as 404(b) Evidence . .................................................................................................................... 24

III.  Conclusion ....................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*United States v. Adams*, 628 F.3d 407 (7th Cir. 2010) .............................................. 18

*United States v. Alviar*, 573 F.3d 526 (7th Cir. 2009) ............................................... 20

*United States v. Bailey*, 2022 WL 2444930 (6th Cir. July 5, 2022) .......................... 22

*United States v. Carpenter*, 372 F. Supp. 74 (E.D.N.Y. Feb. 25, 2019) ................... 21

*United States v. Carpenter*, No. 21-837-CR, 2022 WL 16960577 (2d Cir. Nov. 16, 2022) ............................................................................................. 21, 22, 23

*United States v. Dore*, No. 12 CR 45 RJS, 2013 WL 3965281 (S.D.N.Y. July 31, 2013) .................................................................................................................. 25

*United States v. Ferrell*, 816 F.3d 433 (7th Cir. 2015) .............................................. 24

*United States v. Foster*, 939 F.2d 445 (7th Cir. 1991) .................................. 22, 23, 25

*United States v. Han*, 105 F.4th 986 (7th Cir. 2024) ................................................. 14

*United States v. Hankton*, 51 F. 4th 578 (5th Cir. 2022) ........................................... 21

*United States v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909 (E.D.N.Y. May 8, 2014) ............................................................................................................. 20, 23

*United States v. Herron*, 762 F. App'x 25 (2d Cir. 2019) ................................... 20, 21

*United States v. Johnson*, 89 F.4th 997 (7th Cir. 2024) ............................................... 8

*United States v. Jones*, et al, 2023 WL 5319244 (7th Cir. Aug. 18, 2023) ........... 21, 22

*United States v. Miller*, 673 F.3d 688 (7th Cir. 2012) .......................................... 15, 16

*United States v. Mills*, 367 F. Supp. 3d 664 (E.D. Mich. 2019) ............................... 22

*United States v. Moore*, 639 F.3d 443 (8th Cir. 2011) .............................................. 25

*United States v. Perry*, 35 F.4th 293 (5th Cir. 2022) ............................................... 24

*United States v. Stuckey*, 253 Fed. Appx. 468 (6th Cir. 2007) ....................... 23, 24, 25

*United States v. Washington*, 962 F.3d 901 (7th Cir. 2020) ...................................... 15

*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) .............................................................. 21

**Rules**

Fed. R. Evid. 404(b) ................................................................................................ *passim*

Fed. R. Evid. 801(d)(2)(A) ................................................................................................ 20

Defendants Ramone Bradley and Edmund Singleton are charged with conspiring with co-defendant Marquell Davis to carjack multiple vehicles. In furtherance of the conspiracy, the defendants used a Jeep SRT and two distinctive handguns to carjack an Infiniti Q50 sedan and attempt to carjack a BMW.[1] At trial, the government intends to introduce portions of a music video, as well as pictures from defendants' phones created in the days before the carjackings, featuring defendants. The video and pictures contain images of the distinctive firearms used in the carjackings, the Jeep SRT used in the carjackings and its car key and depict Bradley wearing the clothing he was wearing during the carjacking of the BMW. The government also intends to introduce excerpts of lyrics from the music video in which Singleton raps about riding in "hot cars" while Davis and Bradley back him up, and from notes on Singleton's phone in which Singleton writes that he drives "hot" cars, flees from police, and wears masks to commit crimes. As the Seventh Circuit has consistently held, this evidence is all admissible as direct evidence of the charged offenses because it establishes defendants' access to the specific firearms and vehicles used in the carjacking, defendant Bradley's possession and use of clothing that he was wearing the day of the carjacking, and defendants' knowledge of the methods and procedures used to commit the charged carjackings.

## I. Evidence Sought to Be Admitted

As detailed in the government's prior filings, defendants Singleton, Bradley, and Davis were arrested after fleeing from a stolen Jeep SRT that they used to carjack

---

[1] Davis pleaded guilty to carjacking, attempted carjacking, and possessing a firearm during and in relation to the carjacking.

an Infiniti Q50 sedan and to attempt to carjack a BMW. Officers recovered a key fob for the Infiniti Q50 from defendant Davis's pocket and another Infiniti key fob as well as the Jeep SRT key fob from defendant Singleton. Officers also recovered multiple phones from defendants. Near the location defendants were arrested and in their path of flight, officers also recovered three firearms: (1) a camouflage grip Glock Model 19 9mm semiautomatic pistol bearing serial number BLR277 with a taped extended magazine, a Glock switch attached to the rear, and a front grip; (2) a tan and black snakeskin patterned Lone Wolf R&D handgun bearing serial number AAA 494; and (3) a black Glock 30 Gen 4 .45 caliber semiautomatic pistol bearing serial number BPCL054.

At trial, the government intends to admit evidence, in the form of videos and images posted to YouTube, images and videos from the defendants' phones, and lyrics written by Singleton, all of which discuss guns and stolen cars and/or depict the defendants with the firearms, clothes, and car used in the carjackings. Each item of evidence is discussed further below:

### A. Defendants' "Toma" Music Video

On or about November 1, 2022, two days before the carjackings, the music video for the song "Toma" by Big G Rell was posted to YouTube.[2] A copy of the YouTube posting of the video is attached hereto as Exhibit A-1, and a draft transcript of the lyrics are attached hereto as Exhibit A-2.[3] The video opens with an image of

---

[2] At trial, the government's evidence will establish that Singleton used the rap name "Big G Rell."

[3] Transcripts of song lyrics were prepared by an FBI case agent who will testify as to their accuracy at trial in order to support their admission

multiple firearms, including a tan snakeskin gun and a camouflage grip Glock with a front grip, that appear to be two of the guns recovered at the time of defendants' arrest. The other black handguns pictured match the appearance of the third gun recovered near the location of defendants' arrest. In front of the guns, there is a Jeep SRT key with a green keychain. The same green keychain was found attached to the Infiniti key in defendant Singleton's pocket. Below is a screenshot of the video, with the snakeskin gun and SRT key in the center, and the camouflage gun on the far left:



The video then cuts to Singleton sitting in the Jeep SRT and holding the camouflage grip Glock with the front grip that matches the gun recovered after defendants' arrest when an officer retraced their flight path. A screenshot is below:



Big G Rell – Toma (Official Music Video)

The video then shows Singleton rapping, with defendant Bradley standing next to him dancing and rapping. Bradley is wearing a black sweatshirt with white script on the breast that is identical to the sweatshirt he was wearing during the attempted carjacking and when he was arrested. The man next to Singleton is holding the camouflage grip Glock with the front grip and the taped extended magazine. Screenshots are below (first of Bradley with the sweatshirt in the video, then in the sweatshirt during the attempted carjacking and when he was arrested):

4





### B. Lyrics

The government does not intend to admit the majority of the audio from the music video, "Toma," discussed above. The government does, however, intend to admit at trial the following lyrical excerpts, both in transcript and audio form, relevant to the charged carjacking conspiracy:

| Title | Lyrics | Date Created |
|---|---|---|
| Toma | Pop out with that switch, don't want that switch, I grabbed that ARP | November 1, 2022 |

5

| | I ain't rap 'bout shit I ain't doing or never seen

Pull off in that fast car | |
|---|---|---|
| Toma | I be speaking facts in all my raps, ain't lied in one of my bars | November 1, 2022 |
| Toma | All we ride is hot cars, ain't no telling what time you gonna die tomorrow.

I keep ski masks so nobody can't see our face | November 1, 2022 |

Aside from the music video, one of Singleton's phones also contained in the Notes Application lyrics for several different songs, written prior to the carjackings. At trial, the government intends to admit the following excerpts from the song lyrics from Singleton's phone:

| Title | Lyrics | Date Created |
|---|---|---|
| Mask Up | 1. This a hot car we change the plates an now we sliding.

2. Make sure you keep your mask on you at all times cuz ni**** telling . . .

3. Bitch I'm Big G Rell I keep that pipe. I'm never hiding. | October 11, 2022[4] |
| Hot Cars | 1. Hot cars that's all we ride in my hood, 12 ain't on shit.

2. Hot cars that's all we ride in my hood, 12 ain't on shit. | September 27, 2022 |

---

[4] In defendant Singleton's phone extraction, metadata for the Notes Application contains a "Date Created" field that indicates when the note was created.

6

| | | |
|---|---|---|
| | 3. Hot cars that's all we ride in my hood, 12 ain't on shit.<br><br>4. We see them blue lights we hit the gas then we disappear . . .<br><br>6. You better have that wheel when you driving cuz yo ass gon get cought [sic]<br><br>7. Them people don't even play behind me they know ima get lost<br><br>8. They talking all that big money shit when we kno they broke<br><br>9. How you ni**** all some stepper an aint never walked shit down<br><br>10. We pull up in that fast shit drop the window then we blow him down<br><br>11. Pop out cars we stand over ni**** then we blow them down | |

## C. Singleton's Album Cover for "Hot Cars"

Singleton, using his rap name Big G Rell, has another song titled, "Hot Cars," meaning stolen cars. On Spotify, the album cover features the stolen Jeep SRT that defendants used to commit the carjackings. In the picture, the SRT has the owner's license plate affixed to the front, which is the same license plate that was affixed to the front of the Jeep SRT after defendants abandoned it and were arrested. Below is a screenshot from the Big G Rell Spotify page:

7



### D. Images and Videos from Defendants' Phones

At the time of defendants' arrest, officers recovered three phones belonging to Singleton, two phones belonging to Davis, and one phone belonging to Bradley. Singleton's phones contained several images of guns, including the camouflage grip Glock and the snakeskin gun that were recovered after defendants' arrest. At trial, an agent will testify about the features of guns recovered and pictured in images, including the camouflage grip Glock with a front grip, extended magazine, and a switch and the snakeskin gun with laser sight attached. *See United States v. Johnson*, 89 F.4th 997, 1004 (7th Cir. 2024) (holding court should have admitted testimony identifying a firearm by affixed laser sight because danger of prejudice is modest and it "tends to prove a key disputed element of the charged crime—possession of a particular firearm . . . It seems to us axiomatic that identifying features of a firearm

8

a defendant is charged with unlawfully possessing—including evidence of an attached laser sight—are central to a felon-in-possession case.").

Below on top left is a photo from Singleton's phone of Singleton holding the camouflage grip Glock taken on November 3, 2022, at about 5 p.m., shortly before the carjackings. Bottom left is a picture from Singleton's phone from October 26, 2022, of an SRT floor mat with three firearms—including the camo grip Glock with the switch and taped-up magazine and the snakeskin gun, both of which were recovered after defendants' arrest. Below on the right are pictures of the snakeskin gun and camouflage gun after they were recovered:




9

 

One of Singleton's phones also had pictures from October 31, 2022, which based on the background, was taken on the set of the music video "Toma." As depicted in the picture below, Bradley, wearing the distinct sweatshirt with white script that he was wearing when he was arrested and during the carjacking, is on the left holding a black Glock, Singleton is in the middle with a key fob hanging from his pants, and Davis, wearing shoes that match what he was wearing during the carjacking, is on the right with a gun, which appears similar to the snakeskin gun recovered after defendants' arrest, in his pants pocket:

10



One of Singleton's phones also had a video created October 25, 2022, in which Singleton and Davis are riding in the Jeep SRT used in the carjackings with a gun matching the appearance of the snakeskin gun used in the carjackings.[5] Screenshots are below of the steering wheel of the Jeep SRT (left), then Singleton wearing a mask driving (middle), and finally Davis holding the snakeskin gun (right):

---

[5] The video has a caption superimposed on it and tags two social media profiles with the @ symbol. At trial, the government's evidence will establish that the Instagram profile @smokeytht is associated with defendant Davis.

11

  

Below is a screenshot of Davis holding what appears to be the same snakeskin gun during the first carjacking:



The government will also admit photographs from Bradley's phone, including the two pictures below, which were taken November 2, 2022, the day before the carjackings. In the picture on the left, Bradley is standing in front of the Jeep SRT

12

used in the carjackings wearing the black hooded sweatshirt with the white script. On the right, Davis, identifiable by the black and grey Nike sneakers he wore during the carjacking, is sitting in the Jeep SRT holding what appears to be the snakeskin gun recovered after defendants' arrest.

 

The government will also admit photographs from Davis's phone, including the photograph below, taken October 31, 2022, three days before the carjackings. In the picture, Davis, identifiable by his face and the black and grey Nike sneakers he wore during the carjacking, is standing holding a gun, while the snakeskin gun and camouflage grip gun recovered after defendants' arrest lie in front of him.



## II. Legal Argument

### A. The Videos and Images from YouTube and Defendants' Phones Are Admissible as Direct Evidence

Here, the music video for "Toma," and the images and videos from defendants' phones are admissible because they are direct evidence of the charged offenses.

The Seventh Circuit has long held that while Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a propensity to behave in a certain way, absent certain exceptions, "it only curtails the introduction of evidence of *other* acts." *United States v. Han*, 105 F.4th 986, 993 (7th Cir. 2024) (emphasis in original). "Direct evidence of a crime is almost always admissible against a defendant and is not 'other act evidence.'" *Id.* (quotations omitted). For example, "evidence of the defendant's role in the charged conspiracy [is] not propensity evidence." *Id.* Ultimately, if the evidence is "part and parcel of the circumstances surrounding the conspiracy crimes with which the defendant was charged," Rule 404(b) is inapplicable. *Id.* at 993-94.

14

Applying these rules, the Seventh Circuit regularly upholds the admission of testimony or images showing that defendants possessed the particular guns used in the charged offenses at a prior time. In *United States v. Washington*, 962 F.3d 901, 904 (7th Cir. 2020), for example, the defendant was charged with being a felon in possession of a distinct chrome handgun and the district court admitted images from a YouTube video of defendant and another person displaying the distinct chrome handgun from three months before his arrest. *Id.* The Seventh Circuit upheld the admission of the images over defendant's objection that the images constituted propensity evidence in violation of Rule 404(b). *Id.* at 906. The Court explained that the images of defendant from three months before the charged offense with the specific gun charged in the offense were admissible to "show that [defendant] had recent access to, and the ability to exercise control over, the same gun recovered from the yard where the officers said they saw him toss it. Because the evidence involved possession of the same gun, its relevance did not depend on an inference about [defendant's] propensity to possess firearms in general or any other forbidden inference about his character." *Id.* The Court also rejected defendant's Rule 403 argument, explaining that the YouTube images were "recent and relevant to the nonpropensity purpose of proving his actual possession of *that very gun* on the charged occasion. The probative value of the evidence was substantial and not outweighed by the danger of unfair prejudice." *Id.* at 907; *see also United States v. Miller*, 673 F.3d 688 (7th Cir. 2012) (upholding admission of testimony that defendant possessed "a particular gun two months before the date he was charged with being in

15

possession of the same gun" because it was "directly relevant evidence of the charged crime [felon in possession and using a gun in furtherance of a drug crime], not propensity evidence.").

This case is very similar to *Washington* and *Miller*, but here, the evidence in question is even more recent and thus more relevant. As in *Washington*, defendants are charged with possessing and using guns during the carjackings that were recovered nearby after they were arrested. As in *Washington*, the images and videos from YouTube and from defendants' phones of them possessing the unique snakeskin gun and camouflage grip gun with the front grip, extended magazine, and a switch are admissible because they are direct evidence of defendants' possession and use of those specific guns in the charged offenses. But here, these images were not from two or three months prior to the charged offense, but instead from days and hours before the charged crimes were committed.

For example, defendant Singleton is charged with illegally possessing the camouflage grip Glock with the front grip, switch, and the taped extended magazine (as a felon) and using that gun while he drove the Jeep SRT and participated in the carjackings during the conspiracy. The camouflage grip gun was recovered near where Singleton was arrested. Below left is an image from Singleton's phone from hours before the carjackings of him with the camouflage grip gun with the distinct front grip, switch, and taped extended magazine, and on the right, is the same gun after it was recovered near the location of Singleton's arrest:

16

 

Similarly, Singleton is charged with conspiring to commit and committing the first carjacking and using a gun in furtherance of that carjacking. In that carjacking, his co-conspirator Davis exited the Jeep SRT and pointed a gun at the victim. Below are side by side screenshots of Davis holding what appears to be the tan snakeskin Lone Wolf handgun in an image from Singleton's phone from October 25, and on the right, holding what appears to be the same gun during the first carjacking:

17

 

Bradley, for his part, is charged with conspiracy to commit the carjackings and with attempting to commit the second carjacking. The images and videos discussed above provide direct evidence of his involvement in the conspiracy and his possession of the gun(s) used to commit the carjacking. *See United States v. Adams*, 628 F.3d 407, 414 (7th Cir. 2010) (upholding admission of evidence of defendant's prior arrests with large amounts of cash because "all the challenged evidence is direct evidence of [defendant's] role in the charged conspiracy"). For example, the "Toma" music video shows Bradley, with Davis and Singleton, his co-conspirators, wearing the sweatshirt he was wearing during the conspiracy. Further, as shown below, a photo (on the left) from Singleton's phone from October 31, 2022, shows Bradley wearing the sweatshirt and holding a black handgun, like the one he pointed at the victim in the attempted carjacking, and like the one that was recovered near his arrest with his DNA on it.

18

The photo below on the right is a screenshot from the attempted carjacking as Bradley exits the Jeep SRT in the black sweatshirt and points a dark firearm (circled in red) at the victim:

 

Finally, aside from the guns and clothing, the images and videos also provide direct evidence that defendants possessed the gray Jeep SRT (pictured above) used to commit the carjackings. For example, as shown above, the music video "Toma" features an image of the Jeep SRT key and shows Singleton in the Jeep SRT. Images from Singleton and Bradley's phones show Singleton and Davis in the Jeep SRT and Bradley standing in front of it.

In sum, the images and videos showing defendants with the guns and vehicle used to commit the charged carjackings are "recent and relevant to the nonpropensity purpose of proving" defendants possessed the firearms in questions and committed the charged carjackings. *Washington*, 962 F.3d at 906-7. Simply put, "Rule 404(b) is

19

inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged." *United States v. Alviar*, 573 F.3d 526, 538 (7th Cir. 2009). Further, the probative value of this evidence is substantial, and it is not substantially outweighed by the danger of unfair prejudice. This is especially true here, where the images and videos simply show defendants possessing firearms and the Jeep SRT, prior acts that are far less inflammatory or prejudicial than the charged crimes, including violent carjackings that will be shown on video. *United States v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909, at *4 (E.D.N.Y. May 8, 2014), *aff'd,* 762 F. App'x 25 (2d Cir. 2019) (finding rap video evidence was not substantially outweighed by a danger of unfair prejudice because it was not "more inflammatory than the charged crimes" including, a "violent murder").

### B. Singleton's Lyrics Are Admissible as Direct Evidence of the Charged Offenses

The government also seeks to admit certain excerpts of lyrics found on Singleton's phone and in the rap music video "Toma," including lyrics from the days before the carjackings discussing defendants use of "hot cars" with altered license plates, use of masks to conceal their identity, use of "pipes" [guns], and willingness to flee from police if they see the "blue lights." These lyrics are admissible as direct evidence of defendants' commission of the charged crime.

Here, the rap lyrics are clearly attributable to Singleton—they are primarily found in the Notes Application on his phone and otherwise come from a video in which he is the person rapping. Accordingly, the lyrics are admissible as Singleton's own statement and are not hearsay. Fed. R. Evid. 801(d)(2)(A).

20

Courts have routinely found rap lyrics to be evidentiary "statement[s]" within the meaning of Rule 801(a) notwithstanding the fact they may be "artistic expression." *See, e.g., United States v. Hankton*, 51 F. 4th 578, 601 (5th Cir. 2022) (holding defendant's argument that rap lyrics are not "statements" because they are artistic expression "lacks merit" and noting any interpretation of the lyrics "was within the province of the jury."); *Herron*, 762 F. App'x at 29-30 ("The First Amendment . . . does not, however, 'prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive and intent.'") (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993)); *United States v. Carpenter,* 372 F. Supp. 74, 78-79 (E.D.N.Y. Feb. 25, 2019) (admitting lyrics and rejecting as "meritless" defendant's argument that admission violated defendant's First Amendment right to free expression); *see also United States v. Jones,* et al*,* 2023 WL 5319244 (7th Cir. Aug. 18, 2023) (affirming admission of defendant's social media posts because "we know of no authority. . . supporting [defendant's] views that the First Amendment shields from consideration statements he made that shine substantial light on his intent and predisposition to commit the crime").

Courts also regularly admit rap lyrics as direct evidence of charged crimes where, like here, the lyrics describe with specificity the tools defendant used to commit the offenses and his methods for committing the offenses. In *United States v. Carpenter*, No. 21-837-CR, 2022 WL 16960577 (2d Cir. Nov. 16, 2022), for example, the defendant was charged with drug dealing and using a gun in furtherance of that drug dealing. The trial court admitted lyrics found on the defendant's phone and

21

posted online because they provided direct evidence of his process for preparing and delivering drugs and of his use of a firearm in connection with his drug trafficking. *Id.* The Second Circuit upheld the admission of the lyrics because defendant's "lyrics and rap music videos [spoke] with specificity to the precise conduct with which he was charged." *Id.* at *3; *see also United States v. Bailey,* 2022 WL 2444930, *13 (6th Cir. July 5, 2022) (affirming the admission of four rap videos as "critical evidence" to establish gang was an enterprise and racketeering acts related to the enterprise because videos included some defendants "trumpeting their membership" in the gang and describing specific acts committed by the group); *see also United States v. Mills,* 367 F. Supp. 3d 664, 670 (E.D. Mich. 2019) (admitting rap videos to establish the existence of the enterprise, defendant's participation in and association with members of the enterprise, and the alleged purposes of the enterprise).

Similarly, the Seventh Circuit has upheld the admission of rap lyrics to establish a defendant's knowledge and familiarity with the charged criminal activity. In *United States v. Foster,* 939 F.2d 445 (7th Cir. 1991)*,* the defendant was arrested with suitcases containing large quantities of narcotics. *Id.* at 449. Also in his possession was a notebook containing a handwritten rap verse that stated "Key for Key, Pound for pound I'm the biggest Dope Dealer and I serve all over town. Rock 4 Rock Self 4 Self. Give me a key let me go to work more Dollars than your average bussiness [sic] man." *Id.* The Seventh Circuit affirmed the district court's admission of the rap verse, and rejected the defendant's argument that the verse was inadmissible because it was merely fictional, artistic expression:

22

> [R]ecall that the rap verse was not admitted to show that Foster was, in fact, 'the biggest dope dealer'; it was not admitted to establish that Foster was the character portrayed in the lyrics. But in writing about this 'fictional' character, Foster exhibited knowledge of an activity that is far from fictional. He exhibited some knowledge of narcotics trafficking, and in particular drug code words. It was for this limited purpose that the verse was admitted, and it is for this limited purpose that its relevance is clear.

*Id.* at 456.

Here, like in *Carpenter* and *Foster*, Singleton's rap lyrics are admissible statements by a party opponent[6] and highly probative, direct evidence. Like in *Foster*, the lyrics show defendant's knowledge of the methods and procedures used to commit the charged carjackings. Here, Singleton raps of using "pipes" [guns], "hot cars" with altered license plates, masks, and fleeing from police. Singleton is charged with using a stolen Jeep SRT with altered license plates to carjack victims with guns and masks, and then fleeing from police. Thus, like in *Carpenter*, Singleton's "lyrics and rap music videos speak with specificity to the precise conduct with which he was charged." WL 16960577 at *3.

The probative value of these lyrics far outweighs any unfair prejudice. Of course, "[a]ll evidence offered by the prosecutor is prejudicial to the defendant," *Foster,* 939 F.2d at 457, but even when rap videos "contain profanity, misogyny, and references to violence that viewers could find objectionable or shocking, it cannot be said that their content is 'more inflammatory' than the charged crimes" including, as charged here, a violent carjacking. *Herron*, WL 1871909, at *4; *United States v.*

---

[6] As discussed in the government's Santiago proffer, Singleton's statements are also admissible as to his co-defendant Bradley as co-conspirator statements. *See* Dkt. 93.

23

*Stuckey,* 253 Fed. Appx. 468, 484 (6th Cir. 2007) (prejudice of lyrics did not substantially outweigh their probative value because "jurors would be unlikely to reason that a rapper is violent simply because he raps about violence."). Here, any prejudicial impact is limited because the government intends to introduce only lyrics with minimal profanity or offensive language that relate directly the specific offenses charged—the use of masks, stolen cars, and fleeing from police—and not the complete song lyrics that reference less relevant and more prejudicial actions like shooting opposition gang members. This highly probative, direct evidence should be admitted. *See, e.g., United States v. Perry,* 35 F.4th 293, 326-27 (5th Cir. 2022) ("[t]he general conclusion from courts that have considered this type of evidence is that explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative.").

### C. In the Alternative, Singleton's Lyrics Are Admissible as 404(b) Evidence

Under Rule 404(b), relevant evidence of a crime, wrong, or other act is inadmissible if the proponent offers the evidence to show a person's propensity to act a certain way. Fed. R. Evid. 404(b). "Regardless, the district court may admit other-act evidence if the evidence is offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id. United States v. Ferrell*, 816 F.3d 433, 442–43 (7th Cir. 2015).

Courts, including the Seventh Circuit, have regularly admitted rap lyrics and videos over 404(b) objections when, as here, the lyrics speak directly to a defendant's

24

knowledge and intent, as well as his participation in the charged conspiracy. *See, e.g.*
*Foster*, 939 F.2d at 455 (admitting lyrics under 404(b) because they rebutted
defendant's claim that he did know the suitcase he possessed contained drugs);
*United States v. Moore*, 639 F.3d 443, 447–48 (8th Cir. 2011) (upholding admission of
rap lyrics about drug dealing over 404(b) objection because defendant maintained he
was not involved drug conspiracy and lyrics were relevant to "show his knowledge of
drug distribution and his motive for engaging in it."); *United States v. Dore*, No. 12
CR 45 RJS, 2013 WL 3965281, at *8 (S.D.N.Y. July 31, 2013) (admitting music video
in robbery conspiracy case under 404(b) because video showed defendant's possession
of vehicle used in robbery spree; the "relationship between individuals involved in the
charged conspiracy;" "defendants modus operandi, such as the use of masks in
committing robberies;" and, "their possession of or access to firearms."); *Stuckey,* 253
Fed. Appx. at 482 (admitting lyrics under 404(b) in case where defendant was accused
of killing witness because lyrics stated defendant dislikes and kills "snitches" and
were thus "admissible to show knowledge, preparation, plan, and arguably modus
operandi.")

Here, Singleton's lyrics are still admissible under Rule 404(b). The government
must prove, among other elements, that defendants knowingly joined the carjacking
conspiracy and had the intent to advance the goals of the conspiracy. The government
expects defendant Singleton to argue that he was either not present, or was merely
driving the Jeep SRT and did not know that his co-defendants were going to carjack
two victims using guns and masks. Like in *Dore*, *Foster*, and *Moore*, Singleton's lyrics

about riding "hot cars" with altered license plates, using masks and guns, and fleeing from police rebut this argument and provide highly probative evidence of Singleton's knowledge of the carjacking conspiracy's goals, his intent to participate and further those goals, and his knowledge and familiarity with the methods used to achieve them.

### III.    Conclusion

For the foregoing reasons, the government respectfully requests the Court grant its motion *in limine* to admit certain images, videos, and lyrics.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:    */s/ Elie Zenner*
ELIE ZENNER
SIMAR KHERA
Assistant U.S. Attorneys
219 South Dearborn, Room 500
Chicago, Illinois 60604
(312) 353-5300

26