UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

    v.

RAMONE BRADLEY and
EDMUND SINGLETON

No. 24 CR 503

Judge Matthew F. Kennelly

### GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The United States of America, by its attorney, ANDREW S. BOUTROS, the

United States Attorney for the Northern District of Illinois, respectfully moves *in*

*limine* with respect to the following evidentiary matters as described below.[1]

---

[1] For purposes of efficiency and ease of reference, the government has filed its motions *in limine* in a single document. No single motion herein exceeds the 15-page limit as imposed by the Local Rules.

1

**TABLE OF CONTENTS**

I.    **Motion to Recall Witness** ................................................................. 3

II.    **Motion to Admit Evidence of Defendant Edmund Singleton's Prior Felony Convictions**..................................................................... 5

III.    **Motion to Permit Lay Opinion Testimony As to the Meaning of Certain Words or Phrases**.................................................................. 7

IV.    **Motion to Preclude Defendant Ramone Bradley From Offering Evidence or Argument Relating to an Alibi Defense**...................................... 9

V.    **Motion to Preclude Argument or Evidence Designed to Elicit Jury Nullification**................................................................................. 9

VI.    **Motion to Preclude Discovery Requests or Commentary Regarding Discovery in the Presence of the Jury**........................................... 15

VII.    **Motion to Preclude Explaining or Defining Reasonable Doubt**...... 15

VIII.    **Motion to Preclude Evidence and Argument About Investigative Steps Not Taken**............................................................................. 16

IX.    **Motion to Preclude Impermissible Use of Prior Grand Jury Testimony During Cross-Examination** ........................................... 20

X.    **Motion to Preclude Impermissible Use of Witness Interview Memoranda During Cross-Examination**......................................... 22

XI.    **Motion to Admit Defendants' Prior Felony Convictions if They Testify Pursuant to Federal Rule of Evidence 609**......................................... 25

XII.    **Motion to Bring Firearms to Court As Evidence At Trial**................. 29

2

## I. MOTION TO RECALL WITNESS

The government respectfully moves this Court under Federal Rule of Evidence 611(a) to permit recall of Federal Bureau of Investigation ("FBI") Special Agent Karl Fredriksen during trial. The mode and order of examining witnesses are within the discretion of the trial court. *United States v. Wheeler*, 745 F.App'x 643, 644 (7th Cir. 2018). Pursuant to Rule 611(a), the Court may exercise reasonable control over these procedures to "determine[e] the truth," "avoid wasting time," and "protect witnesses from harassment or undue embarrassment."

This case involves a conspiracy to commit carjackings, a carjacking, and an attempted carjacking that occurred during the course of one night. The government generally intends to present its evidence in chronological and episodic order. It therefore requests permission to recall Agent Fredriksen—the case agent for the government's investigation—during the government's case in chief to allow him to testify at different times throughout the trial. Agent Fredriksen performed numerous investigative activities, including executing search warrants, collecting buccal swabs, submitting evidence to the FBI Laboratory for forensic testing, and reviewing search warrant and subpoena returns. Presenting the full scope of Agent Fredriksen's relevant testimony at one time would risk overwhelming and confusing the jury. Rule 611(a) entrusts the sequential presentation of testimony to the district court. See *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009), and permitting episodic or chronological testimony has been approved in complex conspiracy cases. See, e.g., *United States v. Jackson*, 549 F.2d 517, 528 (7th Cir. 1977); *United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982). If Agent Fredriksen is required to testify only

once, his testimony will necessarily encompass the conspiracy, the carjacking, and the attempted carjacking, as well as investigative milestones applicable to the entire case, at the same time. In contrast, recall of Special Agent Fredriksen will ensure a more orderly presentation of evidence and aid the jurors' comprehension of the overall narrative. *See United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011); *United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1997) (upholding district court's decision to allow government to recall law enforcement witnesses so the evidence could be presented in chronological order).

Agent Fredriksen's testimony will be needed to establish the chain of custody for various pieces of physical evidence. More specifically, defendant Singleton's DNA was found on the front driver side door handle of the Jeep SRT used during both carjackings, and defendant Bradley's fingerprints were found on the tape wrapped around the magazine of the Glock Model 19 9mm semiautomatic pistol bearing serial number BLR277, as well as on the magazine itself. Neither defendant, as is their right, has yet agreed to stipulate to a chain of custody for any of this evidence. To avoid the false implication of a gap in the chain of custody, and to assist the jury in recalling what evidence was recovered from which item, Agent Fredriksen would need to testify after the law enforcement witnesses who initially recovered crime scene evidence, but before the forensic experts.

Further, Agent Fredriksen's testimony will be needed prior to testimony from a cell phone location expert, Special Agent Shanna Fischer, who is expected to testify regarding the location of particular cell phones located at or near the carjacking

4

locations at the relevant times. Her exhibits will also include summaries of data obtained from cell phone providers, from defendant's cell phones, and license plate readers. A portion of the information upon which Agent Fischer will rely was obtained by Agent Fredriksen, who associated the particular phone numbers with each defendant based upon information gained through the recovery and search of the cell phones. Agent Fredriksen's testimony regarding the evidence of defendants' use of the cell phones is needed so that the jury can understand and evaluate the significance of the location information.

Third, the government anticipates that Agent Fredriksen will testify as to evidence he obtained from his searches of the defendants' phones, as well as music videos featuring defendants which were obtained from YouTube, and photographs of the stolen car used in the carjacking which was obtained from Spotify. Certain aspects of this testimony will only make sense near the end of the trial when certain pieces of evidence have already been admitted.

The government therefore respectfully requests that this Court permit the recall of Agent Fredriksen during trial.

## II. MOTION TO ADMIT EVIDENCE OF DEFENDANT EDMUND SINGLETON'S PRIOR FELONY CONVICTIONS

Defendant Singleton is charged with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). Dkt. 1. The government must prove that at the time defendant Singleton possessed the firearm in question, he knew he had been convicted in a court of a crime punishable by imprisonment for a term exceeding one year. Accordingly, the government

5

respectfully moves this Court to admit documents which establish this element: (a) certified statements of conviction for defendant Singleton's prior felony convictions in the Circuit Court of Cook Count, Illinois for aggravated battery (08CR0016601) and aggravated unlawful use of a weapon (11CR1661401); and (b) certified copies of transcripts of defendant Singleton's guilty plea/sentencing hearing in these two cases, during which defendant Singleton acknowledged he was pleading guilty to crimes punishable by more than one year in custody. These documents should be admitted because they are relevant, self-authenticating, and permitted by hearsay rules. Further, admitting these records pretrial will allow the government to avoid having to call custodian witnesses such as court reporters and an employee of the Cook County Clerk of Court.

The proposed materials are direct evidence of defendant's knowledge of his felony convictions. They show that prior to November 3, 2022, defendant Singleton had been convicted of at least two felony offenses. Further, the transcripts show that, when defendant entered his plea of guilty to each of the felony offenses, he acknowledged that the offense to which he was pleading guilty carries a penalty of more than one year in prison.

The certified copies of conviction are self-authenticating under Federal Rule of Evidence 902(1) because they bear the seal of the Circuit Court of Cook County and a signature certifying the record. The change of plea transcripts are self-authenticating under Federal Rule of Evidence 902(4) because they are copies of an official record that is certified correct by the custodian (the court reporter).

6

The materials are also admissible pursuant to the rules of hearsay. Pursuant to Federal Rule of Evidence 801(d)(2), the transcripts do not constitute hearsay because they are statements of a party opponent. That is, defendant Singleton's words acknowledging the maximum penalties, as well as his admission of guilt, are being offered against him by the government. The certified statements of convictions are similarly admissible as public records under Federal Rule of Evidence 803(8). *Olsen v. Correiro*, 189 F.3d 52, 63 (1st Cir. 1999) ("When offered to show the fact of conviction rather than underlying guilt 'a judgment readily fits the public records exception.'"). In addition, the convictions are admissible under Federal Rule of Evidence 803(22) as judgments of a prior conviction because they were entered after a guilty plea, they were felonies, they are being offered to prove an essential element, and the convictions are defendant Singleton's. *See, e.g.*, *United States v. Cruz-Rivera*, 2021 WL 3500913, *3 (S.D. Ind. Aug. 9, 2021).

### III.   MOTION TO PERMIT LAY OPINION TESTIMONY AS TO THE MEANING OF CERTAIN WORDS OR PHRASES

The government respectfully moves this Court to admit lay opinion testimony from Agent Fredriksen as to his interpretation of several words or phrases within text messages, social media messages, and rap lyrics. The government has filed a separate motion *in limine* seeking the introduction of a YouTube music video and relevant portions of rap lyrics. The rap lyrics contain references to "pipes," "switches," and "hot cars." Under Federal Rule of Evidence 701, a lay opinion "is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact at issue; and (c) not

7

based on scientific, technical, or other specialized knowledge[.]" *United States v. Hilliard*, 851 F.3d 768, 779-80 (7th Cir. 2017). "A law enforcement officer's lay opinion is limited to his 'observations or other facts derived exclusively from a particular investigation.'" *United States v. Bard*, 73 F.4th 478 (7th Cir. 2023), quoting *United States v. Malagon*, 964 F.3d 657, 662 (7th Cir. 2020). "Testimony becomes expert— and subject to Rule 702's qualifying procedures—when an officer 'brings the wealth of his experience as an officer to bear on those observations and makes connections based upon specialized knowledge.'" *United States v. Fenner*, 2025 WL 1806089, at *4 (7th Cir. July 1, 2025), quoting *Malagon*, 964 F.3d at 662. *See also United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007) (law enforcement testimony becomes expert testimony when the officer does not limit the testimony to "facts derived exclusively from this particular investigation; instead, [bringing] the wealth of his experience as [an] officer to bear on those observations and [making] connections for the jury based on that specialized knowledge.") Here, the government is seeking to introduce lay opinion testimony from Agent Fredriksen as to his interpretation of "pipes," "switches," and "hot cars" based on his review of text and social media messages, as well as lyrics written and rapped by defendant Singleton. Agent Fredriksen's testimony as to these terms will be limited to his interpretation based on the context of the messages and lyrics he reviewed during this particular investigation. The government is not seeking to qualify Agent Fredriksen as an expert and will not ask

Agent Fredriksen to opine as to the meaning of these terms based on his overall training and experience.[2]

## IV. MOTION TO PRECLUDE DEFENDANT RAMONE BRADLEY FROM OFFERING EVIDENCE OR ARGUMENT RELATING TO AN ALIBI DEFENSE

Under the Federal Rules of Criminal Procedure, upon request by the government, a defendant is required to provide the government with notice of any alibi defense the defendant intends to raise, including any defense asserting the defendant's unavailability on or near the dates named in the indictment. Fed. R. Crim. Pro. 12.1. In correspondence on November 26, 2024, and July 1, 2025, the government requested notice of an alibi defense. Because defendant Ramone Bradley has not notified the government of an intent to raise an alibi defense, the government requests that he be prohibited from introducing evidence or argument of such a defense at trial.

## V. MOTION TO PRECLUDE ARGUMENT OR EVIDENCE DESIGNED TO ELICIT JURY NULLIFICATION

The government moves this Court to preclude defendants from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit jury nullification. It is well settled that it is improper for a defendant to suggest in any way that the jury should acquit defendant even if it finds that the government has met its burden of proof. *See United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012)

---

[2] In the alternative, the government has provided a supplemental expert disclosure indicating that Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Sean Ahern, who has previously been disclosed as a witness who will testify about nature of the firearms recovered, including the status of the firearms in relation to the National Firearms Act, will also offer expert testimony as to the meaning of the words "pipe" and "switch," and will testify as to the function of a machinegun conversion device, also known as a switch.

(court held that district court properly found that evidence offered by the defendant was irrelevant and served to only confuse the jury or invite the jury to acquit even if the government satisfied each element of the offense); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."). The government moves to exclude the following specific examples of jury nullification, among others.

**1. Motion to Preclude Argument or Evidence Concerning Potential Penalties Faced by Defendants if They are Convicted**

If convicted in this case, both defendants face significant terms of incarceration, and defendant Singleton faces an additional seven- year mandatory minimum period of incarceration for his use of a firearm in furtherance of the completed carjacking. The government moves the Court to preclude Singleton and Bradley from introducing evidence, making argument, or otherwise mentioning the potential penalties faced if convicted. For one, the Seventh Circuit's Pattern Criminal Jury Instructions include an instruction specifying, "In deciding your verdict, you should not consider the possible punishment for the defendant. If you decide that the government has proved the defendant guilty beyond a reasonable doubt, then it will be my job to decide on the appropriate punishment." Pattern Crim. Jury Instructions 4.08 (2020 ed.).

Additionally, the Seventh Circuit has stated that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *vacated*

*on other grounds*, 526 U.S. 813 (1999); *see also United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997) ("[T]he practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored."); *United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that while "the sixth amendment requires that a jury determine questions of guilt or innocence . . . punishment is the province of the Court").

Argument and evidence concerning punishment are improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed.") (quotation omitted); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000) (same). Mention of the potential penalties faced by defendants only would serve the improper purpose of jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.") (quotation omitted).

Accordingly, defendants should be precluded from mentioning or introducing evidence about any of the range of penalties faced if convicted.

### 2. Motion to Preclude Allegations of Outrageous Government Conduct

The government moves to exclude evidence or argument by counsel of "outrageous government conduct." The Seventh Circuit repeatedly has held that the

"[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) (citation omitted); *see also United States v. Sherman,* 268 F.3d 539, 549-550 (7th Cir. 2001); *United States v. Boyd,* 55 F. 3d 239, 241-42 (7th Cir. 1995) ("[O]utrageous governmental misconduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort."). Furthermore, this Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of government misconduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issue other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* In the face of this tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. 1991). *See also United States v. Finley*, 708 F. Supp. 906, 913 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but

12

is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation").

Accordingly, the government moves to bar defendants from introducing evidence or argument of outrageous government conduct.

### 3. Motion to Preclude Argument and Evidence Regarding the Government's Motivation in Investigating and Prosecuting the Case

The government moves to preclude evidence or argument by defense counsel regarding the government's and the officers' and agents' motivations for investigating or prosecuting this case. Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus, excluded from trial. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); *United States v. Clay*, 618 F.3d 946, 956 (8th Cir. 2010) ("[S]elective prosecution of a criminal defendant is not an issue for the jury to decide.").

Further, the government moves to preclude the defense from arguing or eliciting evidence regarding the mental states, subjective intentions, or motivations, of the investigating officers and agents. It is well settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such evidence was irrelevant").

13

Accordingly, the government moves to preclude evidence or argument by the defense regarding the government's and the officers' and agents' motivations for investigating or prosecuting the case.

### 4. Motion to Preclude Argument and Evidence of Selective Prosecution Theory

Similarly, defendants should be precluded from introducing evidence or argument seeking to present a theory of selective prosecution before the jury. During the trial, the jury will hear evidence that other individuals were also involved in the carjackings on November 2, 2022. The government anticipates that defendants may argue that these individual(s) have not been charged with any criminal offenses. Pursuant to Federal Rules of Evidence 401 and 403, such information is irrelevant and unfairly prejudicial.

Indeed, in *United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994), the court granted, on relevancy grounds, the government's motion to preclude the defendant from introducing evidence that another individual who had been arrested with him was not charged. In so ruling, the *Young* court noted that "the primary issue for the jury was whether the government met its burden of proof as to [the defendant]'s knowledge," and "[w]hether or not [another individual] was criminally charged [did] not make the facts related to [the defendant's] knowledge and participation in [the alleged crime] more or less probable." *Id.* at 765; *see also United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) (observing that "the defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury").

14

Therefore, the government moves to preclude evidence or argument by defendants regarding any theory of selective prosecution.

## VI. MOTION TO PRECLUDE DISCOVERY REQUESTS OR COMMENTARY REGARDING DISCOVERY IN THE PRESENCE OF THE JURY

The government moves this Court to preclude the parties from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests in front of the jury may distract the jury or create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See, e.g.*, *United States v. Gray*, 2010 WL 1258169, *3 (N.D. Ind. Mar. 26, 2010) (granting government's motion to preclude the defense from requesting or commenting on discovery in the presence of the jury); *see also Thompson v. Glenmede Trust Co.*, 1996 WL 529693, at *2 (E.D. Pa. Sept. 17, 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

As such, the government asks this Court to prohibit either party from raising discovery issues in the presence of the jury. The appropriate time to raise such issues would be at a sidebar or while the jury is not in the courtroom.

## VII. MOTION TO PRECLUDE EXPLAINING OR DEFINING REASONABLE DOUBT

The government respectfully moves this Court to preclude counsel from attempting to define reasonable doubt through argument or by visual depictions. The Seventh Circuit has consistently held that "reasonable doubt" is a term that should

15

not be defined by the trial court or counsel. See, e.g., *United States v. Hatfield*, 590 F.3d 945, 949 (7th Cir. 2010); *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1999) ("The law is clear in this circuit thatit is improper for attorneys to attempt to define the term…."); *United States v. Alex Janows & Co.*, 2 F.3d 716, 722-23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury."); 7th Cir. Pattern Crim. Jury Instruction 1.04 (2020 ed.). "[A]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). To the contrary, any proffered definition is likely to "confuse juries more than the simple words themselves." *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993). "Jurors know what is 'reasonable' and are quite familiar with the meaning of 'doubt.' Judges' and lawyers' attempts to inject other amorphous catch-phrases into the 'reasonable doubt' standard … only muddy the water." Glass, 846 F.2d at 386. Thus, it is "inappropriate for judges to give an instruction defining 'reasonable doubt,' and it is equally inappropriate for trial counsel to provide their own definition. *Id.*

## VIII. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT ABOUT INVESTIGATIVE STEPS NOT TAKEN

The government expects defendants to raise questions on cross-examination about investigative steps not taken. As a general matter, "[t]he district court retains wide latitude in limiting the extent and scope of cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'"

16

*United States v. Robbins*, 197 F.3d 829, 845 (7th Cir. 1999) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). It is well within a district court's discretion to preclude defendant's counsel from questioning witnesses about investigative steps not taken. *See United States v. Zaccaria*, 240 F.3d 75, 81 (1st Cir. 2001) ("In the absence of a particularized showing that the government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition."). A defendant may not put the government on trial by arguing that there was something more the government could have done to investigate the case when, as here, the defendant has not made any connection between an allegedly shoddy or slanted investigation and any evidence introduced at trial or a specific defense. *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998), *cert. denied*, 526 U.S. 1007 (1999), *disapproved of on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999).

In *Robbins*, the defendant argued that the district court abused its discretion in limiting cross-examination of an agent "about the extent of the investigation," specifically sustaining an objection to defense counsel's question whether the agent "investigated the length of time that [a co-defendant] and Gordon Robbins had known each other." 197 F.3d at 845. In particular, the district court ruled:

> [I]t is not my intention to allow this trial to become a trial of the investigation. And it is my intention that the jury make its decision based on evidence actually presented rather than the—than speculation about the possible existence of other evidence that might have been developed if the investigation had been carried out in some other way.

17

*Id.* (citation omitted; alteration in original). On appeal, Robbins argued that the "quality and thoroughness of the investigation by law enforcement agents was an appropriate area of cross-examination," whereas the government contended that defendants simply intended to "impugn the thoroughness of that investigation in order to demonstrate that people other than the defendants were responsible for the crime and that law enforcement was either aware of, or ignored, evidence to that effect." *Id.* The Seventh Circuit found no abuse of discretion. While noting the district court's perception that the disputed line-of-questioning might confuse the jury and cause it to speculate about evidence not before the jury, which the Seventh Circuit deemed "valid reason[s]," it further noted the "marginal relevance" of the information. *Robbins*, 197 F.3d at 845. In the same way here, any line-of-questioning intended to try the investigation carries "marginal relevance" and merely works to confuse the jury and imply that additional evidence exists that has not been presented to the jury. Such evidence should be excluded.

Evidence elicited to support a broad claim that the government's investigation of the case was sloppy or inadequate is also irrelevant. The question for the jury is not to determine whether the government's investigation was good or bad; it is whether the defendant is guilty or not guilty. *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (steps that the government had not taken during an investigation was irrelevant and noting that "the jury would not be called upon to determine whether the government's investigation had been good or bad."). Applied here,

18

general allegations that the investigating agencies and agents could have done things differently are inadmissible and irrelevant.

Furthermore, even if evidence of investigative steps not taken has some minimal probative value, the evidence should nonetheless be barred under Rule 403 because of the danger of unfair prejudice and jury confusion. *United States v. Patrick,* 248 F.3d 11, 23 (1st Cir. 2001), *cert. denied,* 534 U.S. 1043 (2001) *and* 535 U.S. 910 (2002) ("Such speculative evidence of the inadequacy of the police investigation would have shifted the jury's focus from the accusations against [the defendant] to accusations against the police, thus creating a real danger of unfair prejudice and jury confusion that 'substantially outweighed' the evidence's probative value."); *see also Zaccaria,* 240 F.3d at 81 ("Testimony about the government's non-administration of polygraph examinations would be apt to spark an unwarranted and profoundly prejudicial inference that the Secret Service agents believed the test results would be harmful to their case . . . . The substantial likelihood of unfair prejudice associated with this line of questioning, combined with the speculative nature of the appellant's bias theory, convinces us that foreclosing the inquiry entailed no abuse of discretion.").

The Chicago Police Department is not on trial. Without a reasonable and specific connection to the evidence introduced at trial, as opposed to general claims that the agents and officers could have done things differently, any line of questioning intended to put the investigation on trial should be excluded

**IX.** **MOTION TO PRECLUDE IMPERMISSIBLE USE OF PRIOR GRAND JURY TESTIMONY DURING CROSS-EXAMINATION**

All of the victim-witnesses in this case have testified in the grand jury. In these circumstances, it is important that the parties to this case abide by the limitations in the Federal Rules of Evidence concerning the use of such prior testimony at trial.

A party may impeach a witness by asking about a statement made before the grand jury that is inconsistent with the witness's trial testimony. A party may do this by simply asking the witness about the prior inconsistent statement, which may prompt the witness to admit to making the prior inconsistent statement. Rule 613 and Rule 801(d)(1) would also permit the admission of a statement made by the witness during their grand jury testimony if that statement was, in fact, inconsistent with their trial testimony.

However, this type of cross-examination is only available if the witness's testimony is truly *inconsistent* with something the witness said in their grand jury testimony. "[T]he determination of as to whether prior testimony is truly *inconsistent* is a matter within the discretion of the district judge." *United States v. Jones*, 808 F.2d 561, 568 (7th Cir. 1986) (emphasis in original). "The two statements need not be diametrically opposed to be inconsistent." *Id.* Nor do they need to be "logically incompatible." *United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984). Inconsistency "may be found in evasive answers . . . silence, or changes in positions" and a "purported change in memory" can constitute inconsistent testimony. *Id.* at 608 (cleaned up).

20

Understanding that a prior statement can be "inconsistent" even if not diametrically opposed to a witness's trial testimony, the statement made by the witness in the grand jury must still be *inconsistent* for it to be used to impeach a witness or admitted under Rule 801(d)(1). *See United States v. Avants*, 367 F.3d 433 (5th Cir. 2004) ("In order for a prior inconsistent statement to be admissible for impeachment purposes, there must be a preliminary finding that statements are inconsistent. 'Preliminary questions' of admissibility are for the trial judge.") (citing Fed. R. Evid. 104).

It would, of course, be improper for a party to begin reading portions of a grand jury transcript or posing questions about specific statements in a grand jury transcript if the transcript is not inconsistent with something the witness has said in their trial testimony. In order to appropriately permit the Court to consider whether a witness's prior grand jury testimony is, in fact, inconsistent with their trial testimony, the government requests that the Court require the cross-examining party to first refer the Court and counsel to the specific relevant portion of the transcript before asking the witness about it. This would be consistent with Rule 613(a), which provides that the examining party "must, on request, show [the witness's prior statement] or disclose its contents to an adverse party's attorney." And it will give the Court and the parties an opportunity to assess whether inquiry about the statement is appropriate, and help avoid the unwarranted exposure of an inadmissible out-of-court statement to the jury. *See* Fed. R. Evid. 103(d) ("To the extent practicable, the

21

court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

### X.     MOTION TO PRECLUDE IMPERMISSIBLE USE OF WITNESS INTERVIEW MEMORANDA DURING CROSS-EXAMINATION

In discovery provided to defendant, government produced memoranda prepared by law enforcement agents memorializing information conveyed by witnesses during interviews with the government. While the statements in these interviews do not qualify for admissibility under Rule 801(d)(1) because they were not made "under penalty of perjury" or at a "proceeding" as required by that rule, statements made in these interviews could be admissible under Rule 613 for impeachment purposes if they are inconsistent with the witness's trial testimony.[3] As explained above, these interview statements must be truly inconsistent with trial testimony to be used for impeachment purposes under Rule 613. Of course, the agent's interview report itself—unless adopted by the witness—is *not* the witness's statement. *See United States v. Allen*, 798 F.2d 985, 994 (7th Cir. 1986) ("A federal agent's written impression of what a witness said, his strategy, or his conclusions from what the witness said are obviously not statements of the witness—unless the government agent who is the interviewer is himself a witness and testifies about the subject matter of the report."); *see also United States v. Schoenborn*, 4 F.3d 1424, 1429 and n.3 (7th Cir. 1993) (finding district court erred in admitting an FBI agent's

---

[3] If the witness admits on the stand that the prior inconsistent statement is true, there is no hearsay issue and the statement is properly treated as substantive evidence, not merely as impeachment. *See* Fed. R. Evid. 801(d)(1) advisory committee notes to 1972 Proposed Rules ("If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem.").

interview report as a trial witness's past recollection recorded when the witness did not adopt the report). And it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959) (affirming district court's decision that a government agent's interview summary was not a statement within the scope of 18 U.S.C. § 3500).

Because an agent's interview report is not the statement of the witness, its contents are simply inadmissible because they are not relevant to the impeachment of the trial witness. *See Schoenborn*, 4 F.3d at 1429, n.3 ("If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible."). Therefore, given that the report itself is inadmissible to impeach a witness, the government moves the Court to prohibit counsel from reading from an agent's interview report or other report that is not in evidence while questioning a witness, displaying the report to the jury while asking a witness about a prior inconsistent statement from the interview, or asking the witness to read out loud from the report. Likewise, in cross-examining a witness about statements in an interview, unless the witness is the agent who prepared the report, counsel should not make verbal reference to the report in the questioning or use the report in a way that suggests that counsel has a memorialization of the statement.

23

Rule 612 permits a party to use a writing to refresh a witness's recollection. Under appropriate circumstances, an interview report could be used to refresh a witness's recollection about what was said during an interview. However, given the prejudice that can result from suggesting that an interview report is anything other than an agent's memorialization of a witness's interview, the government requests that the Court hold the parties to their obligation to lay a proper foundation prior to showing a witness an interview report.

First, a document (like an agent's interview report) may only be used to refresh a witness's recollection "only after his memory has been 'exhausted.'" *United States v. Carpenter*, 819 F.3d 880, 891-92 (6th Cir. 2016) (reversed on other grounds, *Carpenter v. United States*, 138 S.Ct. 2206 (2018)). Therefore, the government would object to counsel showing a document to a witness to refresh their memory without the witness first testifying that they cannot recall something relevant in response to a question.

If the witness does not recall a relevant fact, it would then be appropriate for counsel to ask the witness if there is something that would help refresh their recollection. If the witness answers that the interview report would help, counsel may show the witness the report and ask him to read it silently. Again, the government would object to counsel reading from the report in referring the witness to where to read in the report, or in asking the witness if the report refreshes their recollection.

24

After the witness finishes reviewing the document, it would be appropriate if counsel asked if the report refreshed the witness's recollection. Only if the witness answers affirmatively may counsel ask the original question again.

### XI. MOTION TO ADMIT DEFENDANTS' PRIOR FELONY CONVICTIONS IF THEY TESTIFY PURSUANT TO FEDERAL RULE OF EVIDENCE 609

In the event that defendants Singleton or Bradley testify, their credibility will be a central issue at trial. Defendants may claim that they were not involved in the carjackings or did not know that they would be committed. Defendants may dispute the other witnesses' versions of events, or may give some other explanation for why they should be acquitted. Further, defendant Singleton may dispute that he unlawfully possessed the firearm as charged. If defendants testify at trial, the government should be permitted to cross examine them on their most recent prior felony convictions for purposes of attacking their character for truthfulness under Fed. R. Evid. 609(a)(1)(B). The importance of defendants' testimony and the centrality of their credibility outweigh any prejudicial effect and permit proper impeachment.

If defendant Singleton testifies, the government respectfully moves this Court to allow the admission of defendant Singleton's December 19, 2018 conviction for possession of a firearm by a convicted felon, for which he was sentenced to 36 months' imprisonment. If defendant Bradley testifies, the government respectfully moves this Court to allow the admission of defendant Bradley's April 28, 2021 conviction for felony theft, for which he was sentenced to 18 months' imprisonment.

Federal Rule of Evidence 609 governs the admissibility of criminal convictions for impeachment purposes. In general, "evidence that an accused has been convicted

25

of a crime punishable by death or imprisonment in excess of one year 'shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.'" *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005) (quoting Fed. R. Evid. 609).

In evaluating whether a conviction's probative value outweighs its prejudicial effect, a trial court should consider: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's testimony; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *Id.*; *see also United States v. Montgomery*, 390 F.3d 1013, 1016 (7th Cir. 2004). These factors are merely a guide to the district court's exercise of its wide discretion. *Montgomery*, 390 F.3d at 1015. Here, the factors weigh in favor of allowing impeachment on defendants' prior convictions.

As to the first prong, impeachment value, the Seventh Circuit has recognized that "even if some of the [above set out] factors were neutral or favored exclusion, the central role of [the defendant's] testimony and the importance of his credibility strongly favored the admission of his prior convictions." *Montgomery*, 390 F.3d at 1016. Thus, defendants' prior convictions have relevant impeachment value simply because they are probative of credibility even if they do not expressly involve dishonesty. *See United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993) ("[A] prior felony need not have involved inherent dishonesty to be probative and admissible under Federal Rule of Evidence 609(1)(1)."); *Gora v. Costa*, 971 F.2d 1325,

26

1330 (7th Cir. 1992) ("The idea underlying Rule 609 . . . is that criminals are more likely to testify untruthfully.").

Regarding the second factor, defendant Singleton was still on supervised release for his 2018 conviction when he committed the instant offense. Thus, it is not as though defendant Singleton has had an unbroken string of lawful activity since his conviction. Defendant Bradley was convicted of felony theft approximately a year and a half before he was arrested in this case.

As to the third prong, the conviction at issue for defendant Singleton involves the same offense as one of the charged crimes (possession of a firearm by a convicted felon), but it is different than all the other counts in the indictment. Any prejudice from admission of the conviction is greatly diminished by the fact that proving defendant's status as a felon is an element of the charged offense. The government will request an instruction from the Court that the jury may consider evidence of defendant Singleton's prior conviction not only as evidence to prove the offense of possession of a firearm by a convicted felon, but also as evidence of defendant's truthfulness, pursuant to Rule 609. Further, should defendant Singleton stipulate to his status as felon at the time he committed the instant offense, any risk that the jury may find he has a propensity to unlawfully carry firearms can be mitigated by appropriate instructions, and in light of the fourth and fifth factors, it does not create undue prejudice. For defendant Bradley, his conviction for felony theft is similar to carjacking in the sense that both offenses involve the taking of property that does not

27

belong to them but share no other similarities. Any risk that the jury may find he has a propensity to steal things can similarly be mitigated by appropriate instructions.

As to prongs four and five, defendants' credibility, should they testify, will be central to the determination of guilt. If either defendant takes the stand, they will almost certainly contest the anticipated testimony of the law enforcement officers and lay witnesses and disavow their involvement in the carjackings. Resolving such conflicting testimony will thus be "the crux of the case." *See Montgomery*, 390 F.3d at 1015-1016 (recognizing that defendant's credibility was central and impeachment with prior drug conviction was proper); *see also Nururdin*, 8 F.3d at 1192 (four prior felony convictions permitted to impeach defendant where "defendant and the officers offered conflicting accounts of the events leading to defendant's arrest"). Given the central role of defendants' potential testimony, the jury should have full and fair information in order to evaluate defendant's credibility. *See United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997) (stating "given the importance of the credibility issue in this case, evidence of the earlier conviction ought to be admitted").

Thus, the Rule 609 analysis weighs in favor of admitting defendant Singletons 2018 conviction and defendant Bradley's 2021 conviction. After balancing the factors, the Court should conclude that on balance, those factors weigh in favor of permitting the government to impeach defendants with their respective prior felony convictions.

To minimize any risk of unfair prejudice, the government will limit its inquiry to only the existence of defendant Singleton's 2018 felony conviction and defendant Bradley's 2021 felony conviction, the date of conviction and sentence, and the length

of the sentences, without introducing the specific nature of the underlying misconduct. The government will also request a proper limiting instruction from the Court. *See United States v. Toliver*, 374 F. App'x 655, 658 (7th Cir. 2010) (noting that "the prejudicial effect was lessened because the government confined its inquiry to the type and time of conviction and the court gave the jury a limiting instruction").

## XII.    MOTION TO BRING FIREARMS TO COURT AS EVIDENCE AT TRIAL

In the course of presenting its evidence, the government intends to introduce into evidence three firearms related to the offenses charged in the indictment. The government understands that, in recent cases, the United States Marshals Service has requested that the trial court issue an order permitting that the firearms be brought into the Dirksen Federal Building, and that the court's order include language stating that "The firearms shall be rendered safe, inoperable, and unable to discharge. The United States Marshals Service may impose any restriction to ensure that the firearms are rendered safe." If this motion is granted, the government will prepare a draft order that can be presented to the United States Marshals Service so that the firearm can be brought to Court and presented as evidence.

## CONCLUSION

For the reasons set forth above, the government respectfully asks the Court to grant its motions *in limine*.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:     /s/ *Elie Zenner*_____
Elie Zenner
Simar Khera
Assistant U.S. Attorneys
219 S. Dearborn St., Room 500
Chicago, Illinois 60604

Dated: July 7, 2025